GRAHAM'S HEIRS
vs.
GIBSON.

Where a rehearing is granted only on a particular branch of the cause, no other part of it can be examined in the second trial.

GRAHAM'S HEIRS *vs.* GIBSON.

APPEAL FROM THE COURT OF THE NINTH JUDICIAL DISTRICT, FOR THE
PARISH OF CARROLL, THE JUDGE THEREOF PRESIDING.

The signature of a constable to a return of service of citation, made
by him, will be taken as true, without proof being made of it.

The nullity of a probate sale cannot be sought in a direct action in
the District Court. The order of sale by the Probate Court is held
to be a judgment which protects purchasers under it.

So, where heirs sue, in the District Court, to recover from the purchaser
and third possessor of property sold at the probate sale of their
ancestor's estate, on the ground that the proceedings and sale by the
court of probates was illegal, and should be cancelled and annulled:
*Held*, that this is in the nature of an action of nullity, and the
District Court is without jurisdiction.

·This action was instituted by the tutor of two of the heirs of W. Graham, deceased, and ·by the under tutor of the other heir, to annul and set aside the probate sale of the property of the estate of their ancestor, which they allege was sold contrary to law. The plaintiffs allege, that the sale in question was made without any notice to them, or the advice of a family meeting, and purchased in by William Benjamin, at the time tutor to one of the heirs, and under tutor of the others, and who was incapable of purchasing. They allege various other irregularities and nullities in said sale.

The plaintiffs further allege, that the property in question is now in the possession, and owned by one Ambrose Gibson, who resides in Mississippi. They pray that a curator, *ad hoc*, be appointed to defend said absentee, and that they have judgment annulling the sale, and decreeing to them the property, with the revenues and damages.

The defendant, Gibson, by his attorney, averred that he purchased the property in contest from one J. C. Drew, whom he calls in warranty, and sets up-various demands against him.

Drew appeared, and declined to answer to. the demands in warranty ; but excepted to the plaintiffs' petition, and denied that the tutor or under tutor of Graham's heirs had ever been authorized to institute this suit.

At this stage of the proceedings one of the heirs married A. M. Tompkins, who authorized his wife to prosecute the suit in her own name.

Drew further excepted, and denied that the District Court had any jurisdiction of the matter set up in the petition :

1. That the sale sought to be annulled, was ordered by a judgment of the Probate Court, which could only be annulled and avoided by a suit in that court.

2. That the appointment of a special tutor, complained of in the petition, can only be inquired of in the Court of Pro-bates ; wherefore, he prays that all these matters be stricken out of the petition, and that he be dispensed from answering it.

WESTERN DIST.
October, 1839.

GRAHAM'S HEIRS
*vs.*
GIBSON.

The cause was tried on this issue ; and the district judge presiding, decided that the plaintiffs had no authority to institute and carry on this suit ; and that the District Court was without jurisdiction to try it. Judgment of non-suit was rendered against the plaintiffs, and they appealed.

*Stacy* and *Bullard,* for the plaintiffs, insisted that the probate sale was illegally made, and the District Court was competent to inquire into the illegality of the sale, and to set it aside. See 11 *Louisiana Reports,* 384.

2. The second exception taken to the jurisdiction of the District Court, incorrectly sets out the allegations in the petition. It is not therein stated that the probate sale was made in virtue of an order of court ; on the contrary, it is said that the sale was made *without any legal* order of court. No order of court is sought to be annulled, or set aside : But if it were so, and it were necessary to set aside the proceedings of the Probate Court, the District Court has jurisdiction to examine them, and if necessary to set them aside. *Code of Practice, article* 983. 2 *Louisiana Reports,* 23. 3 *ibid.,* 242.

*Dunlap* and *M'Guire,* for the defendant, Drew, called in warranty, moved to dismiss the appeal for want of legal service of citation on this appellee. The service was made by a constable, purporting to be authorized to do so by the sheriff, and there is no proof that this man *is a constable.* His signature is not to be taken as proof.

2. On the merits, they contend that, in the first place, the tutor and under tutor were without power or authority to sue, unless specially authorized.

3. That this is a suit to annul the proceedings of the Probate Court, and is in the nature of an action of nullity, and the District Court is without jurisdiction.

*Selby,* for defendant.

*Strawbridge, J.,* delivered the opinion of the court.

WESTERN DIST.
October, 1839.

GRAHAM'S HEIRS
vs.
GIBSON.

A motion has been made to dismiss the appeal on the ground of insufficient service of the citation.

The return is made by a person signing himself "A. B., constable." The errors alleged are:

1st. That a constable is not authorized to serve citations from the District Court.

2d. That there is no proof of his authority.

Article 765 of the Code of Practice, provides, that "sheriffs may notify and execute the different orders, citations, &c. by means of constables;" "they being responsible, however, for the manner in which the constables may perform this duty."

On the second point, it has been held that our courts will recognize the *signatures* of officers appointed by the governor, &c. Constables are appointed by the police jury of each parish, and the parish judge administers to them an oath, and files their bond, with security, and delivers them a certificate of their appointment.

Had the return been made by a deputy sheriff, it would, it appears to us, have been sufficient; and we would take his signature for true. We cannot perceive how this case differs in principle, when confined to acts of a constable, exercised within the limits of the parish.

We, therefore, overrule the motion, and sustain the appeal.

*The signature of a constable to a return of service of citation, made by him, will be taken as true, without proof being made of it.*

We now proceed to examine the case on the merits.

This suit is brought by the tutor and under tutor of some minors. The petition states that the parent of the minors, Graham, left a large amount of real and personal property. "That on the 20th December, 1834, a public sale was made by the Court of Probates for the parish of Carroll, where they reside, of certain lands belonging to his succession," which they specify. "That said sale was illegal, null and void. That for more than a year preceding it, the plaintiff had been tutor to said minors, but had no notice of said sale; and that the purchaser at said sale could not legally buy." They allege various other illegalities, and conclude with a prayer that they be decreed to recover the said property; be adjudged owners of the same, and put in possession thereof.

WESTERN DIST. That the probate sale, before set forth, on the 20th Decem-
October, 1839. ber, 1834, and all the proceedings had in relation to it, be
GRAHAM'S HEIRS avoided, cancelled, annulled and set aside.
vs.
GIBSON.          There was a plea to the jurisdiction of the District Court
as to these matters, which was sustained by the judge, and
from that decision this appeal has been taken.  We do not
doubt of the right of the District Court to examine into
matters of probate jurisdiction, when they are brought before
it collaterally, and *vice versa.*  Nor do we doubt that the
Court of Probates is without power to entertain a suit in
revendication.

The nullity of          But we do not deem the nullity of the probate sale to have
a probate sale been brought before the District Court in this suit collate-
cannot be sought
in a direct ac- rally; it is the head and front of the suit itself; and the court
tion in the Dis-
trict Court. The is called upon to avoid, cancel and annul the acts of the
order of sale by Probate Court, which is, to our view, a direct action of
the Probate
Court is held to nullity.
be a judgment
which protects          The order of sale, it has been held, is a judgment, and
purchasers un-
der it. that the purchasers under it are protected.  13 *Louisiana
Reports*, 436.

We have just expressed the opinion in the case of Brosna-
ham et al. *vs.* Turner, that a party to a judgment cannot
question it collaterally.  See the authorities there cited.*
Though the present tutor denies any knowledge of this sale,
we perceive, by the proceedings, that there has been a former
tutor.  The sale may have been made by an executor to
pay debts, and so the tutors have neither been cited, nor had
any knowledge.  For these reasons, it appears to us the
judge of the District Court properly sustained this exception,
and we affirm his judgment, with costs.

---

* The judgment in the case of Brosnaham et al. *vs.* Turner, has been suspended, and a
rehearing granted.

WESTERN DIST.
*October*, 1839.

MARSHALL *vs.* FOGLEMAN. `

MARSHALL
*vs.*
FOGLEMAN.

APPEAL FROM THE COURT OF THE SIXTH JUDICIAL DISTRICT, FOR THE PARISH OF AVOYELLES, THE JUDGE OF THE SEVENTH PRESIDING.

Where a part of the calls and boundaries expressed in a deed are inconsistent with the stipulations in the contract of sale, and impossible to be complied with, they will be disregarded.

This is an action of partition. The plaintiff alleges that John and Dennis M'Daniel and M. Fogleman purchased from the United States a small tract of land on Bayou Bœuf, containing ninety-six acres, entitled, Lot No. 2 ; that, by a private agreement between them, D. M'Daniel was to pay for forty acres, M. Fogleman for thirty-six, and J. M'Daniel for twenty acres of this tract ; that, since that agreement, he has purchased John M'Daniel's share of twenty acres, which the defendant, Fogleman, refuses to set off to him, according to their contract, but, availing himself of the state of indivision, has entered the back lands, disregarding the rights of his co-proprietors ; that, when called on to set off the twenty acres from the tract of ninety-six acres fronting on Bayou Bœuf, he consents only to laying off ten acres of the front tract and ten acres from the back concession so entered by him. He prays that the defendant be compelled to make an equitable partition, and that the twenty acres be taken from the front tract of ninety-six acres, &c. 

Fogleman pleaded a general denial, and denied specially that the plaintiff was assignee of J. M'Daniel. He averred that the plaintiff, with a view to defraud him, induced him to execute an act of sale the 22d October, 1833, transferring the twenty acres, as M'Daniel's share, to him, in accordance with an agreement between the M'Daniels and him, (Fogleman) left with the Register at Opelousas, dated the 16th November, 1830, by which this respondent considered himself bound to convey this quantity to M'Daniel ; but that the plaintiff has practised a fraud in obtaining said act of 22d October, 1833, by which he claims another twenty acres, &c.

He prays that said act be annulled as fraudulent, and this suit dismissed.

He further avers, he never received any consideration for said land, and that the sum of twenty-five dollars per acre, mentioned in said act of sale as the price, is not true, and in this respect it is simulated and fraudulent.

In a further and supplemental answer, he avers, that he has always been ready to set off and convey the twenty acres of land, as specified in the said act of sale, and that, long before this suit, he offered to deliver the land, according to the deed of sale; which was surveyed for this purpose, and the plat and certificate of survey delivered to the plaintiff, who has been in undisturbed possession ever since; wherefore he prays that the suit be dismissed.

Upon these pleadings and issues the cause was tried.

The parish surveyor's plat and survey showed that the defendant offered to set off the twenty acres at the lower end of the tract of ninety-six acres, which, although it originally belonged to the M'Daniels and Fogleman jointly, had been entered, the 19th May, 1831, in the name of the latter alone; and in the rear of this tract he had also entered the back concession, containing seventy-six acres, in July, 1833. To run off the twenty acres fronting on Bayou Bœuf, as the defendant proposed, would have taken only ten acres from the front tract of ninety-six acres, and ten acres from the the rear, or swamp tract of seventy-six acres.

The act of sale from Fogleman to Marshall, for J. M'Daniel's share, dated the 22d October, 1833, expressly says, that the twenty acres thus sold is to be taken from the lower part of Fogleman's land; " to take such front on Bayou Bœuf, and running east *to the township line, to make twenty acres*," " being the same entered on the 19th May, 1831, and a part of lot No. 2, purchased by an agreement between D. M'Daniel and Fogleman, for which Marshall pays Fogleman twenty-five dollars per acre."

The memorandum of agreement between M'Daniel and Fogleman, in November, 1830, when they were about entering the lot No. 2, containing ninety-six acres, was offered in

evidence, and rejected on the motion of the defendant, as <span>Western Dist.</span> not making proof between these parties..

The district judge gave judgment, ordering the twenty acres to be set off as the defendant offered, fronting on Bayou Bœuf, and running to *the township line.* The plaintiff appealed.

*Cushman,* for the plaintiff.

1st. This is essentially an action of partition, and the plaintiff should not be decreed to pay the whole costs.

2d. The judgment of the court *a qua* does not decree the partition in conformity to the contract or agreement of the parties.

3d. The judgment of the court below should have decreed to the plaintiff twenty acres, to be taken out of the original tract of ninety-six acres, held between the co-proprietors, in conformity to an agreement between them.

4th. This agreement, though a *sous seing privé* act, is expressly referred to in the public or notarial act executed by the parties to this suit. 3 *Louisiana Reports,* 427, and 2 *Ibid,* 70.

5th. The notarial act is free from all ambiguity, and clearly expresses the intentions of the parties to the same.

*Curry,* for the defendant.

1. The record shows, in the act of sale from Fogleman to Marshall, dated 22d October, 1833, that the latter sells to the former " twenty acres of land on the lower part of his tract, to take such a front on Bayou Bœuf, and running east *to the township line,* as to make twenty acres." By reference to the plat and judgment of the district court, it will be seen, that the plaintiff has had his twenty acres set off in this manner. It fronts on the Bayou Bœuf, and *runs to the township line,* as expressed in the act of sale. The defendant has always been ready to make a partition in this manner, and it is therefore not his fault that the plaintiff did not get

his land set off to him without suit; the defendant should not, therefore, be mulct in costs.

2. The judgment of the District Court is correct. It *gives the land*, as expressed in the act of sale by the parties themselves, and should therefore be affirmed, with costs in both courts.

·3. The plaintiff relies on a memorandum of agreement between Fogleman and D. M'Daniel, at the Land Office, dated the 16th November, 1830, in which they specify the interest and number of acres each are to have in a lot of ninety-six acres, and which they were then about entering. This memorandum cannot make evidence for the plaintiff. He is no party to it, and it is not proved or shown to be authentic. It was objected to by the defendant's counsel, and excluded by the court. The case must be decided according to the agreement between the parties to this suit, to wit, the act of sale of the 22d October, 1833. It expressly declares that the plaintiff shall take such front on Bayou Bœuf, *and running east to the township line, to make twenty acres.* This has been done, and was offered to be done by the defendant before suit.

*Strawbridge, J.,* delivered the opinion of the court.

The plaintiff claims twenty acres of land, being part of a larger tract of ninety-six acres situated on Bayou Bœuf, together with the back concession, which he alleges the defendant entered after having sold him the front.

The defendant, after an answer denying his right, and an amended answer, filed a second amended answer, in which he admitted the plaintiff's right, and agreed to a partition according to their written agreement. This agreement referred to a private act filed in the land office, a copy of which was produced at trial, but rejected as not being evidence. On the correctness of this decision, to which a bill of exceptions was taken, we do not decide, as we come to the same conclusions as though it had been admitted.

The defendant was owner of two tracts—No. 2, of ninety-six acres lying on Bayou Bœuf, acquired from the United

States on the 20th May, 1831, and No. 1, lying in the rear and between No. 2 and the township line, which we understand to be the back concession spoken of, acquired from the United States 25th July, 1833.

The act of sale from defendant to plaintiff bears date 22d October, 1833. From these dates it is clear that the defendant, owning both front and rear at the time of sale, the plaintiff had no right to the back concession, unless it had been specially conveyed by the defendant.

The difficulty is to ascertain where the twenty acres are to be laid off. The description in the act is of twenty acres, " to be taken from the lower part of the tract on Bayou Bœuf running east *to the township line,* being the same entered on the 19th May, 1831, and a part of lot No. 2, purchased by an agreement between M'Daniel and the defendant."

This agreement is the one, a copy of which was excluded as above stated. To run this line to the township line, the survey must cross the rear tract, and in doing this the land would not be taken from lot No. 2, purchased in May, 1831, but must cross and include a part of No. 1, purchased in July, 1833. To decide on this discrepancy, the only further guide left us is a plat made by order of the District Court, and the instructions of the defendant's attorney given to the surveyor appointed by the court, which state that the land sold was part of the ninety-six acres, but still directs it to be laid off running to the township line. It is certain the land made part of the ninety-six acre tract. To lay it off " running to the township line," was impossible, as this tract did not reach there. We therefore think the decree of the District Court, directing the twenty acres to be taken from the two tracts, was erroneous.

Where a part of the calls and boundaries expressed in a deed are inconsistent with the stipulations in the contract of sale, and impossible to be complied with, they will be disregarded.

It is, therefore, ordered and decreed, that the judgment be reversed, and that the plaintiff recover the space marked on the plat by the red letters A, B, D, E, forming part of No. 2, containing ninety-six acres, entered 19th May, 1831, and that the defendant pay the costs of both courts.

WESTERN DIST.
*October*, 1839.

RICHARDSON *vs.* LEDBETTER.

RICHARDSON
*vs.*
LEDBETTER.

APPEAL FROM THE COURT OF PROBATES FOR THE PARISH OF CARROLL.

No appeal lies from a judgment overruling an exception to the jurisdiction of the court.

This was a suit in which the plaintiff claimed the sum of one thousand dollars from the defendant, as administratrix of her deceased husband's estate.

The defendant excepted, and declined the jurisdiction of the Probate Court, because there was no executor, administrator or curator appointed to said estate ; and that she was only in possession and administered the same as widow, in community and tutrix of the children ; that it was sought to render her personally liable, the debt being against her in her individual capacity, and not as a debt of the succession : she therefore declines the jurisdiction, and avers that the case belongs to another tribunal, to wit, the District Court, and prays that the suit be dismissed.

There was judgment overruling this exception ; and final judgment on the merits was entered up against the defendant for the amount of the plaintiff's claim.

The defendant appealed from the judgment overruling her exception, only.

*Dunlap* and *Copley*, for plaintiff, moved to dismiss the appeal, on the ground that the judgment appealed from is not such a final judgment as works an irreparable injury, and from which an appeal will lie.

*Stacy*, contra ; admitted no appeal would lie from the interlocutory judgment ; but he insisted that the appeal embraced the final judgment as well as the other, which should be reversed.

*Strawbridge, J.*, delivered the opinion of the court.

This appeal is taken from a judgment of the Probate Court of the parish of Carroll, overruling a plea to its jurisdiction.

It has been settled by the decisions of this court, that an appeal from such a judgment is not admissible, as it produces no such injury as may not be remedied on an appeal from the final judgment.

The best service, therefore, we can render the defendant is, to dismiss the present appeal in time to permit her to appeal from the final judgment, which it appears by the record has been already rendered, which is accordingly ordered at her cost.

ARMSTRONG vs. LEVY ET AL.

APPEAL FROM THE COURT OF THE NINTH JUDICIAL DISTRICT, FOR THE PARISH OF CONCORDIA, JUDGE COOLEY, THEN OF THE FOURTH JUDICIAL DISTRICT, PRESIDING.

Where the seal of the court is not affixed to the record of a judgment suit in another state, and the certificate of the clerk is irregular, it will not furnish sufficient authentic evidence to authorize the executory process to issue on it in this state.

In this case, the plaintiff obtained from the district judge presiding an order of seizure and sale, on a record and judgment in favor of the plaintiff against the defendants in the state of Mississippi, for the sum of three thousand three hundred and twenty-eight dollars and twenty cents. The record is made out, and purports to be certified according to the act of Congress, to make it authentic in the several states of the Union. From the order of seizure and sale, granted by the district judge, the defendants prayed and were allowed an appeal direct to this court.

*Dunlap* and *Dunbar*, for the defendants and appellants, assigned errors apparent on the face of the record, and par-

ticularly that the record from Mississippi was not duly attested under the seal of the court, according to the law of Congress, no seal being attached thereto.

. *Selby,* for the appellee, insisted that the Mississippi record was duly certified, and was sufficiently authentic to authorize the issuing of the executive process.

2. The clerk certifies that he affixed the seal of court, and it must be presumed that it was done, and that the scroll affixed to the signature is the seal. It is also to be presumed that the court in Mississippi rendered judgment on proper and sufficient evidence; at any rate, it is for the other side to show the contrary.

*Morphy, J.,* delivered the opinion of the court.

The defendant seeks the reversal of the judgment on an assignment of error apparent on the face of the record; it is sufficient to examine one of them.

The judgment is one obtained at chambers, rendering *that* of a court of an adjacent state executory in this, and ordering a writ of seizure and sale therein. The error assigned is, that the record of the court of the sister state is not certified in the manner prescribed by the law of Congress, and required by the Code of Practice, the clerk's certificate not being authenticated by the seal of the court, nor showing that the court has not a seal; on the contrary, stating that the seal is affixed, which negatives the idea that the court is without a seal. The certificate being thus irregular, the first judge erred in declaring the judgment executory in this state, and ordering the writ of seizure and sale to issue.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be annulled, avoided and reversed, the plaintiff and appellee paying costs in both courts.

HEWITT *vs.* SEATON ET AL.

APPEAL FROM THE COURT OF THE NINTH JUDICIAL DISTRICT, FOR THE
PARISH OF MADISON, THE JUDGE THEREOF PRESIDING.

In an action of slander of title, claiming damages, it is not necessary to allege and show that the defendant is in possession; and his exception, disclaiming possession and title, will not authorize the dismissal of the suit. The plaintiff has the right to try the issue of slander of title, and to show damages, if he can.

This is in the nature of an action of slander of title, in which the plaintiff claims to be the owner of a tract of seventy-seven acres of land, but the title to which, he alleges, is slandered by the defendants, who, he alleges, claim title thereto. He prays that they be cited to set forth their title, if any they have, and that, in failing to do so, they be forever enjoined from setting up title hereafter, and that the possession be delivered to him by the sheriff, and ·he be decreed the true owner thereof.

The defendants filed an exception to the maintenance of this action, because they were not, at the time, nor before the institution of suit, in the possession of the land claimed; nor do they set up any title thereto, and they deny that the plaintiff has any. They pray to be dismissed, with their costs.

There was no evidence that the defendants were ever in possession of the land, or claimed it.

The court was of opinion the action was a petitory one, and not an action for slander of title; that the evidence supported the defendant's exception. The suit was dismissed, and the plaintiff appealed.

*Copley*, for plaintiff.

*Stacy*, contra.

*Morphy, J.*, delivered the opinion of the court.

The petitioner sets forth that he is the true and lawful owner of a certain tract of land; that the defendants set up

Western Dist.
October, 1839.
────────
HEWITT
vs.
SEATON ET AL.

title to the said land, and prevent him from taking quiet and peaceable possession of the premises, by reason of which he has suffered damages to the amount of ten thousand dollars : he prays, that they may be cited to make out and establish their title to the said land, if any they have, and that, should they fail to show a good and valid title, they may be decreed to pay him said damages ; that they be enjoined from slandering his title, or setting up any in themselves, and that the land be delivered to him by the sheriff. The defendants except to plaintiff's action, on the ground that they are not in possession of the land sued for ; they disclaim all title to the same, and plead a general denial to all plaintiff's allegations. The judge à quo, considering this action as a petitory one, sustained the exception of defendants, and dismissed the petition. The plaintiff appealed.

It appears to us that the petition was improperly dismissed. The disclaimer of defendants put an end to the question of title, but left to be tried the issue joined as to the damages claimed by the plaintiff for the slander of his title, and his having been prevented by defendants from taking peaceable possession of his property. The petition does not allege that defendants are in possession, which averment it would have been incumbent on him to make and prove before he could maintain a petitory action ; his main object seems to have been to hold defendants to the proof of the title, or right, which they had publicly set up to his land. Their disclaimer of title in court could not prevent plaintiff from having the facts alleged by him investigated, and his damages awarded him, if he is entitled to any.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be annulled, avoided and reversed, and, this case remanded for further proceedings, according to law, and that defendants pay the costs of this appeal.

LATTIMORE *vs.* DAVIS.

APPEAL FROM THE COURT OF THE·NINTH JUDICIAL DISTRICT, FOR THE
PARISH OF CONCORDIA, THE JUDGE THEREOF PRESIDING.

The estate below, owes a servitude to that above it, to receive the
waters which naturally flow from the upper estate ; and the proprietor
below is not at liberty to raise a dam or make any work to prevent
this running of the waters; but this must be a natural servitude,
not created by the industry of man.

The clearing of land, and fitting it for agriculture, by cutting ditches
and canals, cannot be considered as making this servitude more onerous,
if it pursues the natural drains.

-But, where the proprietor of the upper estate cuts ditches and makes
drains on to the lower one, without.following¯the natural drains and
flow of the waters, he will be liable for all damages sustained by the
overflow of the waters.

This is an action to recover damages from the defendant
for injuries done to the plaintiff's plantation and land, by
draining his own land on to that of the latter.

The plaintiff alleges that the defendant owns a plantation
situated above, and adjoining to his, on the Mississippi river,
in the parish of Concordia; that in the spring of the year
1833, the latter cut ditches, and drained his land on to that
of petitioner, without following the natural drains, and by
means of said ditches conducted nearly all the water off his
plantation into a small pond lying between, and by that
means overflowed his plantation, so that it prevented him
from making any cotton crop that year, to his great damage,
ten thousand dollars, for which he prays judgment.

The defendant pleaded a general denial ; and claims two
thousand dollars in reconvention for damages occasioned by
the illegal conduct of the plaintiff in¯excavating and cut-
ting away a road or levee he made on his own land, between
him and the plaintiff, and also in throwing up a large levee
in said road, damming up the water, and stopping up a bayou
or natural drain which runs through both their plantations,

and has always been an important drain to their plantations, but which the defendant has so far obstructed as to cause it to flow back on his plantation above, &c. He prays judgment for his damages in reconvention, &c.

The surveyor made a diagram, representing the location and situation of the two tracts of land, which, together with the evidence, was submitted to a jury. They were of opinion the defendant was in fault, and that his draining on to the plaintiff's land caused the loss of crops and other damage to him, which they assessed at seven thousand dollars. Two of the jurors made affidavit that their verdict was intended to include loss of crops for the year 1833, and up to the time of finding their verdict in December, 1837.

A new trial was applied for and granted.

On the second trial a mass of testimony was produced, relative to the injuries complained of between the parties. The cause was again submitted to a jury, who returned a verdict for the plaintiff in the sum of one thousand five hundred dollars. And from judgment rendered thereon, the defendant appealed.

*Stacy*, for the plaintiff, argued to show that the defendant, by his own acts, had cut ditches and drains, changing the natural servitude ; and caused the water to flow in different channels from the natural one, by which the plaintiff's plantation was overflowed, and the water coming down from the upper one became stagnant on his, and destroyed his crops.

*Dunlap* and *Dunbar*, for the defendant, contended :

1st. The relative position of the lands of plaintiff and defendant, shows a *natural servitude* in favor of the tract of defendant.

2d. The defendant had a right to remove any obstruction to the exercise of his servitude erected by plaintiff, and to go on to plaintiff's land for the purpose, provided it was done without *riot*. *Louisiana Code*, 768–770. 3 *Blackstone's Commentaries*, 216. 1 *Partidas*, 442. The evidence clearly shows, *either* that plaintiff's levee *obstructed* a natural drain, or that the *cutting* of it did him no injury.

3d. Even if the ditches constructed by defendant were shown to be injurious or burdensome to plaintiff, still if it were *necessary to the culture* of defendant's tract, plaintiff cannot complain. Articles of the Code 656 and 663, are not to be construed too strictly to the injury of the interests of agriculture. *Duranton, 5th volume, page* 160. 12 *Louisiana Reports,* 501.

4th. But it is shown by the evidence, conclusively, not only that the ditches were absolutely necessary to the *culture* of defendant's plantation, but also that they were not injurious to plaintiff, but beneficial to him. It is shown, also, by the evidence, that the inundation of 1833 was caused by the heavy and extraordinary rains of that year.

*Morphy, J.,* delivered the opinion of the court.

The plaintiff seeks to recover damages, alleging that by defendant's illegal acts and omissions he has brought together and concentrated all the waters of his plantation in a certain pool or pond, not a common drain, lying and extending on both their premises; that afterwards he has, by cutting through a causeway on his (plaintiff's) plantation, let into his field of cotton such a body of water as has overflowed it, and rendered all cultivation impossible. The defendant denies that he has done any injury to plaintiff, and claims damages in reconvention, averring that plaintiff has illegally erected a levee or embankment on his land, and done other acts, whereby the natural flow of his waters has been obstructed, and his (defendant's) land covered with water. This case has been before two juries who brought in verdicts for the plaintiff, and judgment having been entered upon the last verdict, the defendant appealed.

The parties are owners of adjacent tracts of land fronting the Mississippi, and extending back to Lake Concordia, on which they also have a front. From both fronts there is a slope or descent towards a certain bayou, situated some way between, but nearer the lake. It is admitted that plaintiff's tract is situated below that of defendant, and must receive the waters which *naturally* flow from it; but plaintiff con-

WESTERN DIST.
October, 1839.

LATTIMORE
vs.
DAVIS.

The estate below, owes a servitude to that above it, to receive the waters which naturally flow from the upper estate; and the proprietor below is not at liberty to raise a dam, or make any work to prevent this running of the water; but this must be a natural servitude not created by the industry of man.

The clearing of land, and fitting it for agriculture, by cutting ditches and canals, cannot be considered as making this servitude more onerous, if it pursues the natural drains.

But where the proprietor of the upper estate cuts ditches and makes drains on to the lower one, without following the natural drains and flow of the waters, he will be liable for all damages sustained by the overflow of the waters.

tends that the natural drain of both plantations, and through which he was bound to receive on his estate defendant's waters, was the large bayou situate in the rear of their lands; that defendant by improperly or insufficiently ditching his plantation, has caused the waters to accumulate in a pond between the bayou and the front of their plantations, instead of running into the bayou, which is lower than said pond; that to avoid injury and loss to himself from this accumulation of water, defendant has cut through a causeway or levee that had been on his land for years, and thus let in a larger body of water than would naturally have flowed on his plantation. The evidence on these points, as well as on the defendant's adverse allegations, is voluminous and somewhat contradictory. The law of the case presents no difficulty. The nature and extent of the servitude due by plaintiff's land, are clearly defined by our Code, article 656. We have been referred to the case of Martin vs. Jett, 12 Louisiana Reports, 503. It determines, very correctly we think, that the clearing of land, and the fitting it for agricultural purposes, by proper ditches and canals, cannot be considered as an act rendering a servitude of this kind more onerous, and that a different interpretation would condemn the superior estate to sterility, and be contrary to the interests of agriculture. Here the facts alleged are widely different, and would tend, in our opinion, to render the servitude due by plaintiff more burdensome. As to the sufficiency of the evidence on these facts, and the extent of the injury complained of, the jury were the legitimate judges. They were acquainted with the premises; nay, the evidence shows that they had a view of them from the very court-house where they sat in judgment between the parties; and it would require strong evidence indeed, to induce us, without any knowledge of the localities but what the record furnishes, to disregard the finding of two juries of the immediate neighborhood.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.

ALLEN VS. PETROVIC ET AL.

APPEAL FROM THE COURT OF THE SIXTH JUDICIAL DISTRICT, FOR THE
PARISH OF NATCHITOCHES, THE JUDGE OF THE DISTRICT PRESIDING.

The surety, to entitle himself to the right of discussion, must pursue the
formalities pointed out in article 3016 of the Louisiana Code, or his
plea will be overruled.

This is an action against the endorsers and surety on the
the following note :

"$950 68-100. Natchitoches, March 7th, 1837. Twelve
months after date I promise to pay to the order of Messrs.
Petrovic & Co., the sum of nine hundred and fifty dollars
and sixty-eight cents, for value received, payable and nego-
tiable at the branch of the Exchange and Banking Company
of New-Orleans, at Natchitoches.

"W. B. WEATHERBY."

Endorsed " P. PETROVIC & Co."

" I endorse this as security only ; WM. LONG ; security for
the final payment of this note, provided this note is protested
at maturity. Natchitoches, December 15th, 1837."

The petition alleges that Peter Petrovic, John F. Cortes,
and John Laplace, were co-partners at the time of endorsing
the note, trading under the style and name of P. Petrovic &
Co.

The notary's certificate showed that the note was duly
protested, and notice of protest properly served on all the
endorsers.

There was judgment against the surety and all the en-
dorsers in solido, from which Long, the surety, appealed.

Waters, for the plaintiff and appellee, prayed for the affirm-
ance of the judgment with ten per cent. damages, for a
frivolous appeal.

Tuomey, for the appellant, Long, submitted a written argu-
ment, insisting on the right of discussion on behalf of Long ;
that he was bound only as a surety, and execution should be

stayed, as to him, until the property of the principal debtor was first seized and sold. *Louisiana Code, article* 3020. *Filhiol* vs. *Jones,* 8 *Martin,* 636.

*Morphy, J.,* delivered the opinion of the court.

The defendants are sued as endorsers of a promissory note, and the petition contains the usual averments of demand,

The surety, to entitle himself to the right of discussion, must pursue the formalities pointed out in article 3016 of the Louisiana Code, or his plea will be overruled.

protest and notice. The first endorsers, Petrovic & Co., made a general denial, while the other, William Long, averred, that he endorsed the note only as security, and pleaded the right of discussion. Plaintiff obtained a judgment, from which the defendant, William Long, prosecutes this appeal. The surety not having entitled himself to the benefit of discussion, by complying with the formalities required by law, his plea cannot avail him. *Louisiana Code, article* 3016. The appellee has prayed for damages in this court, on the ground that this appeal has been taken only for delay. We cannot but view it in the same light.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs, and ten per cent. damages.

━━━━━━

## BALDWIN *vs.* CRISWELL.

APPEAL FROM THE COURT OF PROBATES FOR THE PARISH OF CATAHOULA.

Where property is sold at probate sale for less than the sum for which it is mortgaged, the mortgaged creditor can only be placed on the tableau with a privilege for the amount of the sale, and for the balance of his claim he must be set down as an ordinary creditor.

This is an action by the plaintiff, Baldwin, and several other creditors, who joined their claims with his, against the defendant, as administrator of one P. L. Gwinn, deceased, charging him with neglect of duty in failing to collect and

WESTERN DIST.
October, 1839.

BALDWIN
vs.
CRISWELL.

pay over the moneys of the succession. They pray that he be ordered to account, and be made personally liable for any losses the estate may have sustained in consequence of his negligence; that certain property of the succession yet unsold, be disposed of, and that they have their claims allowed and paid.

The defendant denied that he was guilty of any neglect; and was ready to account for all the funds he had received, and that there was not sufficient funds to pay the privileged creditors. He expressed his readiness to dispose of the remaining property; and also filed an account, or provisional tableau.

In this statement he placed himself on the tableau as a privileged creditor for the sum of four thousand four hundred and thirty-six dollars, being for notes taken up and paid off by him as security, bearing mortgage. Among them were three notes given by Gwinn, with defendant as surety; amounting to three thousand six hundred dollars, to the estate of Elizabeth Bowden, deceased, for the purchase of slaves, with a mortgage thereon. These slaves were sold at the probate sale of Gwinn's estate for three thousand and twenty-five dollars; but the defendant set down all his debt as a privileged one, and claimed to be first paid. The plaintiff and other creditors made opposition.

The judge of probates homologated the account, and gave judgment allowing the defendant's privileged claims. The plaintiffs appealed.

This case was submitted to this court by counsel, without argument or written points, on detached documents and original papers, under an agreement of the parties.

*Morphy, J.*, delivered the opinion of the court.

The plaintiffs state themselves to be creditors of the estate of one P. L. Gwinn, and call upon the defendant as administrator of the same, to file a true statement of his account, showing the amount of funds collected by him; and that he should be made liable for all losses sustained by the estate, through his neglect to collect the debts; and finally, that all

property yet unsold be disposed of to liquidate the debts of the estate. The defendant admits the claims of the plaintiffs; denies that the estate has suffered any loss through his neglect; and avers that the mortgage debts of the estate being paid, there remains no funds to be distributed among the ordinary creditors; that there are notes amounting to three thousand three hundred and forty-one dollars, for which he is not accountable, because some of these have never come to his hands, and the amount of others, subscribed by himself, is due to him as a mortgage creditor. To this answer is annexed a statement or account, if it can be so called, from which it is difficult to collect any thing, except that the defendant has set himself down as a mortgage creditor for three thousand six hundred dollars in capital, and one hundred and seventy dollars for interest due thereon. The judgment below allowed the whole of defendant's claim, and the plaintiffs have appealed.

This case has been submitted to us without argument or brief, and the record, by agreement of counsel below, has been made to consist of a number of loose documents, on separate sheets of paper, numbered and marked as per said agreement. From these we have been enabled to reach the following facts, to wit: That on the death of P. L. Gwinn his estate was first administered upon by one Thomas Bryan, who offered for sale certain slaves, which were adjudicated to defendant for the sum of three thousand and twenty-five dollars; that these slaves had been purchased by Gwinn, from the estate of Mrs. Elizabeth Bowden, for three thousand six hundred dollars, for which he had given his notes, signed by defendant as his security, and secured by a mortgage on the slaves. The evidence shows, that defendant has taken up the notes subscribed by Gwinn, and has thus been subrogated to the vendor's mortgage on the slaves adjudicated to him, as above stated, for three thousand and twenty-five dollars. Having afterwards been appointed administrator of Gwinn's estate, he had certainly a right to place himself in his account as a mortgage creditor for three thousand and twenty-five dollars, the price brought by the slaves mortgaged

to him ; for the surplus, defendant should have been placed WESTERN-DIST. among the ordinary creditors. The judge below has entirely *October*, 1839. overlooked the other matters submitted to him ; in fact, the BOONE whole proceedings are lame, and must be considered *ex parte* *vs.* as to the other creditors. The property of the estate is not SAVAGE. yet all disposed of, nor are the debts collected. The account can be viewed only as a provisional one ; we think, however, that, so far as it goes, the judgment below is erroneous in allowing the whole of defendant's claim as a mortgage debt.

It is, therefore, ordered, adjudged and decreed, that the judgment of the Court of Probates be annulled, avoided and reversed. And it is further ordered, adjudged and decreed, that the account presented by defendant be so amended as to reduce his mortgage claim to three thousand and twenty-five dollars, leaving the other matters, presented by the pleadings, to be hereafter settled, contradictorily with all the creditors, in the rendition of a final account, and defendant pay costs in both courts.

---

### BOONE *vs.* SAVAGE.

APPEAL FROM THE COURT OF THE NINTH JUDICIAL DISTRICT, FOR THE PARISH OF CARROLL, THE JUDGE THEREOF PRESIDING.

Where the plaintiff in attachment, sets forth in his affidavit that the sum claimed in the petition "*is justly due him*," and the petition states that "the defendant is *indebted to him*" in this sum, the affidavit is sufficient.

The articles 42 and 43 of the Louisiana Code, only provide for a change of domicil, by persons already residents of the state, and not those coming from another state.

It requires a *residence* of one year in this state, by persons coming from another state, to acquire a domicil. Until then they are liable to be sued by attachment, as *non-residents*.

This is an attachment suit against the defendant, as maker of a promissory note, in the parish of Carroll, for one thousand one hundred·and sixty-five dollars and twenty-four cents, payable to the plaintiff the 1st January, 1838; and also as the drawer of a bill of exchange, payable to the order of plaintiff, dated at Rodney, Mississippi, January 28, 1836, for one thousand nine hundred and eighty-seven dollars and sixty cents, drawn on and accepted by Bogart & Hoops, of Port Gibson, payable the 10th February, 1837. The plaintiff claims interest at the rate of eight per cent. per annum, (the rate allowed by law in Mississippi,) together with damages and costs of protest. He further states, that the defendant resides permanently out of the state, but has property within it, which he prays may be attached, &c.

The plaintiff made affidavit "that the sum of three thousand one hundred and fifty-two dollars and eighty-four cents, *and the interest as set forth in the foregoing petition,* is justly due him; and that the defendant, John H. Savage, resides permanently out of the state, &c."

The attorney appointed to represent the absent defendant, moved to dissolve the attachment on the following grounds:

1. Because the affidavit on which it issued is not made according to law, as it does not allege that any sum or sums of money are due by defendant to plaintiff.

2. The attachment was sued out, when, in fact, the defendant is a citizen of the parish of Carroll, where suit is brought.

The suit was instituted the 4th April, 1838. A declaration of the defendant before the parish judge of Carroll, was produced, dated the 4th December, 1837, in which he elects and declares his domicil, for the future, to be in that parish, having lately resided in Mississippi.

The evidence showed that the defendant is the owner of a plantation in the parish of Carroll, and that he is frequently there; that he claims to reside there, having had his family with him on his plantation.

The judge presiding was of opinion the affidavit was insufficient. It was not specific in stating that the defendant was indebted to the plaintiff in the sum set forth, which was required.

On the second head, the judge deemed the attachment insufficient.   "Although," says he, " the property of the debtor may be attached in his possession, as appears to be the case here, yet it is the evident design of the attachment law that this process should run against the debtor's property in the hands of third persons, *Code of Practice,* 139 *and* 242; and the legislature probably did not intend that it should go against property in the debtor's possession, except where he is upon the eve of leaving the state forever; or when he conceals himself to avoid being cited.   *Code of Practice,* 243."

Judgment was rendered dissolving the attachment, and the plaintiff appealed.

*Selby* for the plaintiff.

*Copley* and *Dunlap,* contra.

*Strawbridge, J.,* delivered the opinion of the court.

This suit commenced by attachment.  A motion was made to dismiss the attachment; 1st, on the ground that the affidavit was insufficient; and 2d, that he was a resident of the parish.  The affidavit is in the following words: " C. Boone, the foregoing petitioner, sworn, says, that the sum of three thousand one hundred and fifty-two dollars and eighty-four cents, and the interest, as set forth in the foregoing petition, is justly due him, and that the said J. H. Savage resides out of this state," &c.

I.  The petition sets forth, " that John H. Savage, residing in Jefferson county, state of Mississippi, is indebted to petitioner in the sum of three thousand one hundred and fifty-two dollars and eighty-four cents," &c.   The affidavit is written at the foot of the petition.  We think it is sufficiently certain.

II.  On the score of residence, it is shown that the defendant is a practising physician in Rodney, Mississippi; that his family resides in Rodney, where he is usually to be found; that he is a house-keeper there, and his family is now there.

He has a plantation and slaves in the parish of Carroll,

BOONE
vs.
SAVAGE.

which he has often visited for some years past, spending several days at a time, and that once his wife spent a week on this plantation. It is further shown, that in December, 1837, the defendant went before the parish judge of Carroll, and declared that he elected that parish as his domicil and future residence.

The articles 42 and 43 of the Louisiana Code only provide for a change of domicil by persons already residents of the state, and not those coming from another state.

The articles 42 and 43 of the Louisiana Code, referred to, only provide for cases of a *change* of domicil by persons already residents of the state. The present case is that of a person resident in another state, attempting to acquire a residence here. On this subject a law was passed in 1816: See 2 *Moreau's Digest, verbo " Residence,"* 308. It declares that a " residence within the state shall not be considered as acquired until the individual coming into the state shall have remained within the same for twelve months following the date of his notice to the judge," &c. And a second act passed in 1818, (2 *Moreau's Digest,* 309,) alters, in some respects, the previous requisites, but still requires a residence of one year.

It requires a residence of one year in this state by persons coming from another state, to acquire a domicil. Until then they are liable to be sued by attachment, as *non-residents.*

It is already seen that the defendant's declaration was made in December, 1837, and this suit was instituted in April following.

If we take the law of 1818 as our guide, still the residence of one year is not shown.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court, dissolving the attachment, and dismissing the petition, be annulled, avoided and reversed; that the cause be remanded, with order to reinstate the petition and attachment, and to proceed therein according to law; the appellee paying the costs of the appeal.

WESTERN DIST.
October, 1839.

CROSSMAN ET AL. *vs.* VIGNAUD ET AL.

CROSSMAN ET AL.
*vs.*
VIGNAUD ET AL.

APPEAL FROM THE COURT OF THE SIXTH JUDICIAL DISTRICT, FOR THE PARISH OF NATCHITOCHES, THE JUDGE OF THE SEVENTH PRESIDING.

An open space had been used as an alley, or public street, in the town of Natchitoches, for upwards of thirty years, but was not shown to have been designated as such on the plan of the town, or by any destination to public use : *Held*, that it remained private property, and, as such, was held by the defendant's title.

The right of passage, and to use an open space in a town as a public alley or street, is not acquired by prescription. It is an interrupted servitude, which requires the act of man to be exercised, and can be established only by a title.

This case commenced by injunction. The plaintiffs allege that the defendants were preparing and about to stop up a public alley or small street in the town of Natchitoches, situated between their property and a piece of ground in the possession of the Branch Bank of the City Bank of New-Orleans; that said alley has been an open and public highway for thirty years, and that the corporation of Natchitoches, by its legal and authorized agents and officers, has been accustomed, for more than thirty years, to keep this street in repair, &c. They allege that, by shutting up said alley, their property will be injured to the amount of two thousand dollars; and therefore pray for an injunction, prohibiting the defendants from proceeding to close up said street or alley, and for judgment, with damages.

The defendants pleaded a general denial; and the defendant, Vignaud, avers that there is no public alley or street, as claimed by the plaintiff, but that the City Bank, of which he is cashier, owns the lot and ground claimed as public, which they purchased at public sale, of the property of Charles Pavie, bounded below by the plaintiff's store, and above by another lot of the said Pavie; that he employed his co-defendant to fence in the whole boundary of said space of ground for the Bank, until he was stopped by the injunction.

WESTERN DIST. He avers that there is no public street between the Bank
October, 1839. and the plaintiffs, as is alleged ; and that the corporation of
CROSSMAN ET AL. Natchitoches disclaims any right whatever to a public
vs. passage or street there, &c. Upon these pleadings and
VIGNAUD ET AL. issues the cause was tried before the court and a jury.

The evidence, consisting mainly of the testimony of witnesses, old inhabitants of the town, showed that an alley or passage had existed in the vacant space in dispute for more than thirty years ; in fact, the defendants admitted it had been open and used as such in passing for forty years. One witness deposed that houses had been built fronting on this open space. The whole space measures nineteen feet ; but the plaintiffs' lot and defendants' (or bank lot) adjoin, and are situated alongside of each other, the bank having fourteen feet of this space and the plaintiffs' five feet, according to their measured boundaries.

It was shown that the corporate authorities of the town of Natchitoches disclaimed any right to a public alley or street in the vacant space in contest between the parties. There was no plan or designation of this space, as a public alley or street, produced in evidence.

The jury returned a verdict for the plaintiffs, prohibiting the defendants from closing up the alley in controversy, and ordering it to be kept open as a public alley of the town. From judgment confirming this verdict, the defendants appealed.

*Brent* and *Morse*, for the plaintiffs.

1. The legal question to be decided in this case is, was the land in dispute a highway, or street, in the eye of the law ? The evidence shows that it has been used as a public highway for thirty-three years or more.

2. We hope to sustain this injunction by the weight of Judge Martin's dissenting opinion in 5 *Louisiana Reports*, 145, sustained and approved by the Supreme Court of the United States, in the case " City of Cincinnati *vs.* White's Lessee," 6 *Peters*, 433, and in the case " New-Orleans *vs.* United States," 10 *Ibid*, 712.

3. The defendants show title for the land, but we contend, in obedience to the principles laid down by the authorities, that we have shown enough to entitle us to recover. We have shown that this has been a public alley or passway for thirty odd years; that the owner, residing in the parish during all that time, never objected, or dissented from the use made of it; that houses have been built along it, and with reference to it; that vested rights have been thereby acquired; and, in fine, that there has been such an implied dedication of it to public purposes, that it can no longer be the subject of private ownership.

*Campbell* and *Dunbar*, for defendants.

*Strawbridge, J.*, delivered the opinion of the court.

The Branch of the City Bank of New-Orleans and the plaintiffs are owners of two contiguous lots in a square of the town of Natchitoches. On the dividing line is an open space, or alley, of nineteen feet in width, five feet of which covers part of the plaintiff's lot and fourteen that of defendants. For thirty or forty years this has been open and used by the public as a passage. On one corner is the banking house, and on the opposite the store of the plaintiffs, in the rear of which they have built a warehouse fronting on the alley. In 1836, the bank directed the defendant, Vignaud, who is their cashier, to inclose that part of the alley lying on their ground, to prevent which the plaintiffs obtained an injunction, on the allegation that it was a public passage, the stopping of which would prejudice the public rights, and deteriorate their property. The cause was tried by a jury, who rendered a verdict for the plaintiffs. A new trial was granted, and a second verdict rendered for the plaintiffs, and judgment given thereon, from which this appeal is taken.

The plaintiffs contend for the affirmance of this judgment, on two grounds: first, that the alley, being left open to public use, is, by its destination, public; second, that the defendants, having acquiesced in the passage by the public, and suffered the plaintiffs to build thereon without setting up

their title, have lost their right, if any they ever had. We think neither of these positions tenable.

In support of the first, they have referred us to the cases of the City of Cincinnati vs. White's Lessee, 6 *Peters*, 435 ; Mayor, &c., of New-Orleans vs. the United States, 10 *Ibid*, 712, and the opinion of Judge Martin, in the case of De Armas vs. the City of New-Orleans, 5 *Louisiana Reports*, 132.

An open space had been used as an alley or public street in the town of Natchitoches, for upwards of thirty years, but was not shown to have been designated as such on the plan of the town, or by any destination to public use: *Held*, that it remained private property, and, as such, was held by the defendant's title.

Had the plan of the town of Natchitoches (a portion of which is in evidence) exhibited this space as an open lane, or had the primordial titles so treated it, these cases would have applied ; but it is admitted that the defendants have shown a good title to fourteen feet. The town surveyor deposes that no such space has been marked on the plan ; that, though all the other streets have been named, this has been nameless ; and it is shown by the act, or deed, under which the plaintiff holds, that the boundary given is the defendant's line, thus including the remaining five feet of the alley in his lot. These circumstances, so far from showing any destination to public use, leave on our minds the conviction that the property was private, and that this case does not fall within the rule invoked.

It remains to be seen whether the plaintiffs or the public have acquired, or the defendants and those under whom they claim have lost any rights to the property ; and here, be it remarked, that the house or houses fronting on the alley do not touch the common line : they front on the line of the alley, and are consequently five feet within plaintiff's limits. What power the defendant has to prevent the plaintiff from building within his own limits, or what obligation he could be under to inform him of their reciprocal rights when the title of the latter called for his line, and of course told him the ground on the other side of that line belonged to the defendant, we cannot perceive. If he, or if the public could acquire a right of passage thereon, it must be by some grant of the defendant ; some forced expropriation made under legal formalities, and for a compensation fixed and paid, or by prescription. Neither of the first are pretended, and we

think, with the defendant's counsel, the question is, have the plaintiffs (*i. e.* the public) made out a right of passage by prescription? The Louisiana Code, article 723, declares, "Interrupted services are such as need the act of man to be exercised; such are the rights of passage, of drawing water, pasture and the like." Article 762 provides, that "continuous non-apparent servitudes and interrupted servitudes, whether apparent or not, can be established only by a title." "Immemorial possession itself is not sufficient to acquire them."

We pass over that part of the case which presents an attempt to make out a title by resolutions of the trustees of the town, passed since the institution of the suit, declaring that this and other spaces shall be and remain public; directing the surveyor to make out a new plan, and to mark them thereon, as destined to public use; giving a name to it, as had been done to other streets, &c., with the remark, that if the suit was not well founded in its origin, such measures cannot mend it. They are not known to our laws, as modes of divesting private rights. If the property in question be necessary to the public service, a course of proceeding is provided by which it can be obtained, and none other will avail.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be reversed and annulled; and that the injunction be dissolved and the defendants quieted in their possession; and that the plaintiffs pay costs of both courts.

*Western Dist.*
*October,* 1839.

KERR
*vs.*
KERR ET AL.

The right of passage, to use an open space in a town, as a public alley or street, is not acquired by prescription. It is an interrupted servitude which requires the act of man to be exercised, and can be established only by a title.

---

KERR *vs.* KERR ET AL.

APPEAL FROM THE COURT OF PROBATES FOR THE PARISH OF CARROLL.

Where the widow sues to recover certain property under her marriage contract, which she alleges was given to her by her husband, but is withheld and sold by the administrator and heirs: *Held*, that it is an

14L 177
52 186

action to recover property *under a title*, and not a partition, and the Probate Court is without jurisdiction.

Where the court is without jurisdiction *ratione materiæ*, no consent can give it, and the court is bound to notice it *ex officio*, even when no plea to the jurisdiction is filed.

The plaintiff, who is the surviving widow of General Joseph Kerr, deceased, alleges that, by a marriage contract between them, she is entitled to certain property remaining in the succession as her own separate property, but that the defendant, James D. Kerr, administrator and son of the deceased, advertised all the property (including that claimed by petitioner) for sale. She alleges, that all these proceedings are illegal, and prays that the administrator and heirs of General Kerr be cited, and that she have her property partitioned and set off contradictorily with them. She annexes the marriage contract, which designates the property she claims.

The defendants averred that the property had been sold and passed into the hands of a third possessor; and that she could not recover on the marriage contract, for sundry reasons which are stated.

The inventory of the estate of Joseph Kerr, deceased, showed that it consisted of land valued at ten hundred and forty dollars, and the balance in stock, farming utensils, &c.

On the trial, the probate judge was of opinion that the suit involved title to real property, which he was without jurisdiction to try, and dismissed the suit. The plaintiff appealed.

*Selby*, for the plaintiff, insisted that this was a suit for a partition, by the widow against the administrator and heirs of Kerr, deceased, to have her own separate property set off to her, and is properly brought in the Probate Court. It is emphatically an action for the partition of a succession, still in a process of administration, and contradictorily with the heirs. *Code of Practice*, 924, *No.* 14—1021.

2. This suit is to annul the proceedings in the Probate Court, as irregular and illegal, and is properly brought in

that court. The Probate Court has authority to annul a decree which it has rendered. 8 *Martin, N. S.,* 518. 1 *Louisiana Reports,* 18.

3. The administrator has not yet rendered any account, and all the property of the succession is still in the Probate Court, and subject to its action on all claims against the succession. *Code of Practice,* 996. 10 *Louisiana Reports,* 425.

*Copley,* for the defendants.

*Morphy, J.,* delivered the opinion of the court.

The plaintiff alleges that she is the widow of Joseph Kerr; that, by her marriage contract, her said husband settled on and donated to her certain immoveable property therein described; that the defendant, having been appointed administrator to her said husband's estate, has advertised for sale the property thus belonging to her, together with the other property of the deceased; that no inventory has been made; that all the proceedings are irregular and void, and that the defendant has no right to sell her said property. She concludes with a prayer that the aforesaid property be not sold, but be partitioned and assigned to her as her own, by the decree of the court. The defendant, and the other heirs at law of the deceased, aver that the property claimed has been sold, and has passed into the hands of third persons; and they set up divers other matters of defence, all tending to deny her title to the property.

Under these pleadings, the judge *a quo* refused to pass on the merits of the issue placed before him, and, from this refusal, the plaintiff appeals.

It is evident that the plaintiff's object is to recover certain property, and not to obtain a partition, as contended for. It is also clear that the Court of Probates cannot inquire directly into the title to real estate, though there are cases in which it may be done incidentally for certain purposes. No plea to the jurisdiction was made by the defendants, but the want of jurisdiction in this case being *ratione materiæ,* no consent could give it, and the judge was bound to notice it *ex officio. Code of Practice,* 925. 3 *Louisiana Reports,* 514.

WESTERN DIST.
October, 1839.

KERR
vs.
KERR ET AL.

Where the widow sues to recover certain property under her marriage contract, which she alleges was given to her by her husband, but is withheld and sold by the administrator and heirs: *Held,* that

FORT
vs.
CORTES AND
LAPLACE.

it is an action to recover property *under a title*, and not a partition, and the Probate Court is without jurisdiction.

Where the court is without jurisdiction *ratione materiæ*, no consent can give it, and the court is bound to notice it *ex officio*, even when no plea to the jurisdiction is filed.

An attempt has been made to show that this is, in fact, an action to annul all the proceedings that had taken place. We find in the petition an allegation to that effect, but there is no corresponding prayer for the nullity of the proceedings, except as relates to the sale of the property claimed. We infer from the whole tenor of the petition, taken together, that the allegation of the nullity of all the proceedings was merely incidental to the principal demand, to wit, the recovery of the property. We are of opinion, that the court below did not err in declining jurisdiction.

It is, therefore, ordered, adjudged and decreed, that the judgment of the Court of Probates be affirmed, with costs.

---

FORT *vs.* CORTES AND LAPLACE.

APPEAL FROM THE COURT OF THE SIXTH JUDICIAL DISTRICT, FOR THE PARISH OF NATCHITOCHES, THE JUDGE OF THE DISTRICT PRESIDING.

Where a note is made payable at a particular place, payment must be demanded *there*, before a recovery can be had against the sureties in the note.

It is not sufficient to show that the sureties had no funds in the place of payment to meet the note at maturity, in order to charge them; for it was incumbent on the maker of the note, *not on them*, to provide funds at its maturity.

The sureties in a note may oppose to the action all the exceptions allowed to the maker, and which are inherent to the debt.

This is an action against the defendants, who signed a promissory note with one William Harkins as his sureties, payable "at the counting-house of Messrs. Robbins & Painter, of New-York." The defendants pleaded a general denial, only admitting their signatures as security for Harkins.

There was no proof of a demand of payment at the place designated in the note, although it was alleged in a supplemental petition. A bill of exceptions was taken to the decision of the court, allowing proof of demand made on the defendants.

WESTERN DIST.
October, 1839.

FORT
vs.
CORTES AND
LAPLACE.

The following interrogatory was propounded to the defendants, which was ordered to be answered in open court, but was not:

" Had you any funds, at the maturity of the note sued on in this case, in the house of Robbins & Painter, of New-York; and if you had, were there funds of yours sufficient to meet said note ?"

This interrogatory not being answered, the plaintiff prayed to have it taken for confessed. Parole evidence was offered of demand made on the defendants, to which demand they made no objections.

There was judgment against the defendants, and they appealed, after an unsuccessful attempt to obtain a new trial.

*Brent* and *Winn*, for the plaintiff.

1. It was admitted in argument that the defendants were securities of Harkins, but this was only to repel the idea which seemed to be entertained that they were endorsers on the note sued on. They were securities of Harkins, but this securityship was a contract only between themselves. As regards the plaintiff in this case, they were all principal obligors, and as such bound equally to him, and *in solido*. The note is worded, " I promise to pay," and signed by Harkins, Cortes and Laplace. It is therefore a note *in solido*, and all who have signed are drawers and principal obligors, and bound *in solido*. 2 *Louisiana Reports*, 62.

2. The principle established, is, that in obligations *in solido* all the debtors are principal obligors as regards the creditor (*vis-a-vis du créancier*), no matter what private relations may exist between the debtors as among themselves. It would certainly be a new principle to impose different obligations on co-obligors bound *in solido*, and by the same contract. 1 *Pothier on Obligations*, *No.* 264.

WESTERN DIST.    3. This, then, was a note *in solido*, and the parties do not
October, 1839.   stand in the light of securities, so far as the creditor is con-

FORT
*vs.*
CORTES AND
LAPLACE.

cerned. Like all other obligors *in solido*, they are principal
obligors, (*vis-a-vis du créancier*,) and were each singly and col-
lectively bound to do every thing stipulated in the obligation.
One was no more bound than the other, being all principal
obligors; and it is at the option of plaintiff to proceed against
any particular one, and let the others alone.

*Campbell*, *Carr* and *Pierson*, for the defendants, insisted
that there was no demand of payment made at the place
where the note was made payable, and the want of it is
fatal to a recovery against the defendants.

2. Demand of payment at the place designated in the
note, must be shown, and cannot be dispensed with ; it is a
pre-requisite to a recovery. 3 *Martin, N. S.*, 423. 2 *Louis-
iana Reports*, 318. 10 *Ibid.*, 552. *Bailey on Bills*, 129.

*Morphy, J.*, delivered the opinion of the court.

The defendants are sued as security of William Harkins,
the drawer of a promissory note in the words and figures
following, to wit:

"Natchitoches, April 15th, 1836.

"On the first of October next, I promise to pay to the
order of Mr. William Fort, four thousand eight hundred and
sixty-two dollars, for value received, payable at the counting
house of Messrs. Robbins & Painter, of New-York.

(Signed)          "WILLIAM HARKINS.
(Signed)          "CORTES & LAPLACE,
                              "Security."

The judgment below was in favor of the plaintiff, and the
defendants, Cortes & Laplace, after an unsuccessful attempt
to obtain a new trial, have taken this appeal.

It is admitted that no demand has been made at the place
appointed for payment in the body of the obligation. The
plaintiff, to supply the want of such demand, has endeavored
to prove that the maker, Harkins, had provided no funds at
that place, by putting interrogatories to the defendants. They

have been asked whether, at the maturity of the note sued on, they had sufficient funds in the house of Robbins & Painter, of New-York, to pay the note. They made no answer; and, allowing the plaintiff the full benefit of the presumed confession that defendants had no funds to meet the payment in New-York, it will in no way help him, for it was incumbent on the drawer of the note, not on them, to provide the necessary funds; and nothing in the record establishes any failure or neglect of the drawer so to do. A witness was also produced to establish that payment was often demanded of the defendants, and that they never objected to the demand being made here. The same remark applies to this testimony: if a demand made here, without objection, could produce any waiver of the maker's rights, it must be a demand on him, not one made on the defendants. Throughout these proceedings, the latter appear to have been considered as principal obligors, while they are only the sureties of Harkins; and, as such, they can oppose to the plaintiff all the exceptions belonging to the principal debtor, and which are inherent to the debt. *Louisiana Code, article* 3029. If the plaintiff is without right of recovery against Harkins, for want of a demand at the place appointed for payment, of which we entertain no doubt, he can have none, against the defendants. *Mellon* vs. *Croghan.* 3 *Martin, N. S.,* 423.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be annulled, avoided and reversed; and it is further ordered, adjudged and decreed, that there be judgment against plaintiff as in case of non-suit, the plaintiff and appellee paying costs in both courts.

FORT
vs.
CORTES AND
LAPLACE.

It is not sufficient to show that the sureties had no funds in the place of payment to meet the note at maturity, in order to charge them, for it was incumbent on the maker of the note, *not on them,* to provide funds at its maturity.

The sureties in a note may oppose to the action all the exceptions allowed to the maker, and which are inherent to the debt.

CECILE, F. M. C., *vs.* ST. DENIS, F. W. C.

APPEAL FROM THE COURT OF THE SIXTH JUDICIAL DISTRICT, FOR THE
PARISH OF NATCHITOCHES, THE JUDGE OF THE SEVENTH PRESIDING.

Where fraud is charged, direct and positive evidence is seldom to be
obtained. Circumstantial evidence is commonly all that can be had;
and every circumstance becomes material to ferret out the fraud.

So, where interrogatories are propounded, which may appear immaterial,
yet when fraud is alleged, the court is not authorized to dispense with
having them answered, when they are not clearly improper.

This is an action to annul an act of sale, from plaintiff to
defendant, of two negroes. The former alleges, he was
induced, on the 4th of April, 1838, to execute an act of sale
of two slaves, Henry and Mary, to the defendant, while in a
state of intoxication, for the nominal sum of eleven hundred
dollars, when they were worth two thousand dollars, and that
said sale was fraudulently obtained from him by the defend-
ant and her husband (*a statu liber*) ; that, at the time, she
executed and delivered to him an instrument purporting to
be her will, signed by her and two witnesses (Italians), in
which she bequeathed or left the two slaves to him at her
death, and at the same time took a lease from him, by which
he was to pay her ten and twelve dollars per month each for
hire. He prays that the said act be declared null and void,
and that he be decreed to be the true owner, and quieted in
his possession of the same. He then propounds sundry
interrogatories to the defendant, concerning the payment of
the price, which she answers, and declares she did pay the
price stipulated, and negatives all fraud and collusion ; and
specially denies that the plaintiff was intoxicated when he
executed the act of sale in question.

The defendant pleaded a general denial, and averred she
purchased said slaves fairly, and that she is the true and
*bona fide* owner of them, and prays to be quieted in her pos-
session.

On the trial, the plaintiff offered his own affidavit, to show
that a counter-letter had been executed by the defendant, in

the presence of two Italian witnesses, who signed; that, some time thereafter, one Jose del Hosté, who wrote it, called on plaintiff to let him look at it for a short time, promising to return it in an hour; that he gave it to del Hosté, who never returned it, but pretended he had mislaid it; that del Hosté has since absconded, and that he has been unable to procure said letter, but swears that it was obtained from his possession by fraud, and that it has either been destroyed or returned to the defendant.

WESTERN DIST.
October, 1839.

CECILE, F.M.C.,
vs.
ST.DENIS, F.W.C.

This affidavit was offered to prove the existence and loss of the counter letter, to the introduction of which the defendant's counsel objected, but it was received by the court, and a bill of exception taken.

The cause was finally submitted to the court on the evidence adduced, and there was judgment for the defendant, quieting her in her title to the slaves; from which judgment, after an unsuccessful attempt to obtain a new trial, the plaintiff appealed.

The cause was submitted to this court on written arguments, by Mr. Taylor, for the plaintiff, and by Mr. Campbell and Mr. Carr, for the defendant.

*Strawbridge, J.,* delivered the opinion of the court.

The plaintiff complains that the defendant, by various pretexts, fraudulently obtained from him a conveyance of two slaves, of the value of two thousand dollars, he being intoxicated at the time; that the defendant executed a will, bequeathing said slaves to him, and also a lease, which were written by one Jose del Hosté, and signed by two witnesses; that, becoming sensible of his folly the following day, he called on the defendant, and desired the act might be annulled; that she promised to do this in a few days, and that he gave back the will and lease, the existence of which she now denies.

The answer of defendant denies these facts.

A supplemental petition was filed, in which the plaintiff required the defendant to answer certain interrogatories.

WESTERN DIST. 'The defendant moved the court to strike out the ,eighth and
October, 1839. ninth of these interrogatories, on the ground that there was
CECILE, F.M.C., no allegation in the petition of the existence of a counter
*vs.* letter ; and this the court ordered.    There was judgment for
ST. DENIS, F.W.C. the defendant, and the plaintiff appealed.'

Though not clearly expressed, we understand the petition
to state, in substance, that the will and lease were given by
way of counter letter ; and that the interrogatories were
*improperly stricken out.*

As by an answer to a preceding interrogatory, the defend-
ant had denied the execution of the will and lease, it might
appear useless to require an answer to the two interrogatories
in question ; it is therefore proper to state the reasons which
prevent us from coming to the conclusion that they were
immaterial.

The fourth interrogatory is in these words :  " Were or
were there not two acts in Cecile's favor, executed by you,
and were they not drawn by Del Hosté, and witnessed by
two Italians ?"

To this the defendant answers " No :" that she borrowed
from del Hosté one hundred dollars ; that when he was
about starting for New-Orleans, he asked her for the hun-
dred dollars, and· she told him she had not the money, and
gave him a note for it.    Del Hosté told her he would make
her an obligation for it, which she signed.    Del Hosté then
told her it was an obligation for the hundred dollars.

The eighth interrogatory is in these words :  " Since Cecile
Where fraud passed the act to you for the sale of his slaves, have you
is charged, di-
rect and positive seen the counter letter you gave Cecile ?"
evidence is sel-          Ninth :  " Do you know where they are ?"
dom to be ob-
tained.  Circum-          Where fraud is the charge, it is rarely to be made out by
stantial evidence direct and positive testimony ; it being a principal object to
is commonly all
that can be had ; those who concocted it to avoid proof.    Circumstantial evi-
and every cir-
cumstance  be- dence is commonly all that can be obtained, and every
comes material
to ferrit out the circumstance becomes material to ferrit it out.    The very
fraud. fact of a disinclination to answer any interrogatory is suspi-
cious, for if the transaction be fair, there is nothing to conceal.
True, the party has the right to object to improper questions,

and we cannot deprive him of it, but they should be clearly such.

That the paper she admits she did sign may, in her mind, have some connection with the matter in dispute, is evident; or why, after denying that she made a will and lease, qualify that denial by the history of a paper " which Del Hosté told her was an obligation for money due to him?"

And why object to answer whether she had seen the counter letter since the sale, or whether she knew where it was? if the answers to the fourth interrogatory were absolutely true, viz., that she had executed no such paper; for, if so, it would have been impossible that she should have seen that which never existed, or know where it was. We think the justice of the case requires it to be remanded.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be annulled and avoided, and the case remanded for a new trial; that the defendant be required to answer the interrogatories; and that the appellee pay the costs of the appeal.

WESTERN DIST.
October, 1839.

M'GUIRE
vs.
PECK.

So, where interrogatories are propounded which may appear immaterial, yet. when fraud is alleged, the court is not authorized to dispense with having them answered when they are not clearly improper.

---

M'GUIRE vs. PECK.

APPEAL FROM THE COURT OF THE SEVENTH JUDICIAL DISTRICT, FOR THE PARISH OF OUACHITA, THE JUDGE THEREOF PRESIDING.

A dilatory exception, taken in limine litis, may be pleaded in the beginning of the answer to the merits.

This is an action on a promissory note, against the maker thereof.

The defendant pleaded the want of an amicable demand, and averred that the suit was oppressive and illegal, as the plaintiff agreed not to sue, in consideration of the defendant

WESTERN DIST.
October, 1839.

M'GUIRE
vs.
PECK.

having put into his hands certain promissory notes amounting to more than the demand sued on, which he promised to take in payment, and collect and pay over the surplus. He further avers, that the plaintiff is not the legal owner of the note sued on, and is not in any manner authorized to receive payment; that he has a valid defence against the original payee thereof, for payments made, &c.

In an amended answer, he propounded sundry interrogatories to the plaintiff, to answer under oath in open court, which were answered promptly and categorically.

At the second term of the court, the plaintiff's counsel moved to strike out the exceptions contained in the defendant's answer, as coming too late, after issue joined; to wit, the want of amicable demand, and the prematurity of the suit; which motion was sustained by the court, on the ground that, being a dilatory exception, it could not be pleaded in an answer to the merits, or after a judgment by default. The defendant took his bill of exceptions.

There was judgment for the plaintiff, and the defendant appealed.

*M'Guire,* in *propriâ personâ.*

*Copley,* contra.

*Martin, J.,* delivered the opinion of the court.

The defendant and appellant has placed his case before us, on a bill of exceptions to the opinion of the court, in ordering the part of his answer which relates to the amicable demand and the pre-maturity of the suit to be stricken out, on the ground that the exception was a dilatory one, and could not be pleaded in an answer to the merits, or after a judgment by default.

A dilatory exception, taken *in limine litis,* may be pleaded in the beginning of the answer to the merits.

The record does not show that any judgment by default had been taken, and it appears that the exception was taken *in limine litis,* being placed in the beginning of his answer. The court, in our opinion, erred in ordering this part of the answer to be stricken out.

It is, therefore, ordered, adjudged and decreed, that the <span style="float:right">WESTERN DIST.</span>
judgment of the District Court be annulled, avoided and <span style="float:right">*October*, 1839.</span>
reversed ; and that the parts of the answer stricken out be
reinstated, and the case remanded for further proceedings,
according to law; the plaintiff and appellee paying the costs
of the appeal.

BURLAND
*vs.*
CARROLLTON
BANK.

---

### BURLAND *vs.* CARROLLTON BANK.

APPEAL FROM THE COURT OF THE NINTH JUDICIAL DISTRICT, FOR THE PARISH OF CARROLL, THE JUDGE THEREOF PRESIDING.

Where the allegations in the petition are vague and insufficient, they may be rendered certain by the averments in the answer, and evidence admitted under them, in aid of the plaintiff's case, which would have been excluded for want of proper allegations.

A sale, having all the forms of a legal sale by authentic act, cannot be treated as a nullity, even if fraud is alleged.

This suit commenced by injunction. The plaintiff claims to be the owner of a tract of land in the parish of Carroll, with the improvements thereon, which he purchased from one James B. Rusk, in 1837, and that he has been ever since in possession and paid the taxes thereon. He further shows, that the sheriff of Carroll has levied an execution on said land, in virtue of a judgment of the Carrollton Bank against said Rusk, and is about to sell the same. He prays that the Carrollton Bank and the sheriff be enjoined from proceeding any further against said land, and that the injunction be made perpetual. The counsel for the bank pleaded a general denial, and prayed that the injunction be dissolved, with damages and costs.

The evidence showed that, on the 2d December, 1837, James B. Rusk sold and conveyed, by notarial act, the land

WESTERN-DIST.
October, 1839.

BURLAND
vs.
CARROLLTON
BANK,
and improvements under seizure to the plaintiff, for twenty-four thousand five hundred dollars, payable in four instalments.

The Carrollton Bank obtained judgment against Rusk for eleven hundred dollars, and execution issued the 22d November, 1838, and was levied on the premises in question. This seizure was nearly twelve months after the sale and transfer of the property by Rusk to the plaintiffs in injunction.

The district judge rendered judgment for the plaintiff, perpetuating his injunction, and the defendant appealed.

*Stacy,* for the plaintiff.

*Selby,* for the defendant.

*Morphy, J.,* delivered the opinion of the court.

The defendants appear before us as appellants from a judgment maintaining and rendering perpetual an injunction sued out by the plaintiff, to prevent the sale of a tract of land belonging to him, and seized to satisfy a judgment obtained by the defendants against one James B. Rusk, their debtor. They contend that the plaintiff's petition, praying for an injunction, is vague and insufficient; that, under its allegations, no evidence could be received to prove the seizure of plaintiff's property. It cannot be denied that the petition has been drawn up with great looseness and want of precision, but the defendants, in their answer and other pleadings, having been sufficiently technical to secure their damages in case of success, whatever may be vague in the plaintiff's allegations, is rendered certain by the averments of defendants, and they exhibit the not very uncommon occurrence, in our courts, of one party unconsciously assisting his adversary. We think that, under all the pleadings, as presented by the record, the material parts of the evidence have been properly admitted. We must, however, confess that we do not well understand how it can have been the interest of the defendants to resist the introduction

*Where the allegations in the petition are vague and insufficient, they may be rendered certain by the averments in the answer, and evidence admitted under them in aid of the plaintiff's case, which would have been excluded for want of proper allegations.*

of evidence to prove the seizure complained of by the plaintiff. The injunction stays the proceedings of defendants, in their suit against Rusk, their debtor, only in relation to this property of the plaintiff: if no seizure of it had taken place, there was nothing for the plaintiff to enjoin. The defendants would not appear to have been estopped, and therefore, in case of a dismissal of the plaintiff's petition, no damages could have been awarded them, as prayed for in their answer.

As to the merits, the plaintiff has proved that he is the owner of the property seized by virtue of an authentic act executed before the seizure. The sale to plaintiff cannot be treated as a nullity, and his property cannot be seized to satisfy a judgment against his vendor, even in case of fraud, which is not alleged here; although some testimony is to be found in the record, tending to establish it. The defendants would be obliged to resort to the action which the law gives to creditors, to set aside sales made by their debtors, with a view to defraud them. 5 *Martin*, *N. S.*, 361.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.

*Margin notes:* WESTERN DIST. · *October*, 1839. THE STATE *vs.* FRITH ET AL.

A sale, having all the forms of a legal sale by authentic act, cannot be treated as a nullity, even if fraud is alleged.

---

**THE STATE *vs.* FRITH ET AL.**

APPEAL FROM THE COURT OF THE SIXTH JUDICIAL DISTRICT, FOR THE PARISH OF AVOYELLES, THE JUDGE OF THE SEVENTH PRESIDING.

Where a bail bond is taken in pursuance of an order of court; the entry on the minutes requiring bail in seven hundred dollars, when the bond is taken in the penalty of seven thousand dollars; and the judge, at a subsequent term corrects and alters the minutes to seven thousand dollars: *Held*, That the bond is not thereby invalidated; and the sureties can only be relieved on the score of error in signing

THE STATE
*vs.*
FRITH ET AL.

it, which does not result from altering the minutes whether done legally or illegally.

The sureties in a bail bond are not entitled to an *exoneratur* when they have made no formal surrender of the principal; even if he be confined in prison for a subsequent offence not bailable, and afterwards makes his escape.

So, also, bail are not exonerated when they have made no surrender of the principal, even where the sheriff and coroner both resign; for these officers are required to act until their successors are appointed.

This case comes up from a judgment on a bail bond against the principal and his two sureties, taken in the penal sum of seven thousand dollars.

The defendant, Archibald Frith, was indicted for stabbing with the intent to kill and murder one S. Read, and gave bail in the sum of seven thousand dollars, with two sureties.

In entering up the judge's order requiring bail, it was written seven *hundred* dollars, but the sheriff took bail, and the principal, with his two sureties, signed a bail bond for seven thousand dollars. It was afterwards, at the next term, suggested to the judge presiding, that there was a clerical error in entering the order of bail on the minutes of the court, and he ordered the word *hundred* to be stricken out, and the word *thousand* written over it, which made it read seven thousand instead of seven hundred dollars.

While out on this bail bond, Frith was arrested and committed to jail for the murder of one John Dorman, in June, 1838. During his confinement, and before any indictment was found, he broke jail, and made his escape. At the October term, 1838, of the Avoyelles District Court, Frith and his bail were called out on their recognizance, made default, and a judgment *ni. si.* entered; which was to be made final at the next term of the court, *unless* the defendants should show cause to the contrary.

The defendants filed their answer to the next term, and resisted the final judgment on the following grounds:

1. The bail bond signed by them could have no legal effect, inasmuch as there was no legal order of court, or any competent authority for taking such an obligation. The order

requiring a bail bond, was for the sum of seven hundred dollars, as appears from an inspection of the minutes, or records of the court. The records showed this for six months after bond was taken until they were illegally altered by the court, and that this alteration is illegal, and was made without notice to them, and without their knowledge.

2. If the bond is legal and binding, it can only be for seven hundred dollars, agreeably to the original order of court under which it was taken.

3. The state cannot recover on this bond, because the principal was arrested and confined in prison, charged with the crime of murder, which made him no longer bailable : The defendants were, therefore, entitled to have an *exoneratur* entered.

4. The existence of the fact that the principal was confined in jail for a crime which was not bailable, is so absolutely inconsistent with the obligations of the bail bond, as to vitiate and supersede its legal operation. The prisoner could not be in the custody of his sureties, and confined in close jail for an offence not bailable.

5. The fact of being imprisoned for an offence not bailable, the motive or inducement for giving bail in the first instance ceased from that moment.

6. They are discharged by operation of law, because both the sheriff and constable resigned, and they were precluded from making a formal surrender. In fact it was impossible, when there was no officer to whom it could be made.

For all these grounds and causes they pray to be discharged, and for judgment discharging them with their costs allowed.

Upon these issues the cause was tried. The district judge rendered judgment *in solido*, against A. Frith, principal, and F. Cullum and T. Mills, his sureties, in the sum of seven thousand dollars ; from which the defendants appealed.

*Brent,* and *O. N. Ogden* (District Attorney,) argued on behalf of the state, and contended that the error in the entry on the record was merely clerical, and the court had a right

to correct it. There is a distinction between amending these mistakes which are occasioned by the act of the party, and those which are occasioned by the act of the clerk, and are mere clerical mistakes. *Tomlin's Law Dictionary, vol.* 1, 71, 74. *Cowper's Reports*, 699.

2. The order of the court requiring bail, was merely directory to the sheriff, and communicated in fact *ore tenus* by the judge to that officer. The sheriff was not obliged to inspect the minutes to know how the order was entered, nor was it necessary that a copy should be served on the accused ; and no notice of any irregularity in the entry of this order was taken before signing the bond, and not until after its condition was broken ; consequently, the defendants knew nothing of the manner in which it was entered, and it made no part of the condition or basis of the obligation of the bond. There was no error to invalidate the contract entered into by signing the bond.

3. There is a curious fact presented by the record, which shows the entry of the clerk to be purely an error in writing up the order of court, requiring bail of the principal and his accessories. The sum of seven hundred dollars only was exacted from the principal, according to this order, when the accessories were required to give bail in the sum of two thousand dollars each. This shows the error to be palpable in the entry; for a *nolle prosequi* was entered as to the accessories.

4. No irregularity in any of the proceedings anterior to the taking of the bond, nor any want of authority in the person taking it, can be pleaded, as detracting in any degree from its validity, and binding force and effect, for it is a settled principle of our law, that *as a man binds himself, even so is he bound.* 3 *Martin,* 565. 2 *Martin, N. S.,* 681. 5 *Ibid.,* 194. 4 *Ibid.,* 25.

5. The bond in this case was a *voluntary* obligation incurred by the obligors, and if the consideration of it be not illegal, according to our laws, it will be considered as *a law* in relation to the parties concerned. *Louisiana Code,* 1895.

6. Under no circumstances can the principal in this bond

be relieved from its obligations, because his non-compliance with its stipulations has resulted from his own act, and no man will be permitted to take advantage of his own wrong.

*Hyams,* for defendants, insisted, that no alteration of the record could be made, even with the view to correct an error. Judicial proceedings must be proven by the record, and not by parole; and courts of justice can only speak by means of their record. 2 *Starkie on Evidence,* 545, 571–2. Proof of public documents, such as records of a court, is by inspection. 1 *Ibid.,* 189. No collateral proof is admissible to impeach a record. 2 *Ibid.,* 705.

2. Where a deed or instrument is executed under some special authority, which prescribes the mode and form of execution, it will be invalid, unless all these requisites be pursued and observed. 1 *Starkie,* 322.

3. The bail should have been released as soon as the principal was confined to prison on the subsequent charge of murder. The courts in England universally give relief where the principal is in confinement by the act of the government, either by *habeas corpus* or *exoneratur.* They do not require a *habeas corpus* where it is inconvenient, but relieve by *exoneratur.* 13 *East's Reports,* 457–8.

*Dunbar, Bryce* and *Elgee,* also appeared for the defendants, and relied on the grounds set up in the answer or cause shown to the rule.

*Martin, J.,* delivered the opinion of the court.

This is a civil proceeding against sureties on their bail bond. They were regularly called on their recognizance at the proper term of court, and failed to appear. A judgment, *ni si,* was entered, and a rule taken to show cause why final judgment should not be entered up.

The defendants showed for cause, why judgment should not be entered on their recognizance for the appearance of the principal, who was charged with an assault and stabbing with an intent to commit murder, the following grounds:

1. The illegality of the bail bond.

2. The state cannot recover, and the bail are entitled to an *exoneratur*, because they were disabled from surrendering the principal, in consequence of his close confinement in prison for an offence not bailable.

3. The sheriff and coroner having resigned, there was no officer or person to whom the bail could surrender the principal.

I. It is contended that the bond was illegal, because there was no order of court or any competent authority to take it; the order of court requiring a bond being for the sum of *seven hundred* dollars, as appears from an inspection of the record. That the records of the court, as they appeared for six months after taking the bond, exhibited the order of bail in the sum of seven hundred dollars only; and if this entry was afterwards altered or erased, it was done illegally, and without the knowledge or notice to these defendants; and if the bond is good for any sum, it can only be so for the sum of seven hundred dollars, agreeably to the order of court, or authority under which it was taken.

It appears from the record and evidence of the case, there was an order of court requiring the principal charged with the offence, to give bail for his appearance at court. The fact further appears that this order, as entered on the minutes of the court, directed the penalty of the bond to be in the sum of seven hundred dollars; and at the next term, the court ordered the entry to be amended, by the insertion of the sum of seven thousand dollars. The defendants had, in the meanwhile, given bond in the penalty of the latter sum.

*Where a bail bond is taken in pursuance of an order of court, the entry on the minutes requiring bail in seven hundred dollars, when the bond is taken in the penalty of seven thousand dollars, and the judge, at a subsequent term,*

Admitting the amendment of the order to be illegal, it cannot affect a bond which was given previously thereto. And if the defendants can be relieved at all, it must be on the ground of error. Nothing shows this to be the case. If there be no error, the bond must be valid for the sum mentioned therein. And when we consider the smallness of the sum of *seven hundred dollars*, demanded as a penalty from the principal offender, in an indictment for an assault with an intent to murder, in connection with the fact of two

thousand dollars having been demanded of the accessory, under the same charge ; and also the circumstance of the principal and his sureties having signed the bond, with a penalty of seven thousand dollars, and likewise from the additional fact of the district judge making the amendment or alteration in the original entry, from seven hundred to seven thousand dollars, whether done illegally or not, we are forced to the conclusion that there was no error in the execution of the bond.

II. The bail are not entitled to an *exoneratur* in this case, because they have made no formal surrender. The principal being confined or imprisoned for an offence not bailable, did not prevent a formal surrender, which might have been made. The principal being in the custody of the sheriff, by a formal declaration to that officer, that the bail wished to surrender him, and did not consider themselves any longer bound for his appearance, they might have been exonerated.

III. In relation to the other ground relied on, the defence is equally untenable. The sheriff and coroner, even after having resigned, were empowered by law to act, and to continue their respective functions and duties until their successors were appointed. Their resignations, therefore, did not prevent the surrender of the principal offender into the custody of the law and its officers.

It can hardly be doubted that before the passage of the law by the legislature, requiring sheriffs and other officers to act after their term of service has expired, until their successors are appointed, or without it, the bail could not be discharged by the resignation of the sheriff and coroner ; although it might be inconvenient, and their liability extended beyond their wish to retain the principal offender, until a new officer should be appointed.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.

WESTERN DIST. October, 1839.

THE STATE vs. FRITH ET AL.

corrects and alters the minutes to seven thousand dollars : *Held,* That the bond is not thereby invali-. dated ; and the sureties can only be relieved on the score of error in signing it, which does not result from altering the minutes, whether done legally or illegally. The sureties in a bail bond are not entitled to an *exoneratur* when they have made no formal surrender of the principal, even if he be confined in prison for a subsequent offence not bailable, and afterwards makes his escape. So, also, bail are not exonerated when they have made no surrender of the principal, even where the sheriff and coroner both resign ; for these officers are required to act until their successors are appointed.

WESTERN DIST.
October, 1839.

GUICE
vs.
HARVEY.

GUICE *vs.* HARVEY.

APPEAL FROM THE COURT OF THE SEVENTH JUDICIAL DISTRICT, FOR THE PARISH OF OUACHITA, THE JUDGE OF THE SIXTH PESIDING.

In actions of slander, when the words spoken are uttered with the intent to defame and injure the plaintiff in his business and livelihood, the law authorizes a recovery in damages for the injury sustained, without showing special damages.

The jury have no fixed rule in assessing damages in cases where the words are actionable. They may take into consideration the trouble and inconvenience which the plaintiff has been at in seeking relief, as making part of the injury sustained.

This is an action of slander. The plaintiff charges that the defendant, maliciously and wickedly, and with a view to defame and injure his good character, on or about the 15th day of July, 1837, and at many other times and places in public companies, did utter in substance, that your petitioner "*had counterfeited a bill of goods from New-Orleans;*" that he "had the bill in his possession, and can prove it to the satisfaction of any man;" also, " he (meaning petitioner) did counterfeit, or alter a bill of goods;" also, " James R. Guice has altered the amount of a bill; I have the bill, and can prove it to the satisfaction of any gentleman;" also, " he has altered the amount of a bill of goods; I have the bill, and can prove it;" also, " he did counterfeit or altered a bill, or a bill of goods received from New-Orleans, for me;" also, " Guice (meaning petitioner) has altered the figures on a bill of goods, and I will prove it;" also, "Guice has altered the face of a note, and I can prove it, for I have the note in my possession;" also, " he (meaning petitioner) is guilty of forgery; he has altered the amount of a bill of goods which he received for me from New-Orleans, and I will prove it;" and also, " I say he has committed forgery; I can, and I will prove it." The petitioner alleges that defendant did, on the 15th July last, and at many other times, make use of and publicly utter the said expressions and malicious charges, and with the malicious intent to defame his character, and

injure his good name and reputation; and he expressly alleges, that each of said expressions and charges are false, malicious and unfounded. Wherefore, and by reason thereof, he (the petitioner) has been damaged two thousand and five hundred dollars; for which he prays the verdict of a jury in his favor, and judgment thereon.

The defendant denies that he ever slandered plaintiff, as stated in his petition. He says, that in June or July, 1836, he deposited a sum of money with the plaintiff, to be sent to New-Orleans by some steam-boat, to buy certain articles of merchandize; that, on settlement, plaintiff presented him with a bill, purporting to be a bill of the goods, when, in fact, it was not such bill, but one made out by the plaintiff; and he then said the bill presented was not genuine, but was made or forged by the plaintiff or some other person, which he is ready to verify. He pleads a general denial to every other allegation in the petition.

Upon these pleadings and issues the cause was tried before a jury.

It appears the plaintiff resided at the steam-boat landing on the Ouachita river, where steam-boats were in the habit of landing goods for the neighbors and back settlers, and leaving them with him; and many times the bills of such goods were left with him, as well as bills of freight. In most cases he was in the habit of paying the steam-boats, and settling with the persons owing freight, &c. The expressions used were uttered and published by the defendant Harvey, and intended to apply to the plaintiff in relation to a bill of goods the latter had received for him.

*Sterling*, sworn, says he was present at the steam-boat landing, at the mouth of Bayou Bartholomew, in July last, together with others, when he heard defendant accuse plaintiff " *of forging a bill.*" Witness did not understand whether it was a bill of goods or freight, but that he also said " he had the bill in his possession and could prove it." Witness understood from plaintiff at the time he would not lie under such an imputation; and the only ground that defendant had for slandering him was, that he had

WESTERN DIST.
October, 1839.
―――――
GUICE
vs.
HARVEY.
received goods for defendant and one Folk, and kept the original bill, and furnished defendant with a copy, so far as he was concerned.

*Bartlett,* sworn, says he heard defendant say that plaintiff " had altered a bill, either a bill of goods or freight bill, and he could prove it :" said at another time that the plaintiff " had altered a bill of goods, and he would make him suffer for it." Witness understood defendant to mean that plaintiff had done this to defraud him.

*Miller,* sworn, states that he heard defendant, on the 15th July, say, that plaintiff had altered the face of a bill, and he could prove it to the satisfaction of any one.

Other witnesses testified that they had heard defendant say, that plaintiff had "*forged or counterfeited* a bill."

Defendant's witness explained the way in which he made the charge. Folk says, he had a keg of nails in a bill of goods for Harvey, the defendant; that plaintiff received them, and when he got his nails, the plaintiff made out separate bills in his own name, for witness and defendant, and kept the original bill to settle by; that this was the origin of the charge. Witness says defendant stated since, that the original bill was not the bill he charged the plaintiff with having forged; " that he was in possession himself of the bill that was forged, and no one should see it." This conversation took place since the suit was commenced.

The judge charged the jury " that they might find damages to the amount of the reasonable expenses of the suit, without any actual damage or injury having been proved." To this charge the defendant's counsel excepted.

The jury returned a verdict of four hundred and fifty dollars in damages for the plaintiff. From judgment rendered thereon the defendant appealed.

*M'Guire,* for the plaintiff, contended :

1st. The judgment is right, and should be affirmed. In actions of slander, special damage need not be proven, and may be implied by the jury. 2 *Louisiana Reports,* 74. 3 *Ibid.,* 207.

2d. The slander in this case amounts to a charge of a criminal nature, " altering or forging an account or receipt." 1 *Moreau's Digest*, 384, *section* 2. *Louisiana Code*, 1928.

3d. Every man is responsible for the damage he does, either intentionally, negligently, or by imprudence. *Louisiana Code*, 2294, 2295. 2 *Starkie*, 461, *and notes.*

4th. The judge properly charged the jury that they might find the expenses of the suit as special damages, but they did not find special, but general damages.

5th. Every allegation in the petition is fully supported by the evidence, and would sustain an action even at common law, amounting to a charge of crime, and being calculated to injure the plaintiff in his business of receiving articles at a steam-boat landing.

6th. The jury are the proper judges of the tendency to defame, by the words used, and the party using them are subject to the worst interpretation that can be put upon them, and cannot plead his own want of veracity to relieve him from the penalties of the law.

*Downs* and *Copley*, for the defendant, insisted, that no action would lie in this case, as there was no special damage shown ; and the words proved to have been spoken, are not actionable in themselves. Where the party charged that the plaintiff swore to a lie, in relation to his testimony given on a trial, which implied swearing falsely, and the commission of perjury, yet, when it only related to the part of the testimony that was immaterial, it was held that the words were not actionable. 20 *Johnson's Reports*, 344, *and* 13 *Ibid.*, 81.

2. The words spoken must import some crime or offence for which the party might be punished criminally, to be actionable. In all other cases the party must prove a special damage. 4 *Bacon's Abridgment*, title " *Slander*," letter *L.* 483. 3 *Blackstone's Commentaries*, 118–119.

3. It is not sufficient to show that the defendant made use of such words, or to the like effect ; but they must have a certain meaning and application. Now, the witnesses in this

GUICE
vs.
HARVEY.

case say they do not know whether the bill spoken of, was a bill of goods or a bill of freight.

4. If the court should come to the conclusion that the words spoken are actionable, and tend to charge the plaintiff with an offence for which he might be indicted and punished, then the verdict and judgment of the court below must be reversed, and set aside, and the cause remanded on the bill of exceptions taken to the charge of the judge. See 11 *Louisiana Reports*, 238, 288.

*Martin, J.,* delivered the opinion of the court.

This is an action of slander, in which the plaintiff charges that the words were spoken with the intent of injuring, and did injure him in his business and manner of getting his livelihood, which was to receive and forward goods coming from New-Orleans for the planters and people living in his vicinity, and for the back settlers; and also in collecting and paying freight and charges on the same.

The general issue was pleaded. There was a verdict and judgment for the plaintiff, and the defendant appealed.

Our attention is drawn to a bill of exceptions taken to a part of the charge, in which the court instructed the jury, that they might give damages to the amount of the reasonable expenses of the suit, without any actual injury having been proved.

In actions of slander, when the words spoken are uttered with the intent to defame and injure the plaintiff in his business and livelihood, the law authorizes a recovery in damages for the injury sustained, without showing special damages.

The jury have no fixed rule in assessing damages in cases where the words

The appellant's counsel has contended, that in his address to the jury, he informed them that the plaintiff claimed no vindictive damages, and had brought the suit merely to establish that the charge made against him was malicious and false; and he would be perfectly satisfied with damages to the amount of the reasonable expenses incurred in prosecuting his suit.

In suits like the present, the law authorizes the plaintiff to recover, although he shows no special damage. The jury have no fixed rule in assessing the sum for which they are to give a verdict. They may take into consideration the trouble and inconvenience which the plaintiff has been at in seeking relief; for this is part of the injury which he sustains.

If the judge in his charge meant that the costs and charges of the suit were the necessary measure of damages, he erred; for the legal costs and charges must be paid in addition to the damages assessed. Believing, however, that he intended to convey the idea that the jury might give a compensation to the plaintiff for the trouble, inconvenience and expenses, which the defendant had wrongfully occasioned, we refrain from remanding the case, with directions not to repeat the charge. This would create unnecessary delay and costs; and probably would not produce a different result.

In cases in which damages are to be assessed without any being proved, those which result from the prosecution of the suit in procuring redress, are, perhaps, the plainest and most palpable ones, on which the attention of the jury can be fixed.

On the merits, the verdict of the jury being supported by the evidence, and the damages not complained of as excessive, the judgment cannot be disturbed.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.

WESTERN DIST.
*October*, 1839.

GILL
*vs.*
HUDSON.

are actionable. They may take into consideration the trouble and inconvenience which the plaintiff has been at in seeking relief, as making part of the injury sustained.

---

## GILL *vs.* HUDSON.

APPEAL FROM THE COURT OF THE SIXTH JUDICIAL DISTRICT, FOR THE PARISH OF RAPIDES, BEING THE SECOND APPEAL IN THIS CASE, GRANTED BY THE JUDGE OF THE FIFTH DISTRICT.

Where the record was not brought up and filed on the return day, nor within three judicial days thereafter, the court refused to sustain the appeal on the ground that the *delay* was caused by mistake of the appellant and his counsel, in supposing it had been filed by the clerk in proper time.

This appeal was taken, returnable the *first* Monday of October, 1839, to the court, sitting at Alexandria. The record was not brought up and filed until Saturday of the first week of the court, which was the sixth judicial day of the term.

The counsel for the defendant and appellee moved to dismiss the appeal, as not having been filed on the return day, and within the time prescribed by law.

The plaintiff presented his affidavit, to show that the omission to file the new appeal on the return day, was caused by mistake ; and prayed that it might be maintained as filed.

*Dunbar*, for the motion to dismiss.

*Bryce*, contra.

*Martin, J.*, delivered the opinion of the court.

The dismissal of the appeal is prayed for, on an allegation that the transcript was not returned and filed in due time. The appeal was made returnable on the first Monday of October, 1839, and the transcript was not filed until the Saturday following, which was the sixth judicial day of the term.

The appellant has filed his affidavit, stating, that A. L. Bringhurst, as deputy clerk in the District Court, made out the transcript, and the affiant knowing that he was also deputy clerk of the Supreme Court, trusted that he would have had the transcript brought up, and timely filed. The affiant further states that he has been informed by his counsel, and verily believes, that they were under the impression that the transcript was regularly filed on the first day of the term. That the cause was fixed for trial, by agreement of counsel, under this impression. The affiant shows that this error was assisted and confirmed on the minds of the counsel on both sides by the fact that the same case was on the docket of this court at the last term, and was dismissed ; that the old transcript being on file, and among the suits at the present term, misled the counsel, and induced the belief that the present appeal was regularly filed.

It does not appear that the appellant, or any of his counsel, took any steps to have the transcript filed in due time ; and the circumstance of the deputy clerk of this court having made out the transcript for the clerk of the District Court, cannot be received as evidence of his having been requested to attend to the filing of it in this court.

The remainder of the affidavit which contains nothing within the knowledge of the affiant, must have very little weight with us ; as it contains only matters within the knowledge of the appellant's counsel, in whose handwriting it appears to be drawn up. Those matters would have had more weight if they had been sworn to by the counsel.

It appears to be conceded in the argument, that the appellee's counsel did not agree to have the case set down for trial, but were silent when the appellant had it fixed for hearing.

It also appears to us, that before the return day, and the meeting of this court, the clerk of the District Court having died, the authority of his deputy clerk, (also the clerk of this court,) expired.

The appeal must, therefore, be dismissed, at the costs of the appellant.

<div align="right">
WESTERN DIST.<br>
October, 1839.<br>
<br>
MARTIN ET AL.<br>
vs.<br>
NALLY.
</div>

---

## MARTIN ET AL. vs. NALLY.

APPEAL FROM THE COURT OF THE SIXTH JUDICIAL DISTRICT, FOR THE PARISH OF RAPIDES, THE JUDGE OF THE FIFTH PRESIDING.

The plaintiffs obtained an injunction restraining the defendant from carrying on a bakery in wooden buildings adjacent to theirs, and in the midst of the town of Alexandria, on the allegation of imminent danger to their property, and a nuisance. The jury found twelve hundred dollars in damages for the defendant, on his plea in recon-

WESTERN DIST. October, 1839.

MARTIN ET AL. vs. NALLY.

vention for injury and loss sustained by the injunction, which this court refused to disturb.

Questions of fact, and the assessment of damages are peculiarly subjects for the consideration of a jury.

This suit commenced by injunction. The plaintiffs allege, that the defendant is a tenant of one of them, (Young and wife,) occupying a house and lot in the town of Alexandria, in which he has established a bakery, or wooden bake-house and oven, in the midst, and contiguous to their buildings. That from the combustible materials and construction of said bakery, and its contiguity to said buildings, there is daily and hourly danger of a conflagration of the bake-house and all the adjoining buildings, which would cause great injury and destruction of the property of the petitioners.

Martin, one of the plaintiffs, specially alleges, that he has leased the corner buildings from Young and wife, for five years, which adjoins the house and lot of defendant; and that he has erected new buildings thereon in lieu of the old ones, at an expense of four thousand dollars, and has a large stock of goods in store, and in consequence of the situation of this bakery, he has been unable to procure or effect insurance on his store-house and goods, without paying a much higher rate of insurance than usual. Thoms, also one of the plaintiffs, alleges he is the owner of a valuable storehouse and lot adjoining the bake-house of Nally, and considers his property in imminent danger from the bake-house. The plaintiffs further allege, that they have complained of the danger of said bake-house to the said Nally in vain ; and though amicably requested to remove the same, he still neglects and refuses to do so. They pray that said bakery be removed and abated as a nuisance, and that the defendant be cited and caused to remove the said bake-house, and that he and all others be restrained and inhibited from baking and using the same as a bakery, &c.

The defendant pleaded a general denial, except such parts of the petition as were specially admitted. He admits he occupies the premises as a bakery, on a lease from the plain-

tiffs, Young and wife, with the express understanding that he was to carry on his bakery there. He further avers, that he has been in the legitimate exercise of his legal rights in carrying on the baking business on the premises from 1831 to 1837, when he was arrested by an order of court, enjoining him from the further exercise thereof. That said order was procured without any legal or rightful cause, and has produced much damage to him, and continues to injure him in his business. He avers, that the conduct of the plaintiffs has been illegal, oppressive and malicious, and greatly to his injury. He prays that the injunction be dissolved, and that he have judgment over against the said plaintiffs in reconvention for two thousand dollars in damages, and that he be quieted in his occupation and premises.

Upon these pleadings and issues the cause was tried before the court and a jury.

The testimony was a little contradictory. The first witness for the plaintiffs deposed, that he saw the bakery a short time before issuing the injunction. The bake-house had been on fire, which had burnt through the weather-boarding. It was built on wooden sills, or sleepers, and he considered it, from the observations he made, to be dangerous. There was a covering of pickets about two feet from the top of the oven. The houses all around are all built of wood, and the kitchen of the defendant was within a few feet of the oven. The plaintiff, Martin's house, is about six feet from the oven. Witness thinks a fire originating in the bake-house would be very dangerous, and in all probability burn down the entire square. It is situated in a place of considerable business, near the centre of town.

Chew, agent of the insurance office, was examined; and says he considers this bakery very dangerous; that there are many places for bake-houses in the rear of town, where they might be carried on in safety. He charged Mr. Martin a half per cent. more insurance after he removed his store to the vicinity of this bakery.

The defendant showed that he had carried on a very profitable business before he was stopped. It also appeared

he submitted his case and the condition of his buildings to the consideration of the trustees of the town, to know what kind of an oven he must construct, or what he should do to make it safer; but they never examined or acted upon it. Martin was anxious that the trustees should act, and order the bakery to cease.

Thoms withdrew from the suit.

From all the evidence adduced, the jury returned a verdict of twelve hundred dollars in damages for the defendant, and from judgment rendered thereon the plaintiffs appealed.

*Dunbar,* for the plaintiffs, strenuously contended that the bakery was shown to be highly dangerous to the safety of the plaintiffs and their property, and was a nuisance which ought to be abated. The defendant had been requested and entreated to remove his establishment out of the business part of the town to avoid the risk of burning down the houses where it was situated, but he still persisted in his course, until he was stopped by injunction.

2. The evidence, he insisted, fully sustained the plaintiffs, and the injunction ought to be perpetuated.

*Elgee* and *Hyams,* contra.

*Martin, J.,* delivered the opinion of the court.

The plaintiffs, Martin, Young and wife, and Thoms, obtained an injunction inhibiting the defendant from baking in an oven built in a wooden house adjacent to those of the plaintiffs, on an allegation that the bake-house and oven were in such bad condition and so contiguous and near to the other wooden buildings, and being built of combustible materials, fire could not be made in the oven without imminent danger of a conflagration.

The defendant denied the allegations; prayed for the dissolution of the injunction, and claimed damages in reconvention.

The case was tried by a jury who returned a verdict for the defendant, and assessed his damages under the plea in

reconvention, in the sum of twelve hundred dollars. The injunction was dissolved, and the plaintiff, Thoms, having withdrawn from the suit, judgment was rendered against the others in conformity with the verdict, and they appealed.

The appellants urged, that in consequence of the danger resulting from the proximity of the bakery to their buildings and its ill and dangerous construction, they had a right to the relief which they sought; and they showed that one of them had not been able to effect the insurance of his house and goods without paying an excessive premium. The agent of the insurance office deposed, that he had required a premium of one half of one per cent. above that which is taken for the insurance of buildings, constructed of the same materials as those of the plaintiffs, which are considered as ordinary risks from their situation; not only on account of the vicinity of the bakery, but also in consequence of the houses being more crowded together, in that part of the town than elsewhere. It was shown that the defendant applied to the municipal authorities of the place, to examine his bakery, and designate any alteration which they might deem proper; and it does not appear that his application was ever acted on. The remainder of the evidence is desultory, and in some degree contradictory. The question of fact was peculiarly the subject for the consideration of a jury, and the assessment of damages still more so. A close attention to the evidence has led us to the conclusion that their verdict ought not to be disturbed.

Questions of fact, and the assessment of damages, are peculiarly subjects for the consideration of a jury.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.

WILLIAMS *vs.* LANIER.

APPEAL FROM THE COURT OF THE SIXTH JUDICIAL DISTRICT, FOR THE
PARISH OF RAPIDES, THE JUDGE OF THE FIFTH PRESIDING.

In a case involving facts only; and there being no positive evidence of
the facts as alleged, this court refused to disturb a verdict in the
negative.

This is an action in which the plaintiff alleges, that the
defendant killed four of his mules, worth one hundred and
fifty dollars each, and claims the sum of six hundred dollars
as compensation for their value.

The defendant pleaded a general denial, and averred that
the allegations in the petition were false.

The evidence showed, that the plaintiff and defendant's
plantations joined, and that the mules and stock of the
plaintiff were in the habit of breaking into the cornfield of
the defendant, and committed such devastation, that he was
frequently heard to exclaim that they *would eat him up.*
About this period two of the plaintiff's mules were found
dead in the defendant's field, caused by buck shot ; and the
other two shot in the same manner outside of the enclosure.
There was, however, no positive evidence that the defendant
either killed them himself or caused them to be killed.    He
was generally esteemed as a neighbor and good citizen.    No
previous quarrel had occurred, and the plaintiff had charged
his overseer to keep his stock from molesting the defendant.

The cause was submitted to a jury, who, from the evidence
before them, returned a verdict for the defendant, and from
judgment rendered thereon the plaintiff appealed.

*Dunbar,* for the plaintiff, contended, that the evidence fully
warranted the jury in giving the amount of the plaintiff's
demand, as it proved or authorized the presumption that the
defendant did kill the mules as alleged.    He urged that this
court should reverse the judgment, and give such a one as
the evidence authorized, and assess the damages to which
the plaintiff was entitled.

*Elgee*, for the defendant, urged the affirmance of the verdict and judgment.

WESTERN DIST.
*October*, 1839.

BALLARD ET AL.
*vs.*
LEE'S ADMINIS-
TRATOR.

*Martin, J.*, delivered the opinion of the court.

The plaintiff is appellant from a judgment which refuses him the value of four of his mules, which he alleges were killed by the defendant.

The general issue was pleaded ; and there was a verdict for the defendant.

The case presents no question of law, but turns entirely on that of fact. A close examination of the evidence, has left on us the impression that the verdict of the jury ought not to be disturbed.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.

BALLARD ET AL. *vs.* LEE'S ADMINISTRATOR.

APPEAL FROM THE COURT OF PROBATES FOR THE PARISH OF CONCORDIA.

A *return* of service of petition and citation, which states that they were left with " W. F., a free white person over fourteen years of age, *residing at the defendant's domicil*," is insufficient. If he be absent, citation *must be left at defendant's usual place of domicil*, with a free person apparently above fourteen years of age, residing there.

If a judgment by default be taken before the defendant is in court by proper service of citation, although he be afterwards personally cited, final judgment cannot be entered without a judgment by default being again taken.

This is an action against the administrator of C. S. Lee's estate, on a bill of exchange, drawn by the deceased.

The sheriff made the following return of service of citation, &c. : " Served, on the 25th September, 1838, by leaving

WESTERN DIST.
October, 1839.

BALLARD ET AL.
vs.
LEE'S ADMINIS-
TRATOR.

a copy of this citation and of the petition with William French, a free white person over fourteen years of age, *residing* at the defendant's domicil in this parish."

The defendant failed to appear, and a judgment by default was taken. Before proceeding to final judgment, the plaintiff filed an amended petition, praying to be allowed interest at the rate of eight per cent. instead of five per cent., &c. This amended petition, and a citation, was served on the defendant *personally*.

The defendant failed to appear, and put the case at issue, and a judgment by default was taken on the *amended petition only*. No answer having been filed to the original or amended petition, final judgment was entered *ex parte* for the plaintiff on both petitions for the whole amount demanded. From this judgment the defendant appealed.

*Stacy* and *Dunlap*, for the appellant, assigned various errors, as apparent on the record, on which they relied for a reversal of the judgment.

*Barbour*, contra.

*Martin, J.*, delivered the opinion of the court.

The defendant and appellant has placed his case before us, on an assignment of errors, one of which only it becomes necessary to notice : to wit, the want of legal service of the original citation.

The sheriff's return states, "that he made service by leaving a copy of the citation and of the petition with William French, a free white person over fourteen years of age, *residing at the defendant's domicil* in this parish."

*A return of service of petition and citation, which states that they were left with "W. F., a free white person over fourteen years of age, residing at the defendant's domicil," is insufficient. If he be*

The Code of Practice, article 189, requires "that service must be made by leaving copies of the citation and petition *at the usual place of domicil* or residence of the defendant, if he be absent, by delivering them to a free person apparently above the age of fourteen, *living in* the house."

There is but one place of service, which is the domicil of the defendant. The service must be *made there*, and if it be made elsewhere it is bad. Nothing shows that French

received the papers from the sheriff *at the domicil* of the defendant. *Huntstock* vs. *His Creditors*, 10 *Louisiana Reports*, 488.

The plaintiff's counsel, however, has contended that this defect in the original citation is cured by the service of a copy of an amended petition, and a citation to answer thereto. The suit was brought on a bill of exchange. The original petition claimed the amount of the bill, and interest at the rate of five per cent. per annum, and ten per cent. damages. No answer having been filed, judgment by default was taken on the 7th of November, 1838. Afterwards, to wit, on the 12th February, 1839, the plaintiff, with leave of the court, filed an amended petition, in which he alleges, that the bill having been drawn in the state of Mississippi, he was entitled to interest at the rate of eight per cent., and prayed judgment accordingly.

A copy of this amended petition, and a citation to answer thereto, was duly served on the defendant in person. He filed no answer, and the 6th March following, judgment by default *was taken on the amended petition.*

On the 5th of April, 1839, a final judgment was rendered for the principal, interest, damages and costs, the motives of which are stated to be, the law and evidence being for the plaintiffs; " *and the judgment by default not having been set aside,* and the plaintiffs having proved their demand, it is ordered, &c."

The first judgment by default having been taken while the defendant was not in court, was illegal, and must be considered as a nullity. The second, confined expressly to the amended petition, is the only one which could be legally made final. The court, in our opinion, erred in extending it to what was demanded in the original petition.

It is, therefore, ordered, adjudged and decreed, that the judgment of the Court of Probates be annulled, avoided and reversed; and that ours be for the defendant, as in case of non-suit, the plaintiffs and appellees paying costs in both courts.

WESTERN DIST.
October, 1839.

BALLARD ET AL.
*vs.*
LEE'S ADMINISTRATOR.

*absent, citation must be left at defendant's usual place of domicil,* with a free person apparently above fourteen years of age, residing there.

If a judgment by default be taken before the defendant is in court by proper service of citation, although he be afterwards personally cited, final judgment cannot be entered without a judgment by default being again taken.

PATTERSON *vs.* BONNER ET AL.

APPEAL FROM THE COURT OF THE SIXTH JUDICIAL DISTRICT, FOR THE PARISH OF RAPIDES, THE JUDGE OF THE FIFTH PRESIDING.

Where a judgment of a court of competent jurisdiction stands unappealed from and is final, it is conclusive on all the matters embraced in it: whatever may be the errors or injustice done by it, it forms *res judicata*, and cannot be re-examined.

In a sale with a defeasible condition (*vente à rémêré*), it rests solely on the will of the vendor to dissolve the contract, and his expression of that will must have the same effect as the will of both parties in creating the contract.

So, where the vendor in a sale, with a defeasible condition, in the presence of two witnesses, offered to repay the price and redeem the property within the time limited, which was refused, and he made no consignment of the money: *Held*, that this was a sufficient notification to the vendee of the intention to redeem and preserve to the vendor his right of action to dissolve the contract after the term had elapsed.

Although the right of redemption is preserved to the vendor, of his intention and readiness to redeem, within the time limited, yet, without a consignment or tender of the money, he is not entitled to the fruits or profits.

In a *vente a rémêré*, where the vendee has possession and enjoys the fruits or profits of the property, a stipulation to pay ten per cent. interest on redemption and repayment of the price, will be deemed illegal.

This is an action to recover twenty-four slaves *and their increase*, together with three thousand dollars a year hire, and five thousand dollars in damages, for their illegal detention by the defendant. Also, for an injunction to restrain the execution of a judgment which Mrs. Bonner had obtained against the plaintiff, and was proceeding to sell his property thereon.

The plaintiff shows that on the 18th March, 1825, he sold to the defendant, Mrs. Rosanna Bonner, twenty-four slaves, by notarial act, for the sum of seven thousand nine hundred and twenty-two dollars, for which he received her notes, payable by instalments; the last falling due the first of

March, 1828.   The sale is absolute in its form, but there is
a memorandum appended to it in the following words:

"It is agreed, that the said Thomas Patterson shall have
the privilege of redeeming the negroes mentioned within, at
any time within three years after the last instalment shall
have been paid, by *repaying* the price, as expressed within, to
the said Mrs. Rosanna Bonner, her heirs and assigns, with
interest on the same at ten per cent. per annum from the
time such payment shall have been made till such redemp-
tion shall take place.   In testimony whereof the parties
hereto subscribe their names, this 18th day of March, 1825.
                     " THOMAS PATTERSON,
                     " ROSANNA BONNER."

The plaintiff alleges, that it was expressly understood at
the time of making this instrument that he was to retain
possession, and have the services of said slaves, to enable
him to pay the amount which would be due the defendant
for their redemption.   That he did remain in possession for
nearly three years ; and when the defendant obtained pos-
session, she agreed that interest should not run on the sum
he owed her.   That the services of the negroes were worth
more than the interest due.

He further states, that in February, 1834, he made the
defendant a tender of the amount due her, and still tenders
the same ; and that he made a demand for the slaves in
pursuance of their contract, and that she refused to receive
the amount due her, and deliver the slaves, as she was
bound to do ; in consequence of which refusal he has suffered
damage to the amount of five thousand dollars.   That
defendant has had possession of the negroes from the 14th
February, 1828, until the present time, and that their ser-
vices are worth three thousand dollars per annum, and have
been worth this sum ever since she obtained possession, which
amounts to eighteen thousand five hundred dollars.

He further states, that notwithstanding the premises, the
defendant has issued an execution on a judgment she had
against him for one thousand nine hundred and ninety-two
dollars, and is proceeding to sell his property.   He prays that

the defendant be condemned to deliver up all of the said slaves *and their increase,* or their value, estimated at twenty thousand dollars. That in the alternative of delivering the negroes, that she be condemned to pay the sum of five thousand dollars in damages. He further prays, that she also be condemned to pay the sum of eighteen thousand five hundred dollars as the hire of said slaves, deducting the amount that may be due to her under their agreement. He prays for a writ of injunction to restrain the sheriff from proceeding on the execution against him, and for general relief.

The defendant excepted, and says, that the suit has been prematurely instituted, and should be dismissed.

She pleaded a general denial, and averred, that no legal tender or demand was ever made, and that no right of redemption ever existed, but if it ever did, the time within which it might have been claimed had expired before this suit was instituted.

She further says, the same matters have been adjudged between them in a former suit, the judgment in which is not appealed from, and which she pleads as *res judicata.*

She prays, that the injunction be dissolved, with interest and damages. But if the plaintiff receives the slaves, then she prays that he be condemned to pay her twenty thousand dollars, as a condition precedent, with ten per cent. per annum, the amount that will be justly due her.

Upon these pleadings and issues the cause was tried by a jury.

At the time of executing the sale, the 25th March, 1825, the slaves were allowed to remain in the possession of the vendor, and remained in his possession until December, 1827, when Mrs. Bonner recovered a judgment, decreeing her the possession, and one thousand and twenty dollars a year, from the 18th March, 1826, until the slaves were delivered to her, as damages occasioned by their detention, and that she have a writ of possession. The possession of the slaves was delivered in February, 1828.

*William Justice* sworn, says, that Mr. Patterson, after the sale of the slaves, kept possession of them upwards of two

years. An agreement was made between plaintiff and defendant, that the former was to put the negroes in controversy, in with those of the defendant, and draw a share of the crop in proportion to his force, and the debt he owed the defendant was to be paid in that way. This was in 1826, or 1827, while witness was overseer for defendant. The negroes were to work and the proceeds were to be placed to the plaintiff's credit until the debt was paid. The agreement was broken off because witness would not consent as the manager of defendant, to take charge of these negroes, &c.

*R. W. Kay* states, that in March, 1827, Patterson sent his negroes to witness's plantation, and he made a crop with them of fifty or sixty bales of cotton; that he and Patterson had contemplated working their hands together a series of years, and the proceeds of the crop to be applied principally to the payment of the debt Patterson owed to Mrs. Bonner. That the following winter the slaves were taken out of Patterson's possession.

*J. B. Scott* sworn, says, that two of the notes given by Mrs. Bonner to Patterson, were transferred to Judge Miller, and the last one to Madame Meullian. The last note was paid, one half in 1831, and the other half in 1832. Plaintiff's first wife was a daughter of Mrs. Bonner. Witness says, that prior to the payment of the last notes, he went to Mrs. Bonner to redeem the negroes in controversy, and proposed to pay her the first note; and pay her the amount plaintiff owed her, and release her from the two remaining notes. She said if Patterson would come and pay her the money himself, he could redeem the negroes, but that if any person was to be benefited by the transaction except Patterson, it might as well be her as any one else. This was after the sheriff had delivered her the possession of the negroes in 1828.

Witness says, on cross-examination, " he made no tender of the money to Mrs. Bonner, but was authorized to pay the amount of the debt due by Patterson, as acknowledged in the deed, and the amount she had paid on the first note, and restore the other two notes to her. In making the proposi-

28　　VOL. XIV.

WESTERN DIST.
October, 1839.

PATTERSON
*vs.*
BONNER ET AL.

tions to Mrs. Bonner, to redeem the negroes, witness proposed to place her in the same situation as she would have been in if she had paid no money on the notes, and pay her the money which Patterson owed her, as contained in the deed. So far as witness knows, Patterson knew nothing of the proposition to redeem at the time it was made. Witness had control of two of the notes at the time."

(The testimony of all these witnesses was excepted to; Scott's, because he was surety in the injunction bond, and Justice and Kay's, because parole evidence was alleged to be inadmissible to prove any thing under the contract.)

*Burney*, sworn, says, the negroes are valuable, and, from 1828 to 1832, were worth fifteen hundred dollars per year, and from that time to this, two thousand dollars. There are no better negroes in the parish; he would be willing to give thirty thousand dollars for them and their increase. He and William Brown went, with Patterson, the 24th of February, 1834, to Mrs. Bonner. Patterson told her he had come to pay her the money he owed her for the redemption of the negroes: she said, she could have nothing to do with it; that she had given up the business to her children, and any thing they would do she would be satisfied with. Patterson then applied to Mr. Bonner, the son, but they came to no conclusion. Brown testifies to the same facts in substance."

After the evidence was gone through, the judge charged the jury as follows:

" This is an action to redeem the slaves mentioned in the act of sale from Patterson to Bonner. That act, on the face of it, appears to be a sale of the slaves to Mrs. Bonner, and, by its effect, transfers the legal title to her; but a condition, or stipulation, is annexed to the sale, which gives to the plaintiff the right to redeem the slaves on refunding the money advanced to him, with interest, as therein mentioned, provided he did so within the time limited for that purpose. In order to entitle himself to redeem the slaves, the plaintiff, by the act, is bound to repay the price of the slaves, with ten per cent. interest at any time within three years from the

time the last payment should be made by her for the slaves. Has he made this payment within the time limited? If he has not made that payment, has he made a tender of payment, and demanded the return of the slaves within the time? If he has, he is still entitled to redeem the slaves. On this point, I am of opinion, that if the sum due was unsettled, and if he applied to the vendee and requested a settlement of accounts, and offered and declared himself ready to pay the balance due, and the vendee refused to settle, or to receive the money, this will be a good tender to preserve his right to redeem the slaves; and I think he will be entitled to their profits from that time. It is insisted by the plaintiff, that the sale, with the condition annexed, is nothing more than a security for the re-payment of the price of the slaves, with the interest thereon, and that, consequently, the plaintiff is entitled to the revenues of the slaves; but this point, it is insisted on the other side, has been decided by the former judgment of court between these parties, which is in evidence. That decision certainly gives to her the possession of the slaves, and also a right to the revenues, i. e., to receive them as they accrued, but does not give her the absolute right to retain them finally to her own use; or only to receive them according to the terms of the contract. This the judgment does not decide, nor does it at all foreclose the plaintiff's right of redeeming the slaves. These points, therefore, remain open, and must be decided according to the terms of the contract: and this makes it necessary to consider the nature of the contract. On this a question arises which is important, and which is this: Was the vendee, Mrs. Bonner, after the passing of the conditional sale to her, entitled to the profits arising from the use and employment of them for her own benefit? or was the vendor, the plaintiff, entitled to these profits? This will depend on the nature of the act in question, and to ascertain this we must inquire what was the intention of the parties on passing the act; and for this purpose we must look into and consider the nature of the act itself. Was it, then, the intention of the party to transfer the right of property in the slaves to the vendee, or was it

their intention that the conditional sale should stand only as a security for the repayment of the money which the vendee bound herself to pay for the plaintiff? If the former, then the vendee became entitled to the profits arising from the use of the slaves; if the latter, and the act was intended only as a security for the repayment of the money, then the plaintiff is entitled to the profits. This question you will decide on the evidence.

" I consider it clear, that, so long as the time limited for redeeming the slaves endures, the vendor has a right to redeem; and if he does redeem them, the conditional sale has no other effect than that of its being a security for the repayment of the money advanced to the vendor. If the vendor brings his suit to redeem within the time, the jury are bound to consider the sale as such security, and nothing more. What, then, is the amount which the vendor is bound to pay, on redeeming his property? If the vendee has had possession of the property, which yields fruits, and has enjoyed all the profits arising from the use of it, can she moreover claim the highest rate of interest allowed by law on the money advanced? I am clearly of opinion she cannot, for that would unquestionably be usurious. She is not entitled to both; but, in this case, she has stipulated for interest to be paid to her on the money she advanced. Has she not thereby herself decided this point, by prescribing the terms on which these slaves might be redeemed, to wit, on refunding to her the money, with ten per cent. interest. If, on the whole view of the case, the jury are convinced such was the intention of the parties at the time of entering into the contract, then the parties are bound by that stipulation; and, in that case, the defendant will be entitled to the money that was advanced to the plaintiff, with ten per cent. interest, and nothing more. If the profits arising from the use of the slaves amount to more, she must refund the overplus; if less, the plaintiff must make up that amount, in order to entitle himself to redeem."

To this charge the defendant's counsel excepted, and requested the judge to give the following, in charge to the jury:

" 1. That this is a *vente à rémêré*, and the jury must be governed by the articles of the Civil Code of 1808, in reference to such sales.

" 2. That the defendant is entitled to the services of the slaves until the purchase money has been reimbursed, or tendered and consigned.

" 3. That the reimbursement of the purchase money, or the tender and consignment thereof, is in the nature of a condition precedent, and must have been performed before the institution of this suit; otherwise there must be a verdict for the defendant.

" 4. That the plaintiff, in order to maintain his action, must show an actual payment of the purchase money, or a lawful tender thereof, before the institution of this suit; and the jury are not authorized, in an action of this kind, to consider the purchase money as paid by the services of the slaves, which services, according to the law which must govern such cases as this, belongs to the vendee until the purchase money shall have been actually paid, or a lawful tender thereof made.

" 5. That the judgment of the court in the case of Rosanna Bonner *vs.* Thomas Patterson is *res judicata* upon the question of the hire or services of the slaves, and that judgment having been pleaded in bar, settled this question in favor of the defendant in this case, and precluded the reinvestigation thereof.

" 6. That, in order to constitute a lawful tender, it must have been made to the vendee herself, or at her domicil, or to her agent, by the plaintiff or his agent, in the presence of two witnesses residing in the place, by tendering the purchase money, and exhibiting the same to her or her agent in the current coin of the United States, according to article 407 of the Code of Practice."

Each of these propositions were severally refused, by the judge presiding, to be given in charge to the jury, to which refusal the defendant's counsel took his bill of exceptions.

The jury returned the following verdict: " We, of the jury, find for the plaintiff the sum of six thousand four hun-

WESTERN DIST.  dred and nineteen dollars, which is the amount due said
*October*, 1839.  plaintiff, after deducting the amount of judgment and in-
PATTERSON   terest obtained by Mrs. Bonner against the plaintiff in 1827,
*vs.*   together with all the said slaves that are living, and their
BONNER ET AL.  increase, and costs of court."

After an unsuccessful motion by the defendant's counsel
for a new trial, judgment was rendered confirming the ver-
dict decreeing to the plaintiff the slaves, and giving him the
sum of six thousand four hundred and nineteen dollars, as
the net balance due him for their hire, and perpetuating the
injunction staying the enforcement of the judgment, &c.
From which the defendant appealed.

*Elgee* and *Dunbar*, for the plaintiff.

1. We contend, that although this is a sale absolute on
the face of it, it in truth partakes of the nature of *a vente
à réméré*, known to the French law as a *Contrat Pignoratif*, or
pledge for the loan of money ; usurious in its nature, and
consequently null.  See *Merlin, Questions de Droit ; Contrat
Pignoratif, page* 278 *et seq.   Questions Faculté de Rachat, page*
108.   9 *Duranton*, 430.

2. The situation of the parties should be examined into.
One was debtor, the other creditor.  One was in urgent
want of money, the other lent her name.  The property was
sold far below its value.

3. Every stipulation that the pledge shall belong to the
creditor on failure of payment is *null*.  The French Code and
ours are the same on this point ; and from this, Duranton
deduces the illegality of the *Contrat Pignoratif.*  See *Code
Napoleon, articles* 2078, 2088.  *Louisiana Code*, 3132, 3146.

4. If the object perished, the loss, Duranton says, would
be the lenders.  He sought to evade the law.  9 *Duranton,
No.* 431.

5. This is not a contract of insurance.  The security was
very good, the best next to lands.  Even lands may be
destroyed by earthquakes, &c.

6. Parole evidence properly admitted to prove collateral
facts ; more especially when there is simulation in the

contract, as here. 7 *Louisiana Reports,* 331. *Louisiana Code,* 2267.

7. To allow the defendant ten per cent. interest, and the use or hire of the slaves, would be usurious; consequently, the contract would be null and void. 3 *Louisiana Reports,* 393. 4 *Martin,* 165. 4 *Kent's Commentaries,* 136. 1 *Vernon,* 476. *Pothier,* 416, 417. *Contrat de Vente,* 9 *Duranton, No.* 424. The fruits are the interest.

8. In a true *vente à réméré* both parties must be placed in the situation they occupied prior to the sale, *est potius distractus quam novus contractus.* *Pothier, Contrat de Vente,* 411. We show by calculation, that Mrs. Bonner would have received thirty-seven thousand dollars for the loan of eight thousand dollars, whilst Patterson would only receive his negroes.

9. No tender was necessary; we owed nothing, even if it was. *Pothier,* 410. *Paillett, on article* 1673. *Sirey, on articles* 1662 *and* 1673. *Troplong, pages* 374, 720. A mere verbal notification is all that is required.

10. The judgment of 1827, giving Mrs. Bonner the possession of the slaves is not *res judicata.* See 1 *Starkie, marginal note,* 224.

11. The hire of the negroes was fully equal to the annual amount of Mrs. Bonner's notes. The evidence proves this, and the plaintiff is fully entitled to the benefit of the hire of his slaves.

12. The peculiar circumstances of this case, shows that it was intended to cover a loan of money.

1st. Patterson was in distressed circumstances; moreover, he was the *debtor* of the defendant at the time of this contract.

2d. The price was far below the real value of the property. In the contract, it is stated at seven thousand nine hundred and twenty-two dollars, one thousand nine hundred and twenty-two dollars of which was in a debt due defendant by plaintiff. The balance was in notes, *without interest, payable at one, two and three years;* but it appears they were never paid until 1832, *seven years* after the contract. The negroes, in the evidence, are stated to have been worth, at the time of the sale, from *twelve* to *fifteen thousand dollars.*

3d. The slaves, for nearly *three years*, remained in the possession of the vendor.

13. Will the parties be placed in the same position they occupied prior to the sale, if we give the defendant her principal sum and ten per cent. interest thereon, with the fruits and revenues of the slaves; and to the plaintiff, nothing but his negroes?

14. In 1825, Mrs. Bonner had not paid the sum of seven thousand nine hundred and twenty-two dollars; and at the same time Patterson possessed his negroes. In the year 1839, Mrs. Bonner will have received her principal, and eleven years interest thereon at ten per cent., with the hire of the negroes for eleven years, estimated at twenty-seven thousand five hundred dollars, according to the evidence, and nineteen hundred and forty-five dollars the amount of the judgment; making a total of forty-six thousand and seventy-nine dollars, for the loan of *her name* for six thousand dollars, whilst Patterson would only receive back his negroes. Thus, one party would be enriched at the expense of the other *forty thousand dollars.*

15. Defendants contend, that according to *Pothier, Contrat de Vente,* 413, they might validly stipulate for a higher price to be repaid by the vendor on his exercising his right of redemption. This is not correct. The stipulation here is to pay *interest.* No increase of the price was contemplated by the parties. Plaintiff was to repay the seven thousand nine hundred and twenty-two dollars, and ten per cent. interest thereon. Had the stipulation been, that he should repay ten thousand dollars on exercising his right, this would have been a *principal sum,* and the question might present some difference. *Troplong, No.* 696. 9 *Duranton, No.* 429.

*Winn,* for the defendant, argued the case; and submitted a written argument on the same side by *J. Seghers,* counsellor at law, who had been consulted.

For the defendant it was urged:

1. In this case, admitting the jury decided correctly on the evidence before them, and under the charge of the court, yet

the cause must be remanded on the bills of exception. All the parole evidence going to show the intention of the contracting parties, and what the contract is, was objected to as illegal and inadmissible. Bills of exception are also taken to the rejection of evidence ; especially to the rejection of a letter from Patterson to Bonner. This letter made propositions, and showed how he understood the contract. It was rejected on the ground that it made propositions which were never accepted. But it contained declarations favorable to the defendant, and evidence against the plaintiff. Conversations of a party, while a compromise is going on, if they disclose facts, are evidence of those facts. 2 *Starkie*, 38, *note* (*g.*)

2. The testimony of Scott was illegal ; he being the surety in the injunction bond. According to the act of 1831, section 3, the surety is to be considered a principal in the injunction, and bound *in solido* for the principal, interest and damages on its dissolution. He was, therefore, an incompetent witness.

3. Exceptions were taken to the charge of the judge to the jury, generally, and to his refusal to charge, as requested by the defendant's counsel.

*Mr. Winn* argued at much length to show the errors contained in the charge, and their tendency to mislead the jury ; also, the error in refusing to charge them in the manner asked for. These were urged as strong grounds for setting aside the verdict, and remanding the case for a new trial.

4. The judgment in 1827, decreeing Mrs. Bonner the possession and use of the slaves in question, is relied on as *res judicata* in this case. This suit expressly claimed the ownership and revenues of the slaves under the act of sale in question. Patterson's answer, put at issue all the positions now relied on. This judgment is absolute, giving Mrs. Bonner the quiet and undisturbed possession and ownership of the slaves with their increase, and also a large sum for their back hire up to the time when possession was delivered. Hence we must conclude that the sale was not to secure the repayment of advances, and is not a mortgage. That the fruits and revenues were not to compensate the interest or

principal, but are the irrevocable property of the defendant; and finally, as a corollary, that the acts in question constitute a *vente à réméré* and nothing more.

5. The charge of the judge, and the plaintiff's argument insists, that the stipulation of Patterson to pay ten per cent. interest, before redeeming, changed the character of the act, and that both the revenues and interest could not go to the defendant, or the contract would be usurious and void; but that it was the intention of the parties, that the defendant should have the *interest*, and the plaintiff the *revenues*. To this we oppose again the plea of *res judicata*. The judgment of 1827, forever settles and forecloses this question. It gives, irrevocably, the ownership, possession and revenues' of the slaves and their increase to the defendant.

6. Such a contract, too, is permissible. *Pothier, Contrat de Vente, No.* 413, expressly says, that the purchaser may lawfully contract that the vendor shall pay a larger sum than he received, to enable him to redeem; although without this express contract, the returning the principal alone would be sufficient. The right to redeem is limited to a particular period, and the highest rate of interest might be charged, and added to the principal on redeeming. 5 *Merlin's Repertoire du Jurisprudence, verbo, Faculté de Rachat,* page 48, *No.* 8. *Sirey, Codes Annoté,* page 301, *note 3, on article* 1659 *Code Napoleon.*

7. The act of sale being *vente à réméré*, this suit is premature. The right of redemption is in the nature of an obligation, with a condition precedent, and the plaintiff must show performance on his part within the time stipulated; otherwise he cannot redeem; and that performance must be carried into effect before instituting suit. *Civil Code of* 1808, *page* 272, *articles* 68, 76. *Ibid.,* 364, *articles* 106, 107. *Ibid.,* 362, *articles* 93, 94. 3 *Martin, N. S.* 531. 7 *Ibid.,* 277. 4 *Kent's Commentaries,* 125.

8. There has been no payment or return of the price here, unless the fruits and revenues are to be considered as belonging to plaintiff, and as absorbing the debt. Neither has there been a tender. The only evidence touching this point

is that of two witnesses, (Burney and Brown,) which shows WESTERN DIST. that none was, in fact, ever made, as required by law. *Code* *October*, 1839. *of Practice*, 404, 407, 418. *Louisiana Code*, 2163. *3 Starkie*, PATTERSON 1390, *and note* (*u.*) *Ibid.*, 1393–4. *vs.* BONNER ET AL.

9. Not only a tender is necessary, but if not accepted, an actual consignment of the money must be made. If the money has not been tendered or consigned, it is now too late. The time fixed has expired. *Louisiana Code*, 2564. *Civil Code of* 1808, *page* 364, *article* 106. *Pothier, de Vente, No.* 410. *5 Merlin's Repertoire, &c., verbo, Rachat, page* 48.

*J. Seghers*, considered this case as involving two inquiries:

1. What is the true character of the transaction, and is it not a valid sale with benefit of redemption?

2. Is not the right of the vendee to take the fruits *of the essence* of such a contract? and is not Madame Bonner entitled to the revenues of the slaves until the consideration is refunded, with interest? or the money tendered and consigned?

I. The Roman law is plain on these points. See *pacto de Retrovendendo, Digest, lib.* 19, *tit.* 5, *l.* 12. *Code, lib.* 4, *tit.* 54, *l.* 2. The Spanish law is in accordance. *Matienzo* says, that the *pact de Retrovendendo* may be inserted in the sale, or entered into soon afterwards, and that, in such case, the fine due the state can be exacted but once, there being in fact but one contract, which is a perfect sale, making the vendee the owner of the thing sold, and entitled to its fruits. "Where the sale is annulled by the *pact de Retrovendendo*, inserted, either in the sale itself, or made *soon after*, so that it may be considered as part of the contract, the fine is due for the first sale which was perfect, notwithstanding the *pact* be entered into in direct terms; and on account of that sale the vendee enjoys the fruits, and may sell and transfer to another person, but no other fine is due. A sale with that *pact* is true, absolute and perfect sale, since, by tradition, the vendee is the owner, and makes the fruits his own, *and is not bound to restore them to the vendor after redemption*. It is thereby proved that the sale is pure, and not conditional;

otherwise, the vendee could not have the fruits." See *Matienzo*, lib. 5, tit. 11, *Law* 7, *gloss*. 3, *No*. 22, and *gloss*. 6, *No*. 42.  *Code*, lib. 4, tit. 54, law 2.

*Gomez* says, "that if one buys with this *pact* that (if within a limited time the vendor repays the price, the vendee was bound to restore the thing,) then should the vendor pay, the purchaser will restore the object, and the sale will be avoided. But the vendee is not bound to give back the fruits gathered in the interval; but only those gathered after the payment, *or consignment of the money.*" This is in accordance with the common law, and in *forum conscientio.* The vendee enjoys the fruits, as having a good title.  2 *Gomez*, 415, *No*. 27 and 28.  The text is plain in the *Code*, lib. 4, tit. 54.  The ordinary glossary and all the commentators explain it so, as well as *Partida*, 5, tit. 2, law 42.

II. If any doubt could remain, our own laws are explicit on the subject.  It is expressly stated, that when a vendor exercises the right of redemption, he becomes entitled to all the fruits not yet gathered, from the day he has either reimbursed or consigned the money paid by the purchaser, unless the contrary has been stipulated. *Louisiana Code,* 2564, 2545, 2551, 2553.  *Civil Code of* 1808, *page* 363–4, *articles* 91, 97, 106.  *Smoot* vs. *Baldwin,* 1 *Martin, N. S.,* 528.

1. The two next inquiries are, first, can the stipulation for the *ten* per cent. interest, change the character of the transaction, or make it other than a *vente à réméré*? or take from the defendant the right to the fruits; and can she not claim the interest and the fruits under the contract?

2. Should not the former judgment operate as *res judicata* as to the defendant's right of possession, and to take the revenues, and fix the character of this transaction as a valid *vente à réméré*?

I. *Pothier, Contrat de Vente, No.* 413, expressly says, that the purchaser may lawfully contract that the vendor shall pay *a larger sum* than he received, to enable him to redeem; although, without such express contract, no doubt that the returning of the principal alone would be sufficient.  If a larger sum be stipulated for, there can be no good reason

why that larger price shall not consist of interest. The right to redeem expired at a limited period, and the interest could be easily calculated and added, so as to form a larger sum. See *Merlin's Repertoire*, verbo *Rachat*. *Sirey, Code Civil, annoté* on *art.* 1659. *Corarrubias*, a famous Spanish jurisconsult, says, "The seller may be bound by a private agreement to buy the thing by him sold, and for a larger price than he sold himself." See *Febrero, part* 1, *tom.* 2, *cap.* 10, *sec.* 1, *fol.* 377.

II. The plea of *res judicata* should prevail. All the points set up in this case are put at rest by the former judgment in 1827. The issue was on the same pleadings, and the proof required was identical. See 11 *Martin*, 607. 7 *Martin, N.S.*, 438. 2 *Johnson*, 210. 7 *Ibid*, 20. 8 *Ibid*, 34, 38. 10 *Ibid*, 365. 11 *Ibid*, 530.

III. Even should the stipulation to pay interest be deemed usurious, the contract would not be void; the interest alone would be lost. The laws of Spain, affixing a penalty for taking usurious interest, are repealed. *Hermann* vs. *Sprigg*, 3 *Martin, N.S.*, 190. 4 *Louisiana Reports*, 545.

1. The last inquiries are, can the plaintiff maintain an action without refunding the principal, or making a tender and consignment ? And is any tender under our laws valid, unless the cash be exhibited ?

2. Can this transaction be considered and held to be a mortgage or antichresis ? or security in disguise for a usurious loan of money ?

I. On the first of these points, the Spanish authorities already quoted are referred to. Our own statutory provisions are positive, that tender and consignment must be made. *Code of Practice*, 404 *to* 418, *and* 142, *et seq.* *Louisiana Code*, 2163, *et seq.* These authorities are positive, and support the affirmative of the question. Patterson's action was, therefore, premature, he not having made any legal tender and consignment.

II. On the last point urged, it is evident this transaction cannot be considered a mortgage. There is no principal debt to support or serve as a foundation for it. The proper

WESTERN DIST.    test is, in case of the death of the slaves, on whom does the
October, 1839.   loss fall? *Res perit domino.* 1 *Martin, N. S.,* 525.

PATTERSON       It is not an antichresis, for it, like a mortgage, is but an
*vs.*           accessory to a principal debt. It is not a pledge, for, by
BONNER ET AL.   article 3119, of the Louisiana Code, it is essential to the con-
tract of pledge that the creditor be put into the actual pos-
session of the property pledged. It has been contended, that
the *act of sale* under consideration was a *contrat Pignoratif.*
This kind of contract was known in the old French juris-
prudence, but has been disregarded in France since the
revolution of 1789. It is to be hoped, that it will meet with
no better reception in Louisiana. Its object was, to defeat
loans on interest, under pretence of usury. See *Merlin's
Repertoire, vol. 9, verbo Pignoratif:* also, *Questions du Droit,*
1 *vol., contrat Pignoratif.*

*Hyams*, also counsel for the defendant, argued against the
demand set up in this action.

*Strawbridge, J.,* delivered the opinion of the court.

The history of this suit, which has been one of much
interest in the community where the parties resided, and of
great excitement between themselves, is this: On the 18th
of March, 1825, the plaintiff, by authentic act, passed before
the judge of the parish, bargained and sold to the defendant
twenty-four slaves, the consideration for which was seven
thousand nine hundred and twenty-two dollars, payable
" as follows: one thousand nine hundred and twenty-two
dollars, in hand, being a debt which Patterson owed her,
and which she releases and discharges; two thousand dol-
lars on the 1st March, 1826; two thousand, 1st March, 1827;
and the remaining two thousand, on the 1st March, 1828;
for which said instalments the said Mrs. R. Bonner has
given her three promissory notes, bearing even date with
these presents, &c."

On the same paper is the following " Memorandum: It is
agreed, that the said Thomas Patterson shall have the
privilege of redeeming the negroes mentioned within, at any

time within three years after the last instalment mentioned within shall have been paid, by repaying the price, as expressed within, to the said Mrs. Rosanna Bonner, her heirs or assigns, with interest on the same at ten per cent. per annum from the time such payments shall have been made till such redemption shall take place."

On the 27th day of March, 1827, Mrs. Bonner instituted suit against Patterson, claiming from him the slaves, with their profits, they having remained in his possession, and requiring a sequestration, on the ground that she feared their removal from the state. Patterson contested this claim; the cause was tried, and judgment being rendered against him, in November, 1827, for the slaves and their profits, at the rate of one thousand and twenty dollars per annum, a writ of possession was issued, under which they were delivered to her on the 14th February, 1828.

On the 7th of February, 1834, a *fieri facias* issued on the judgment, for the sum of one thousand nine hundred and forty-five dollars, being the hire or profits of the slaves from 18th March, 1826, to 14th February, 1828, under which a tract of land was seized and advertised. Hereupon, Patterson commenced the present suit, in which he declares that this conveyance was made " to secure to her a certain sum of money;" " that it was expressly understood between them, at the time of making said instrument, that he was to have the services of said negroes, in order to enable him to pay the amount due her; and that, in pursuance of this understanding, they were left with him for nearly three years."

" That, after she thus obtained possession, it was agreed between them that interest should not run on the amount due her, and that the services of the slaves were more than equivalent to the interest;" " that he had made her a tender of the amount due her, which she refused to receive, or to deliver the slaves to him;" " that the services of the slaves were worth three thousand dollars per annum, which, in the six years and two months she held them, amounted to eighteen thousand and five hundred dollars, which is due him."

He further sets forth, " that, under the judgment already spoken of (which he calls a pretended one, which the said Rosanna Bonner subsequently told him was not just and right, and that she would never claim it), execution has issued, against which he prayed an injunction, as also judgment for his eighteen thousand and five hundred dollars, after deducting the amount due to her under the agreement." The injunction was issued.

The defendant appeared, and, for answer, showed :

1st. That the suit has been prematurely commenced ; that no legal tender or demand had been made.

2d. That the right of redemption never existed, but, if it had, the time for exercising it had passed.

3d. That the same matters and things had already been adjudged in the suit above referred to.

4th. A general denial, and prays dismissal of the injunction, with damages, &c.

The cause was tried by a jury, who found a verdict for plaintiff in the sum of three thousand six hundred and eighty dollars and fifty-one cents, and that he recover the slaves.

A new trial was granted, and a second jury found a verdict for the plaintiff for six thousand four hundred and nineteen dollars and thirty-six cents, and that he recover the slaves, on which verdict judgment was rendered, and this appeal has been taken.

The cause was heard at the last October term, but left undecided. Both parties now unite in desiring a final judgment, without remanding.

The conclusion we come to leaves out of view several questions which have been well argued at the bar ; that conclusion is :

*First,* that the plea of *res judicata* must be sustained, as to so much of the plaintiff's petition as claims the contract to be a loan, and not a defeasible sale.

*Secondly,* as to so much as claims that the profits or fruits by them produced belong to Patterson, the plaintiff. A reference to the pleadings in that suit, detailed above, will show that these points, urged in the present suit as means of

attack, were, in the former suit, used as a means of defence.
The issues in both were: Is the contract a loan, or a sale
with condition? Are the profits or revenues arising from
the labor of the slaves the property of Patterson, or of Mrs.
Bonner? All the requisites to constitute a final judgment
on these points are before us: the same persons, acting in
the same character, the same thing, the same cause of
action.

Admitting, then, on behalf of the plaintiff, that what the
defendant denies to be put in issue by the pleadings really
was so, and that what formed the subject of the principal
discussion, viz. does the case present a *vente à réméré*, or the
*contrat Pignoratif?* in other terms, a defeasible sale, or a
feigned and usurious loan, is in issue in the present suit. Is
not this matter settled by the judgment, which, under such
pleadings, decreed to defendant the property in these slaves,
according to her title, and the sum of one thousand and fifty
dollars per annum, in lieu of the profits or use of the slaves.

If further proof be needed, the record furnishes it (for the
whole proceedings and evidence are in proof in this case.)
The defendant in that cause (plaintiff in this) propounded
interrogatories to Mrs. Bonner, the first of which was, "Was
it not agreed and understood between us, at the time of the
sale, that they (the slaves) were to remain in my possession,
and that I was to have the use and enjoyment of them?" to
which she answered, "it was not so understood by her."

If, now, we proceed to decide that the slaves belong to
him, and that he is entitled to their labor, will it not be in
direct contradiction to the former judgment, not only un-    Where a judg-
appealed from, but carried into execution more than ten    ment of a court
of competent ju-
years since. There must be some end to litigation: what    risdiction stands
unappealed from
suitors have once had the opportunity of settling, must,    and is final, it is
conclusive on all
when decided, be final, or all rights of person and of property    the matters em-
are afloat. It matters not how strong the case, how great    braced in it:
whatever may be
the errors of the former decree were, or what may be our    the errors or in-
justice done by
opinions concerning the rights of parties, if we could examine    it, it forms *res
judicata*,    and
them. When the final decree of a court of competent juris-    cannot be re-
diction, passing on the same matters, &c., is presented to us,    examined.

WESTERN DIST.  if we can open it, the very foundations of society are broken
October, 1839.  up, and endless, fruitless litigation is all that is left.

PATTERSON        The next question to examine, is, whether this action can
vs.          be sustained by the plaintiff, he having made no tender of
BONNER ET AL.    the price, &c., before instituting suit.   It is insisted on the
part of the defendant, that to entitle the plaintiff to recover
the property, it was essential he should have paid or con-
signed the price, whilst the plaintiff insists, that not even a
tender was necessary; but that, if necessary, it has been
made.   On this subject the proof is, that on the 24th of
February, 1834, (the last payment having been made in
1832,) the plaintiff, accompanied by two witnesses, waited
on the defendant, and told her "that he had come to pay
her the money he owed for the redemption of the negroes."
She replied "she could have nothing to do with it; she had
given up the business to her children, and any thing they
would do she would be satisfied with."   That defendant
then turned to her son, (who was present,) and had the
management of her affairs, and said to him, "I suppose you
will make no other arrangement but the one we were talking
of," who replied, "No."   That this was not a legal tender
we do not doubt; but it is very questionable, whether it did
not amount to a waiver of such a tender.   This, however, we
do not find necessary to decide.

The Code Napoleon has, so far as regards this question,
the same provisions as our own.   Under these, the better
opinion, (as it appears to us,) is:

In a sale with      1. That as the defeasible condition rested solely with the
a defeasible con-
dition (*vente à*  vendor, the expression of his will to dissolve the contract
*rémére*), it rests  must have the same effect as the will of both parties to create
solely on the will
of the vendor to  the contract.
dissolve the con-
tract, and his ex-      2. That this need not be accompanied by "*les offres reel*,"
pression of that
will must have  (a tender,) but that a mere verbal offer sufficed.
the same effect
as the will of      3. That such offer, made within the term allowed for
both parties in  redemption, preserved the right of redemption, and authorized
creating the con-
tract.         the action after the expiration of the time.   Troplong, *Con-
trat de Vente*, *No*. 718, *et seq.*, has treated this matter most
ably, in a dissertation too long for insertion here:

Duranton, vol. 16, *Cours de Droit*, No. 403, approves of this construction, but limits the demand to one made in form to a " signification," " accompagnée d'offres même incompletes, même irregulières et faites dans le delai convenu etait une manifestation du vendeur d'exercer le réméré et avait en conséquence conservé son droit encore que ces offres n'eussent été services dans le mois ni dans le delai fixé d'une action en justice."

If we are to assume the opinions of these enlightened jurists, which are supported by decisions of the tribunals of France, we cannot avoid the conclusion that a sufficient notification of the plaintiff's intention to avail himself of the clause " *à réméré*," has been made, and that his action, even after the term of redemption, has been preserved.

But a very different result from that contended for by the plaintiff follows; though he thus preserves the right of redemption, the fruits or profits do not become his until the payment or consignment of the price. *Louisiana Code, article* 2564, corresponding to page 364, article 106 of the old Civil Code of 1808.

The ten per cent. interest on the loan cannot be allowed. The judgment pleaded in bar does not give it. In deciding the contract to be one of sale, and not of loan, it appears to have been impliedly settled, that no interest could be allowed. We have given the defendant the benefit of that judgment. This question of interest, had it been open, would have been a very awkward circumstance in adjudging this contract not to be a loan. We know of no law authorizing such a stipulation for interest.

The amount of the first judgment, it is necessary to say, forming neither part of the purchase money, expenses for repairs, costs of sale, or of improvements, stands on a different footing from the price, and cannot be connected with it and the restoration of the slaves.

We therefore order and decree, that the plaintiff recover from the defendants the slaves *named* in the petition, or such of them as survive, on paying to defendants the sum of

WESTERN DIST.
*October*, 1839.

PATTERSON
*vs.*
BONNER ET AL.

So, where the vendor in a sale, with a defeasible condition, in the presence of two witnesses, offered to repay the price and redeem the property within the time limited, which was refused, and he made no consignment of the money: *Held*, that this was a sufficient notification to the vendee of the intention to redeem and preserve to the vendor his right of action to dissolve the contract after the term had elapsed. Although the right of redemption is preserved to the vendor of his intention and readiness to redeem, within the time limited, yet, without a consignment or tender of the money, he is not entitled to the fruits or profits. In a *vente à réméré*, where the vendee has possession and enjoys the fruits or profits of the property, a stipulation to pay ten per cent. interest on redemption and repayment of the price, will be deemed illegal.

($7922,) seven thousand nine hundred and twenty-two dollars.

That the injunction be dissolved, and that the plaintiff in injunction, together with his surety, John B. Scott, be condemned to pay the heirs of Rosanna Bonner ten per cent. interest, and ten per cent. damages on the sum of ($1945,) one thousand nine hundred and forty-five dollars, and that the said defendants, heirs of Rosanna Bonner, pay costs in both courts.

The following amendment was made to this judgment:

" On motion of *J. K. Elgee*, Esq., of counsel for the plaintiff, and by consent of *H. M. Hyams*, Esq., counsel for the defendant: It is ordered, that the judgment be amended by inserting the names of E. L. Briggs and Wm. H. Cureton as sureties in the injunction bond, in lieu of J. B. Scott; and that this order be entered as of the 18th (October) instant, the day on which said judgment was rendered, the motion having been made at the time of rendering the same."

Order on an application for a rehearing :

" On motion of *J. K. Elgee*, Esq., counsel for the plaintiff, a rehearing in this case is granted, so far as relates to the plaintiff's claim to the children born during the time the slaves were in possession of the defendant; but this order shall not prevent the execution of the judgment in these matters; and that in the delivery of said slaves, children under ten years of age shall not be separated from their mothers. But the plaintiff shall give security, at the discretion of the judge *a quo*, to produce such children, to answer the final decree; and that the rehearing as to the other parts of the decree be refused."

# REPORTS

OF

## CASES ARGUED AND DETERMINED

IN

# THE SUPREME COURT

OF

# THE STATE OF LOUISIANA.

---

**EASTERN DISTRICT.**

NEW-ORLEANS, JANUARY, 1840.

---

LANG ET AL. *vs.* THEIR CREDITORS.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT, JUDGE
BUCHANAN PRESIDING.

EASTERN DIST.
*January*, 1840.

LANG ET AL.
*vs.*
THEIR CREDIT-
ORS:

An opposition to the provisional tableau filed by a syndic, comes too
late when ten days have expired after the order of publication, and
when judgment of homologation has been *pronounced*, although it be
*not signed*.

A new trial will not be granted when a party has neglected to file
his opposition to a tableau until judgment of homologation has been
pronounced, even if he presents himself, and moves for it before
judgment is signed.

This appeal comes up on a bill of exceptions taken to the
judgment of the court, refusing the appellant, William R.
Carnes, who claims to be a privileged creditor of the insol-
vents, to file his opposition, and to grant a new trial.

The record shows that the syndic of the creditors of the
insolvents, filed his tableau of distribution, and publication
was made on the 16th of November, 1838. On the 28th of

CASES IN THE SUPREME COURT

EASTERN DIST.
January, 1840.

LANG ET AL.
vs.
THEIR CREDIT-
ORS.

the same month, judgment of homologation was pronounced so far as the tableau was not opposed. On the 30th, and before this judgment was signed, William R. Carnes, a privileged creditor, offered to file an opposition to the tableau, which the judge refused, as coming too late.

The counsel of Carnes then took a rule on the syndic to show cause why a new trial should not be granted, and the judgment of homologation set aside.

Bills of exception were taken to the decision of the judge refusing leave to file the opposition, and overruling the application for a new trial. The opposing creditor appealed.

*Greiner,* for the appellant, insisted, that as no personal notice of filing the tableau had been given to the opposing creditor, he was not precluded from filing his opposition. 2 *Moreau's Digest,* 434, *section 35. Louisiana Code,* 3054, *Nos.* 2 and 4. 7 *Martin, N. S.,* 425.

2. The opposition was in time ; and it may be filed at any time before judgment of homologation is signed. 9 *Louisiana Reports,* 48. 6 *Martin, N. S.,* 654.

3. There is no legal proof of publication. The newspaper should have been produced in evidence, showing the advertisement, and the date of publication. In this case the syndic's counsel testifies, that he caused the advertisement to be inserted in certain papers. 11 *Louisiana Reports,* 483.

*Haynes,* for the syndic, contended, that personal notice was not required to be given to creditors. The publication in this case was made in two newspapers, and duly proved. The opposition came too late, after the expiration of ten days from publication.

*Martin, J.,* delivered the opinion of the court.

In this case, Carnes, a creditor of the insolvents, opposed the provisional tableau of distribution, filed by the syndic, after its homologation, but before the judgment, ordering it to be homologated, had been signed. The judge refused leave to the creditor to file his opposition ; and he then moved for a new trial, which was refused, when the present appeal was taken.

EASTERN DIST.

*January*, 1840.

LANG ET AL.
*vs.*
THEIR CREDIT-
ORS.

Our attention is drawn to a bill of exceptions taken to the refusal of leave to file the opposition; the judge being of opinion that it was offered too late.

The counsel of the appellant relies on the case of Long-bottom's executor *vs.* Babcock et al., 9 Louisiana Reports, 48, in which we held, that the article 1004 and 1008 of the Code of Practice, require that opposition should be made to an executor's or curator's account, within *three* days after filing it; but it does not prohibit the making of opposition *after the lapse* of three days, and before the final judgment of homologation of the account. That case was an opposition to an executor's tableau filed *after the legal delay;* and we said, *arguendo,* that as a general rule, "when an act is to be done within a given time, as the filing an answer and the like, it may be done afterwards, if nothing occurs to prevent it. Thus, if a judgment by default has not been taken, an answer may be put in to the merits, although more than ten days have elapsed from the service of citation." The case relied on, differs from the present in this: that nothing had been done since the expiration of the legal delay; while in the present, a judgment was pronounced.

The case of Chiasson's Heirs *vs.* Dupuy et al., 9 Louisiana Reports, 57, is next cited, in which we recognized the principle laid down in the preceding case.

Lastly, the case of Avart *vs.* His Creditors, 6 Martin, N. S., 652, is said to be conclusive on the question under consideration. The marginal note is: " Creditors may oppose the tableau of distribution at any time previous to the judgment of homologation being *signed.*" The facts of that case are: In December, 1825, a partial tableau had been filed, which was homologated in January following. In April, 1827, judgment of homologation not having yet been signed, an additional tableau was filed; and in July following, judgment, homologating the first tableau, was signed; but on the filing the second tableau in April, one of the creditors had made opposition thereto on grounds relating to both tableaus, principally to the rank of another creditor, placed as a privileged one on both tableaus. The opposition being over-

EASTERN DIST. ruled, the opponent appealed. The judgment was reversed
January, 1840. in this court, and the case remanded, with directions to

LANG ET AL.   determine on the opposition.
*vs.*
THEIR CREDIT-      It was urged, that the first tableau had been homologated
ORS.         in the presence of the opponent, after an amendment, which
             he provoked, without his opposition to any other part; there-
             fore, his opposition could not be received.

On the part of the appellant, it was replied, that the
judgment of homologation was interlocutory, and did not
form *res judicata;* and if it be otherwise, the opposition was
in time, before the judgment of homologation was signed.
We expressed a doubt whether such judgments are interlo-
cutory or final; but thought they could not be considered as
final, until signed.

It does not appear to us that the marginal note is supported
by the decision, which appears to us to be, that the place of
the creditor amongst the privileged ones, was not conclusively
settled by the homologation of the first tableau, which, at
the time it was contested, was not yet signed.

An opposition    The law fixes a delay, within which opposition to a tableau
to the provision-
al tableau filed of distribution is to be made : that delay is not, however,
by a syndic, fatal, as long as proceedings are suspended ; but, when
comes too late,
when ten days judgment of homologation is pronounced, creditors, who
have expired af-
ter the order of deem themselves injured by it, cannot be relieved, otherwise
publication, and
when judgment than by a new trial ; and this cannot be obtained by a party
of homologation who has neglected to file his opposition, until the judgment
has been *pro-*
*nounced,* al- of homologation be pronounced. If it were otherwise, the
though it be *not*
*signed.* final homologation of the tableau could be indefinitely pro-
A new trial will tracted by creditors coming one after the other, and claiming
not be granted
when a party has a new trial, till judgment be actually signed.
neglected to file
his opposition to     The case of Avart *vs.* His Creditors, establishes only that in
a tableau until
judgment of ho- an opposition to a second tableau, the creditor may be relieved
mologation has as to the property distributed therein, from any injury he may
been pronounc-
ed, even if he have sustained in the first, especially when he has urged his
presents himself
and moves for it claim to relief before the judgment homologating the first
before judgment tableau be signed.
is signed.

It is, therefore, ordered, adjudged and decreed, that the
judgment of the District Court be affirmed, with costs.

EASTERN DIST.
January, 1840.

LANG ET AL. *vs.* THEIR CREDITORS.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT, JUDGE BUCHANAN PRESIDING.

LANG ET AL.
*vs.*
THEIR CREDIT-
ORS.

The judgment of homologation of a tableau of distribution, so far as it settles the rank and privilege of creditors is final, and must have the authority of the thing adjudged.

A creditor placed on the first tableau without a privilege, cannot, on the filing of a second, claim a privilege, because the funds on which he seeks to enforce his privilege, have been carried to the account of the mass of the ordinary creditors, at the head of the second tableau.

The opponent, Carnes, claims to be a privileged creditor on the proceeds of furniture sold at the sale of the insolvent's property.

When the first tableau was presented by the syndic, and duly advertised, Carnes presented his opposition, claiming to be a privileged, instead of an ordinary creditor. But the ten days after publication having elapsed, and judgment of homologation pronounced, although not signed, the opposition was rejected. His rank was settled on the tableau as an ordinary creditor by a final judgment of this court.

On the filing of the second tableau, Carnes again presented his opposition, and prayed to be recognized as a privileged creditor, on the proceeds of the sale of certain furniture, which he alleges is still on hand and not distributed, and has been carried to the account of the mass of the ordinary creditors, at the head of the second tableau. The opposition was rejected, and the opponent, Carnes, appealed.

*Greiner,* for the appellant.

*Haynes,* contra.

*Morphy, J.,* delivered the opinion of the court.

W. R. Carnes, a creditor of the insolvents, is appellant from a judgment of the District Court, dismissing his oppo-

EASTERN DIST. sition to a final tableau of distribution. He complains, that

January, 1840. he is therein set down as an ordinary creditor, while he is

LANG ET AL.
*vs.*
THEIR CREDIT-
ORS.

entitled, as he alleges, to the vendor's privilege on five hundred and forty-four dollars, that sum being the proceeds of some furniture by him sold to the insolvents, and found in their possession at the time of their failure. We think that the court below did not err. It appears, that in a first or provisional tableau, this sum figures among the assets of the estate, as resulting from a separate sale of furniture, made at the instance of the appellant, but that the syndic, refusing to recognize the privilege he now contends for, did not place it among the privileged claims. The latter amounted to one thousand eight hundred and eighty-four dollars and forty-one cents, leaving; for the ordinary creditors, a balance of one thousand four hundred and seventy dollars and thirty-two cents. Carnes opposed the homologation of the tableau, claiming to be privileged, on the proceeds of the furniture, but his opposition, being too late, was overruled by the district judge, whose decree was affirmed by this tribunal, on an appeal brought up by the present appellant.

The judgment of homologation of a tableau of distribution, so far as it settles the rank and privilege of creditors, is final, and must have the authority of the thing adjudged.

It has been repeatedly held, in this court, that a judgment of homologation, so far as it settles the rank and privilege of the creditors, is final, and must have the authority of the thing adjudged. *Louisiana Insurance Company* vs. *Campbell,* 6 *Martin, N. S.,* 133. *Mayfield* vs. *Comeaux,* 7 *Martin, N. S.,* 183. *Ory* vs. *His Creditors,* 12 *Louisiana Reports,* 122. But the appellant insists that he is yet in time to urge his privilege, because no distribution has been made of the amount on which he claims it: that the evidence shows the balance of one thousand four hundred and seventy dollars and thirty-two cents of the former tableau to be yet in the

A creditor, placed on the first tableau without a privilege, cannot, on the filing of a second, claim a privilege, because the funds on which he seeks to enforce

hands of the syndic: and finally, that said tableau was irregular and defective, inasmuch as the said balance is carried to the credit of the mass of the ordinary creditors, without their names or claims being set forth, as required by law. We do not perceive how the fact of no distribution having been made of the funds declared to belong to the mass of the ordinary creditors, or the irregularity pointed

out in the former tableau, can, in any way, help the appel- Eastern Dist.
lant in establishing the privilege he now seeks to obtain. January, 1840.
His opposition to the first tableau was for the sole purpose of
obtaining, among the privileged creditors, a rank which had
been denied him.  The final judgment, dismissing his oppo-
sition, forms an insuperable bar to his renewing any claim
for a privilege on the balance at the foot of said tableau,
irregular and defective as it may be in other respects.  Even
if the present appellant had succeeded in raising in our minds
some doubts as to the correctness of the former judgment,
we could not touch it.  *Res judicata pro veritate accipitur.*

HUBBELL
*vs.*
READ.

his privilege have been carried to the account of the mass of the ordinary creditors, at the foot of the second tableau.

As to the new assets, the distribution of which the court
below is now called upon to regulate, they do not include
any portion of the proceeds of the separate sale of the goods
alleged to have been sold by Carnes to the insolvents; the
appellant has, consequently, shown in them no privilege or
cause of preference whatever.

It is, therefore, ordered, adjudged and decreed, that the
judgment of the District Court be affirmed, with costs.

{ 14L 243|
46  378|

## HUBBELL *vs.* READ.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT, JUDGE
BUCHANAN PRESIDING.

Partners doing business as " *wood merchants, and running drays for hire,*"
constitute a commercial partnership, and are bound *in solido* for the
obligations of the firm.

This is an action on a promissory note against Lewis A.
Read, one of the firm of Skeels & Read, as endorser.  The
note is drawn to the order of, and endorsed by, the firm of
Skeels & Read.

EASTERN DIST.        According to an agreement of counsel, in the record, it is
January, 1840.   admitted that Skeels & Read were "*partners as wood mer-*

HUBBELL          *chants and in running drays for hire.*"   Judgment was rendered
vs.            against Read, *in solido*, on the endorsement of the firm, and
READ.          he appealed.

           *Harrison,* for the plaintiff.

           *Lockett,* contra.

           *Morphy, J.,* delivered the opinion of the court.

           The defendant and appellant is sued as one of the firm of
       Skeels & Read, for an endorsement of the firm, on a note of
       four hundred dollars.   An agreement of·counsel is appended,
       at the foot of the record, submitting, as the only question in
       the case; whether Read is bound *in solido*; the defendants,
       Skeels & Read, being partners as wood merchants and in
       running ·drays for hire.   The very words of the question
       propounded, hardly leave any room for doubt or deliberation;
       for, if the partners are merchants, as they are thus admitted
       to be, they must be supposed to carry on those dealings which
       are peculiar to, and most common among merchants, and
       which, under article 2796, of our Code, characterize com-
       mercial partnerships.   It matters not whether those dealings
       are confined to one, or extend to every kind of personal pro-
Partners doing   perty; it is the act of buying and selling those things that
business as '*wood*
*merchants, and*  the partners trade in, which stamps a mercantile character
*running drays*
*for hire,*' consti-  on their partnership; such, we cannot but believe, must have
tute a commer-   been the business and dealings of Skeels & Read, as wood
cial partnership,
and are bound *in*  merchants.   They must, therefore, be viewed as commercial
*solido* for the ob-  partners, and held liable *in solido*.   The semblance of a
ligations of the
firm.          defence; exhibited in this court, throws but too thin a veil
       over the real nature and object of this appeal, to protect the
       appellant from the damages prayed for by the appellee.

           It is, therefore, ordered, adjudged and decreed, that the
       judgment of the District Court be affirmed, with ten per cent.
       damages on the amount of the note, and costs in both courts.

GOSSETT *vs.* CASHELL.

APPEAL FROM THE COURT OF THE SECOND JUDICIAL DISTRICT, FOR THE PARISH OF ASSUMPTION, JUDGE COOLEY, THEN OF THE FOURTH DISTRICT, PRESIDING.

An appeal lies from an interlocutory judgment, setting aside a writ of sequestration.

The surety in a sequestration bond must reside, and have his domicil in the parish where the suit is instituted, or the sequestration may be set aside.

This is an appeal from a judgment of the District Court, setting aside the sequestration, because the surety in the bond did not reside within the jurisdiction of the court, as required by law. The facts are, that the suit was instituted in the parish of Assumption, in which the plaintiff obtained an order to sequester the crop, then growing on the defendant's plantation.

The defendant being absent, a curator *ad hoc* was appointed, who moved the court to set aside the sequestration, on the ground that the surety in the sequestration bond was not domiciliated in the parish.

It was shown, that the surety resided in the parish of St. James, at the time and since signing the bond. There was judgment ordering the writ of sequestration to be set aside, and the plaintiff appealed.

*Ilsley,* and *Nicholls,* for the appellant.

*Taylor,* contra.

*Martin, J.,* delivered the opinion of the court.

The plaintiff is appellant from an interlocutory judgment setting aside a writ of sequestration. It is contended that an appeal does not lie in this case, because the judgment is not final, and works no irreparable injury. This question is not *res nova,* and was settled in the case of the "State *vs.* Judge Lewis," 9 Martin, 301, in which we held, that this objection was not a sufficient cause for the discharge of a *mandamus nisi* to the judge of the first district.

The sequestration was set aside on a suggestion that the surety in the bond was not domiciliated in the parish.

. It appears that this suit was brought in the parish of Assumption, and there is an admission in the record that the surety resides in the parish of St. James. According to the *Louisiana Code*, article 3011, and the Code of Practice, article 276, the surety should be a resident, and have his domicil in the parish of Assumption.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.

---

### SHEPHERD *vs.* JONTE ET AL.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT, JUDGE BUCHANAN PRESIDING.

Where the notary certifies that "notices of protest were served on the endorsers, by letters delivered to them, personally, by L.," etc., it is insufficient. The notary cannot certify what was done by another, so as to bind the endorser.

This is an action against the maker and endorser of a promissory note, protested for non-payment.

The parish judge, acting as notary, certifies, that "notices of protest were served on the endorsers of the note, by letters to them delivered personally; one to William Jones, by Mr. F. T. Laizer, &c." Jones was the endorser sued, and denied that he had been legally notified of protest and non-payment of the note.

There was a verdict and judgment against the defendants, Jonte and Jones, *in solido*, and they appealed.

*McKinney*, for the plaintiff.

*Wills*, for the defendant.

*Bullard, J.*, delivered the opinion of the court.

This case is perfectly clear against the drawer of the promissory note; but we think thè plaintiff has failed to prove the liability of the endorser. The notary certifies that " notices of protest were served on the endorsers, &c., by letters to them delivered, personally; one to William Jones, by Mr. F. T. Laizer, and one to Shepherd, by Mr. Edward Buisson," &c. If the notary had certified the manner in which he had served the notices, it would have been good evidence under the statute; but he cannot certify what was done by others out of his presence.

The judgment is, therefore, affirmed, as to the defendant, Jonte, with costs, and ten per cent. damages; and reversed as to William Jones, and judgment is rendered in his favor, as in case of a non-suit, with costs, in both courts.

---

RABY *vs.* BROWN.

APPEAL FROM THE COURT OF THE FOURTH JUDICIAL DISTRICT, FOR THE PARISH OF IBERVILLE, THE JUDGE OF THE SECOND DISTRICT PESIDING.

Where the cause had been laid over, from day to day, until the last day of the term; when it was taken up, the defendant's counsel moved for attachments for his absent witnesses, and that the cause lie over until the attachments be returned: *Held*, that the party must either proceed to trial, or disclose and show the materiality of the testimony of the absent witnesses.

This is an action to recover a sum of money on a written contract, signed by the defendant, in which he engages to purchase and pay for a crop then growing on his own land, but made by the plaintiff.

EASTERN DIST.    The defendant pleaded various matters in defence, and
January, 1840.   reconvened in damages.

RABY            The following term of the court, after the cause was at
vs.             issue, it was laid over, from time to time, until the last day
BROWN.          of the term, when it was called up for trial.

The defendant's counsel (he being absent) moved for
attachments, returnable instanter, to bring in two witnesses
residing in the parish, and that the trial be suspended until
the attachments were returned.   The judge presiding refused
to wait, and ordered the trial to proceed, unless the party
disclosed what he expected to prove by said witnesses.   The
defendant's counsel answered that they could not make such
disclosure, as the defendant himself was absent.   The judge
ordered the trial to proceed, on the grounds that the cause
had been assigned for trial, and postponed from day to day,
though not from the fault of the parties, but from the press
of business ; that, as the court was about to close its term,
it was useless to issue attachments for the witnesses, because
the court would be adjourned before a return could be made;
that, in ordinary cases, in the commencement of the term,
when the attendance of witnesses could be procured, an
attachment would be allowed, and the trial delayed, without
compelling the party to disclose what he expected to prove,
&c.   The defendant's counsel excepted to the decision of the
court ruling them to trial.

Judgment was rendered in favor of the plaintiff for part of
his demand, and the defendant appealed.

*Burke* and *Taylor*, for the appellant.

*Edwards*, contra.

*Morphy, J.*, delivered the opinion of the court.

This suit has been brought on certain articles of agree-
ment to recover of defendant the purchase money of a sale
to him made by plaintiff.   Various matters were set up in
defence and damages claimed in reconvention for a breach
of the contract sued on.

Our attention has been called to a bill of exceptions which presents the only question in the cause, to wit : whether the defendant was properly ruled to trial in the court below.

On the last day of the term, this case, which had been postponed from day to day, came on for trial, when defendant's counsel caused two of his witnesses to be called. ' They not appearing, he exhibited summonses regularly served on them, prayed for an attachment, and moved that the case be laid over until the return of the attachment.    The court considering that this course amounted to a motion for a continuance, because no return could be expected before its adjournment, decided that defendant should proceed in the trial, or disclose the facts which he expected to prove by his absent witnesses.    The defendant's counsel stated that the course suggested by the court could not be complied with, defendant not being present, and his counsel not being informed of the evidence expected of the witnesses.    We think that the court did not err.    Had the motion been one for continuance *eo nomine*, the court, before granting it, should have been satisfied of the materiality of the evidence wanted, and it would have been incumbent on the party or his counsel, to be ready in court, to make the necessary oath. To permit the course attempted to be pursued here, would be to permit an evasion of all those articles of our Code of Practice which require a party to show the necessity of further delay, before he can entitle himself to a continuance. The mere act of taking a *subpœna* from the clerk, and handing it to the sheriff, does not, in any way, show the necessity or materiality of the testimony of the witnesses summoned.

RABY
*vs.*
BROWN.

Where the cause had been laid over, from day to day, until the last day of the term; when it was taken up, the defendant's counsel moved for attachments for his absent witnesses, and that the cause lie over until the attachments be returned : *Held*, that the party must either proceed to trial, or disclose and show the materiality of the testimony of the absent witnesses.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.

BLOIS, TUTOR, ETC., AND EMILIE DEMOURELLE *vs.* YARD &
BLOIS'S SYNDICS.

BLOIS, TUTOR,
ETC., AND EMILIE
DEMOURELLE,
*vs.*
YARD & BLOIS'S
SYNDICS.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT, JUDGE
*BUCHANAN PRESIDING.*

Creditors having claims against property surrendered by the insolvents, will not be permitted to litigate their demands separately against the syndics, but will be required to cumulate them with the insolvent proceedings.

In this case, Yard & Blois having made a surrender of their property, syndics were appointed by the creditors. Thomas Blois, one of the insolvents, as tutor of his minor son, claimed to be a privileged creditor, for a large sum, on the property surrendered ; and also his second wife, Emilie Demourelle. They each instituted separate suits against the syndics, who denied their right to recover. The wife was declared to have a privilege, and the syndics appealed.

The case of Blois, tutor of his son, was also submitted to the court, on the question of privilege alone, which was decided in the negative, and the plaintiffs appealed.

*Carter,* for the plaintiffs.

*Lockett,* contra.

*Bullard, J.,* delivered the opinion of the court.

In these two cases, the plaintiffs, being the wife and pupil of one of the firm of Yard & Blois, sue the syndics as privileged creditors. The facts are set forth vaguely, and any judgment which this court might pronounce, would be hypothetical. The other creditors are not before us, and the rank of the plaintiffs can only be settled contradictorily. The proceeding, in our opinion, is irregular, and these suits ought to have been cumulated with the proceedings of Yard & Blois *vs.* Their Creditors, and the amount due the plaintiffs, as well as their relative ranks, as creditors, ascertained in the usual way, on an opposition to the tableau of distribution.

It is, therefore, considered by the court, that the two judg- <span style="float:right">Eastern Dist.</span> ments be reversed ; the appellees paying costs of the appeal *January*, 1840. respectively. And it is further ordered, that these cases be morris et al. remanded to the District Court, and cumulated with the <span>*vs.* kemp.</span> proceedings in the case of Yard & Blois *vs.* Their Creditors, with a view to further proceedings, according to law.

---

## MORRIS ET AL. *VS.* KEMP.

APPEAL FROM THE COURT OF PROBATES, FOR THE PARISH OF ST. HELENA.

A sale of property inherited by a minor, ordered by a family meeting not convoked for that purpose, and which is not shown to be necessary, is null and void, and will be set aside, on an opposition to a monition for its confirmation.

A family meeting, convoked for specific and different purposes, is without authority *to order a sale* of property inherited by a minor, whose interests they are called on to protect.

This is an appeal from a judgment of the Court of Probates of the parish of St. Helena, homologating and confirming the probate sale of a tract of land to the defendant. The facts show, that Margaret M. Morris was the wife and surviving widow of Presley Stephenson, deceased, and administratrix of his succession ; and also natural tutrix of a minor daughter, sole issue of the marriage. She afterwards married one A. R. Morris, and presented a petition to the probate judge, praying that "a family meeting, composed of the relations and friends of her minor daughter, be convoked, to deliberate on the propriety of retaining her in the tutorship, and also to deliberate on other matters relating to the administration of said estate."

A family meeting was convoked, accordingly, which confirmed the petitioner as tutrix, and her husband as co-tutor, of her minor daughter, and appointed J. K. Gorman under

tutor, and administrator of the estate of Presley Stephenson, deceased. The meeting further declared, that the estate was indebted ten thousand, seven hundred and fifty-five dollars, and ordered that it be sold, at probate sale, on certain terms and conditions.

The proceedings of this family meeting were homologated, and the sale of the property decreed, by the Probate Court, accordingly. At the sale, Merrit G. Kemp became the purchaser of a tract of land, containing five hundred and forty acres, for the price of two thousand three hundred and ten dollars. He took out his monition to have the sale confirmed.

Mrs. Morris, as tutrix of her minor daughter, and assisted by her husband, made opposition to the sale, and prayed that it be annulled on the following grounds:

1st. That the sale of Stephenson's succession was not provoked by an administrator, or any person legally authorized; but only on the application of the widow to be confirmed in her office of tutrix, &c.; and that said sale is contrary to law, and illegal.

2d. Because there was no appraisement at the sale, and the property was adjudicated to the defendant, for less than its appraised value, in the inventory.

3d. That the order of sale was illegal, the forms of law not having been complied with, &c.; and, also, that the terms of sale are not complied with.

Upon these issues, made in the opposition to the order for the monition, the cause was tried. The judge of probates decided, that, as the order of sale was predicated on the deliberations of a family meeting, convened for the special purpose, it was legal; and that, although the minor child had an interest in Stephenson's succession, yet it was the sale of the property of the succession, and not that of the minor; that the estate was largely in debt, and nearly the whole of it community property; and that the purchaser had complied with the conditions of sale; that, therefore, the sale was legal, and should be homologated and confirmed. From this judgment the plaintiffs in opposition appealed.

EASTERN DIST.
*January*, 1840.

MORRIS 'ET AL.
*vs.*
KEMP.

*Andrews*, for the appellants.

*Lawson*, for the appellee.

*Bullard, J.*, delivered the opinion of the court.

This is a proceeding under the act of 1834, "for the further assurance of titles at judicial sales." The appellee procured from the Court of Probates a monition, calling upon all persons who might have any right, title or claim, of any nature and description whatever, &c., &c., to show cause why the sale and adjudication to him of a certain tract of land, belonging to the estate of Stephenson, made under the authority of said court, should not be affirmed and homologated.

The tutor of the minor heir of Stephenson came forward and made opposition to the homologation of the sale, on the following grounds:

1st. Because the order of the Court of Probates, in pursuance of which the sale was made, was unauthorized by law, not having been applied for, nor provoked by any person having a right to do so, either as administrator of the succession of Stephenson, or by the tutor or co-tutor of the minor heir.

2d. Because, even supposing the order was legally given, yet the property did not sell for its appraised value.

3d. Because the terms upon which the land was sold have not been complied with.

The administrator of the estate intervened, but it is not important to notice the recusation of the judge, contained in his opposition.

Upon looking into the proceedings which led to the alienation of the land in question, we find a petition of Margaret M. Morris, late widow Stephenson, to the Court of Probates, representing that, since she was confirmed as natural tutrix of her minor child, and administratrix of the estate of her late husband, she had contracted a second marriage with A. R. Morris, without calling a family meeting to decide upon their retaining the tutorship. She, therefore, prays that a family

*A sale of property inherited by a minor, ordered by a family meeting not convoked for that purpose, and which is not shown to be necessary, is null and void, and will be set aside on an opposition to a monition for its confirmation.*

EASTERN DIST.
January, 1840.
──────────
M'KINNEY
vs.
BEESON'S
ESTATE.

meeting may be convened to deliberate on the propriety of retaining her in the tutorship, and also to deliberate on other matters relating to the administration of said estate. A family meeting was convened accordingly, and proceeded to advise that the property belonging to the estate should be sold. The advice of the family meeting was homologated, and the property was sold without regard to the appraisement.

A family meeting, convoked for specific and different purposes, is without authority *to order a sale* of property inherited by a minor, whose interests they are called on to protect.

Nothing shows, in our opinion, the necessity of the sale in question. The family meeting was convoked, for a different purpose altogether, and had no authority to direct a sale; nor does the record show that this was a case in which the property, belonging to minor heirs, could be sold without regard to an appraisement. We conclude, therefore, that the judge erred in overruling the opposition.

The judgment of the court of probates is, therefore, reversed, and, proceeding to give such judgment as should have been rendered below, it is further ordered and adjudged, that the sale of the land in question be rescinded and annulled, and that the appellee pay the costs of both courts.

────────────

M'KINNEY *vs.* BEESON'S ESTATE.

APPEAL FROM THE COURT OF PROBATES, FOR THE PARISH AND CITY OF NEW-ORLEANS.

A simple denial of the plaintiff's right to sue as the holder of a negotiable instrument, cannot authorize the maker to contest his title to it, when he holds by a blank endorsement, unless it has been lost or stolen.

In a suit against the maker of a note, it is no ground of defence that it was improperly transferred by the curator of an estate, to which it belonged, to the holder, when it is endorsed in blank.

EASTERN DIST.

*January*, 1840.

M'KINNEY
*vs.*
BEESON'S
ESTATE.

This is an action against the maker of a promissory note, made payable to the order of, and endorsed in blank, by Messrs. Sloo & Byrne, and also by W. W. Stewart. The maker of the note, Amos Beeson, having died, suit was instituted against his widow, as partner in the community, and tutor to the minor children, and as representing the estate of the deceased.

The attorney and agent of the widow Beeson, pleaded a general denial, and denied specially, that the note was ever transferred to the plaintiff by any one authorized to do so, or that he gave any consideration therefor ; and avers, that he is not the *bona fide* holder or owner of the note. The defendant further avers that said note was given in part payment of a lot of ground, purchased at the sale of L'Hommedieu's succession. That said succession is administered by W. W. Stewart and one Rawson, as curators, who are still in office ; that Stewart had no authority to endorse and transfer said note, which was done after it was over-due, and had been put into the hands of the plaintiff's brother as attorney, for the liquidation and settlement of L'Hommedieu's estate, to which it properly belongs; and that the plaintiff took it with a knowledge of these circumstances.

Under these pleadings and issues the cause was tried.

It was in proof, that the note was given in part payment of a lot purchased at the sale of L'Hommedieu's succession, which was administered by W. W. Stewart and one Rawson, both of whom are still the curators; that the plaintiff's brother was employed as the attorney of the curators for the settlement of L'Hommedieu's estate, and that these brothers reside together in the same house ; that the note was transferred to the plaintiff after it became due, by Stewart, one of the curators, who endorsed it in blank, and has since left the state.

From the evidence thus adduced, the judge of probates was of opinion the plaintiff failed to prove that he came to the possession of the note in due course of trade, and for a valuable consideration, and that he must be non-suited. From judgment of non-suit the plaintiff appealed.

M'KINNEY
vs.
BEESON'S
ESTATE.

*Wills*, for the plaintiff and appellant.

*Eggleston* and *M'Caleb*, for the defendant.

*Morphy, J.*, delivered the opinion of the court.

This is an action by the holder of a promissory note against the estate of the maker. The answer sets up in defence divers matters, amounting, in substance, to a denial that the petitioner has any right to the note sued on; that it was ever legally transferred to him; or that he ever gave for it a *bona fide* consideration. Upon the evidence adduced in support of this defence, which was taken subject to all legal exceptions, there was a judgment of non-suit, from which the plaintiff has appealed.

A simple denial of the plaintiff's right to sue, as the holder of a negotiable instrument, cannot authorize the maker to contest his title to it, when he holds by a blank endorsement, unless it has been lost or stolen.

A bare denial of a plaintiff's right to a negotiable instrument, which is put in suit, cannot of itself authorize the maker to investigate or contest his title to the same, when he holds by a blank endorsement, unless the note has been lost or stolen, which is not alleged in this case. The maker, who wishes to question the holder's right to it, must first show that he has an interest in doing so; for, if he has not, the question of ownership is one with which he has nothing to do. That interest may, and generally does, consist in preserving some equitable grounds of defence, of which he apprehends an attempt is made to deprive him, by an assignment, which is not *bona fide*. No such allegation is to be found in the answer, but on the trial some attempt was made to prove that the succession of L'Hommedieu, from whose curator the plaintiff holds the note, was largely indebted to the deceased, Beeson, and that there were accounts to be adjusted between the two estates. Granting that such be the fact, the defence would be but little aided by the admission, for it appears from the pleadings and documentary evidence, that the note sued on was given in part payment of a lot of ground, adjudicated to the deceased, Beeson, at the sale of the succession of L'Hommedieu, and that the estate is insolvent; no set off could, therefore, be pleaded by the defendant, had the action been brought by the curator of L'Hommedieu's estate. *Green* vs. *Davis et al.*,

7 *Martin, N. S.,* 238.  But it is contended, that Stewart, one of the curators of L'Hommedieu's estate, could not legally transfer a note belonging to the same, or give it to the plaintiff in payment of his own debt, as one of defendant's witnesses testified has been done in this case.  If such transfer, or use made of the note, be illegal and improper, as no doubt it is, the act has operated no injury to the defendant, and, therefore, affords him no just cause of complaint.  The curator is responsible for the whole amount of the notes received from the sale of the succession of L'Hommedieu, and the creditors and other persons concerned, will no doubt look to his securities, if he fails to render a faithful account of them.  On the merits, the plaintiff is entitled to recover, having made out his case.

DAVIS
*vs.*
COAN.

In a suit against the maker of a note, it is no ground of defence that it was improperly transferred by the curator of an estate, to which it belonged, to the holder, when it is endorsed in blank.

It is, therefore, ordered, adjudged and decreed, that the judgment of the Court of Probates be annulled, avoided and reversed, and this court, now proceeding to render such judgment as should have been given below, do order and adjudge, that the plaintiff do recover of the estate of Amos Beeson, the sum of one thousand and three dollars, with legal interest from the 25th of September, 1837, and costs in both courts, and that the property mortgaged, as set forth in plaintiff's petition, be sold to satisfy this judgment.

---

DAVIS *vs.* COAN.

APPEAL FROM THE CITY COURT OF NEW-ORLEANS, JUDGE DUNCAN PRESIDING.

A party pleading minority, and it is shown that he is near the age of majority, *he must clearly make it appear* that he was a minor at the time of the contract, or his plea will not avail him.

33          VOL. XIV.

EASTERN DIST.
January, 1840.

DAVIS
vs.
COAN.

This suit is instituted on a promissory note executed by the defendant. The plea is, minority at the time of executing the obligation. The testimony is somewhat contradictory, but the judge presiding was of opinion it preponderated to the side of the defendant, rendered judgment in his favor, from which the plaintiff appealed.

*Durell*, for the appellant.

*Briggs*, contra.

*Martin, J.*, delivered the opinion of the court.

The plaintiff is appellant from a judgment sustaining the defendant's plea of minority. It was supported by one witness. A second witness was called, who disclosed the fact that an official record of the birth of the defendant existed, and upon objection being made to his testimony, he was ordered to stand aside. The plaintiff's counsel then moved that the whole of the testimony of the first witness be stricken out, at least so much thereof as went to prove the minority of the defendant by parole. This the judge refused to do, on the ground that the application came too late. The plaintiff then introduced a witness who deposed, that, a few months ago, the defendant told him that he was twenty-two years of age. That the defendant keeps a lottery office ; has a sign over his door ; and that the note sued on was given by him in the course of his business as a lottery office keeper.

It is unnecessary to decide whether the judge *a quo* erred in rejecting the plaintiff's application. When a party is near the age of majority ; his openly and publicly doing business as a person of full age, and gives himself out to the public as such, he must be held to very strict proof of his non-age. In the present case, the testimony of the first witness is balanced, at least, by that of the second. The defendant has not even made probable, that which he was bound to make certain.

*A party pleading minority, and it is shown that he is near the age of majority, he must clearly make it appear that he was a minor at the time of the contract, or his plea will not avail him.*

The plaintiff has fully made out his case, and is entitled to judgment.

It is, therefore, ordered, adjudged and decreed, that the judgment of the City Court be annulled, avoided and reversed ; and, proceeding to give such judgment as, in our opinion, ought to have been given in the court below, it is ordered, adjudged and decreed, that the plaintiff recover, from the defendant, the sum of four hundred and eighty-seven dollars and seventy-four cents, with legal interest from judicial demand, and the costs in both courts.

<div style="text-align:right">

EASTERN DIST.
*January,* 1840.

SAILLARD
*vs.*
TURNER ET AL.

</div>

---

### SAILLARD *VS.* TURNER ET AL.

#### APPEAL FROM THE PARISH COURT, FOR THE PARISH AND CITY OF NEW-ORLEANS.

Want of amicable demand specially pleaded and shown, saved the defendant the costs of *the original citation;* and also those of appeal by reversing the judgment.

This is a suit, on a promissory note, against the maker and endorser. The defendants pleaded a general denial and want of amicable demand. The only evidence in the case is the protest, and certificate of the notary, of notice given to the parties. There is no proof of an amicable demand being made before institution of suit. There was a verdict and judgment for the amount of the note sued on, against the defendants, and they appealed.

*Bodin,* for the plaintiff.

*Smith,* contra.

*Bullard, J.,* delivered the opinion of the court. .

In this case the record contains no proof of amicable demand, the want of which is specially pleaded.

EASTERN DIST.
January, 1840.
━━━━━━━━
POLO & TIVILIER
vs.
NATILI ET AL.
It is, therefore, ordered, that the judgment be reversed, and that the plaintiff recover, of the defendants, *in solido*, eleven hundred and seventy-five dollars, with interest, at five per cent., from the 3d July, 1838, and four dollars, cost of protest, together with the costs of the Parish Court, except those of the original citation, and that the appellee pay the costs of appeal.

━━━━━━

### POLO & TIVILIER *vs.* NATILI ET AL.

APPEAL FROM THE CITY COURT OF NEW-ORLEANS.

The vendor of personal property may produce evidence to show that the note sued on, was given for the *price of certain furniture*, to enable him to enforce his privilege against it in the hands of his vendee.

Where the defendants are interrogated as to the consideration of the note sued on, and neglect to answer, their silence must be taken *pro confessis* and it will be deemed full proof.

This is a suit against the maker and endorser of a promissory note, in which the plaintiffs had certain furniture sequestered in the hands of the defendants, on which they claim a privilege as vendors.

The defendants pleaded a general denial. The evidence shows that the plaintiffs sold a lot of furniture and rendered a bill of it to the defendants, amounting to six hundred and fifty dollars, for which they gave the note sued on. On the trial, evidence was offered to show this fact, which was objected to. Interrogatories were propounded to the defendants calling on them to state, that the consideration for which the note was executed, was the price of the furniture sold, and in their possession. They neglected to answer, and the interrogatories were taken for confessed. There was judgment for the plaintiffs, and the defendants appealed.

*Culbertson,* for the plaintiffs.

*Préaux,* contra.

*Martin, J.,* delivered the opinion of the court.

The plaintiffs claim from the defendants, as maker and endorser of a promissory note, its amount, with privilege on certain articles of furniture sold to them. The general issue was pleaded, and judgment was given to the plaintiffs according to the prayer of the petition. Our attention is first drawn to a bill of exception, taken by the defendants, to the admission of evidence of the note having been given for the price of the furniture, on which the privilege is asked, on the ground that the note was a novation of the debt contracted by the purchase of the furniture.

It does not appear to us that the judge *a quo* erred. *See Louisiana Code,* article 3194, on which he relied in giving judgment sustaining the privilege.

On the merits, the defendants were interrogated as to the consideration of the note, which the plaintiffs allege to be the price of the furniture, and they neglected to answer these interrogatories. They must, therefore, be taken *pro confessis.* Judgment was correctly given against them, and the sale of the furniture ordered to be made in satisfaction thereof.

It is, therefore, ordered, adjudged and decreed, that judgment be affirmed, with costs, and ten per cent. damages.

The vendor of personal property may produce evidence to show that the note sued on was given for the *price* of *certain furniture,* to enable him to enforce his privilege against it in the hands of his vendee.

Where the defendants are interrogated as to the consideration of the note sued on, and neglect to answer, their silence must be taken *pro confessis,* and it will be deemed full proof.

---

BRUMFIELD *vs.* MORTEE.

APPEAL FROM THE COURT OF THE EIGHTH JUDICIAL DISTRICT, FOR THE PARISH OF ST. TAMMANY, THE JUDGE THEREOF PRESIDING.

There being no grounds on which to prosecute the appeal in this case, it was considered as taken for delay, and judgment confirmed with ten per cent. damages.

The defendant was sued on his promissory note, and set up various matters in defence against the payee. He also

interrogated the plaintiff as to the ownership of the note, which showed that the plaintiff held it for the heirs of Jacob Ott, deceased. The interrogatories were not answered.

The cause was submitted to a jury, on all the matters set up in defence, who returned a verdict for the full amount claimed. Judgment was rendered for the sum found, with five per cent. interest, and the defendant appealed.

*Hennen,* for the plaintiff, brought up an exemplification of the record after the return day, and prayed the affirmance of the judgment, with ten per cent. damages.

*Penn,* contra.

*Morphy, J.,* delivered the opinion of the court.

This suit was brought on a promissory note of three thousand seven hundred and twenty dollars. The defendant, after setting forth certain grounds of defence, which he averred to have against the payee, propounded interrogatories to the plaintiff to show that he was not the owner of the note sued on. The neglect of plaintiff to answer the interrogatories, exhibited him, in the court below, in the light of a trustee of the real owners of the note, and opened to defendant all his alleged means of defence against the latter. The jury, who tried the cause, was satisfied that they were unfounded, and gave a verdict for the plaintiff; whereupon, defendant having failed to obtain a new trial, took this appeal.

The record is brought up by the appellee, and he prays for damages in this court.

The meagre testimony adduced on the trial, the repeated affidavits for continuance, and the neglect to bring up the record, so unusual when the suitor expects to obtain the least advantage by the appeal, leave no doubt in our minds that the present one is taken only for delay.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs, and ten per cent. damages on the amount sued on.

BRUMFIELD *vs.* MORTEE.

APPEAL FROM THE COURT OF THE EIGHTH JUDICIAL DISTRICT, FOR THE
PARISH OF ST. TAMMANY, THE JUDGE THEREOF PRESIDING.

When the dilatory proceedings in the court below, coupled with the
absence of any defence, as set up, show the appeal is resorted to for
delay, the judgment will be affirmed, with ten per cent. damages.

In this case the plaintiff obtained a verdict and judgment
for the amount of his demand, with five per cent. interest
thereon, and the defendant appealed.

The counsel for the appellee brought up the record, after
the return day had expired, and prayed for the affirmance of
the judgment, with damages, as for a frivolous appeal.

*Hennen,* for the appellee.

*Morphy, J.,* delivered the opinion of the court.

In this suit, which is on a note of hand, the defendant
propounded interrogatories to plaintiff to obtain the confession
that he was not the owner of the note, but held it, and put it
in suit for the payee, against whom he averred that he had
good and equitable grounds of defence. The plaintiff hav-
ing failed to answer, the defendant was let into the proof of
the facts set up in defence, but he offered no evidence what-
ever to sustain them. Verdict was given for plaintiff, and
defendant, after the ordinary motion for a new trial, appealed,
but neglected to bring up the record.

The dilatory proceedings resorted to in the court below,
and the absence of any testimony whatever, show, that no
serious defence could be intended, and that this appeal is
frivolous. The plaintiff must, therefore, have the damages
he prays for.

It is ordered, adjudged and decreed, that the judgment
of the District Court be affirmed, with costs, and ten per
cent. damages.

BRUMFIELD *vs.* CUNNINGHAM.

APPEAL FROM THE COURT OF THE EIGHTH JUDICIAL DISTRICT, FOR THE PARISH OF ST. TAMMANY, THE JUDGE THEREOF PRESIDING.

Where the record is brought up by the appellee, and there does not appear to have been any valid defence, the appeal will be considered as taken for delay, and the judgment affirmed, with ten per cent. damages.

In this case there was a verdict and judgment against the defendant, and he prayed an appeal, but failed to bring up the record.

The appellee filed an exemplification of the record after the return day, and prayed for the affirmance of the judgment below, with ten per cent. damages, as for a frivolous appeal.

*Hennen,* for the appellee.

*Morphy, J.,* delivered the opinion of the court.

The defendant being sued on a promissory note, averred that he had given it in payment of a slave bought of the heirs of the late Jacob Ott; that the plaintiff had no right or interest in the note, the same having been collusively and fraudulently put in his hands by the real owners, the heirs of Ott, for the express purpose of depriving him of some equitable grounds of defence, which he sets forth at full length in his answer. In order to prove plaintiff's want of interest in the note, defendant propounded interrogatories, the answers to which prove conclusively that plaintiff is a *bona fide* holder for a valuable consideration. A verdict being rendered in favor of plaintiff, defendant made a motion for a new trial, which was overruled; he then took the present appeal.

The record was brought by the appellee, who prays for the affirmance of the judgment, with damages.

Affidavits for continuance at two successive terms of this court, and their neglect to bring up the record, coupled with

the absence of any valid defence, as to this holder, furnish abundant evidence of the nature of this appeal.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs, and ten per cent. damages on the amount of the note sued on.

=====

## CHOICE vs. HARBY ET AL.

APPEAL FROM THE PARISH COURT, FOR THE PARISH AND CITY OF NEW-ORLEANS.

The certificate of the clerk should state that the record "contains all the *evidence adduced on the trial*," or the appeal will be dismissed.

*Vason*, of counsel for the appellee, prayed for the affirmance of the judgment, with costs, and ten per cent. damages.

On examining the record, the clerk's certificate only stated that it contained a transcript of all the proceedings, as well as of all the documents, filed in the case, &c."

The judge certified at the end, that " the foregoing record contains *all the matters of fact*, upon which the cause was tried."

The case was submitted to the court on the record, and appellee's points filed.

*Vason*, for the plaintiff and appellee.

*Kennicott*, contra.

*Martin, J.*, delivered the opinion of the court.

The defendants are appellants from a judgment against them, as maker and endorsers of a promissory note.

The certificate of the clerk attests, that the transcript contains all the proceedings and the documents filed in the case ;

but it does not inform us that it contains all the evidence adduced on the trial. We are, therefore, unable to examine the case on the merits, and the appeal must, consequently, be dismissed, with costs in both courts.

CLARK *vs.* GLOVER ET AL.

APPEAL FROM THE COURT OF THE THIRD DISTRICT, FOR THE PARISH OF EAST FELICIANA, JUDGE SAUNDERS, PARISH JUDGE, PRESIDING.

An affidavit, in which the plaintiff states that "*he fears* the defendant may remove the mortgaged slave out of the jurisdiction of the state," is insufficient to obtain an order of sequestration. He should *state the facts which induce his apprehension.*

This suit commenced by injunction. The plaintiffs in injunction, S. & T. L. Clark, allege, that in April, 1837, they endorsed a note of one James C. Shule, for two thousand nine hundred dollars, and took a mortgage on a small plantation, and some slaves, to secure them against their endorsement. That said note became due, and was protested for non-payment, and that judgment and execution thereon has been obtained against them, their property seized, and advertised for sale.

They further allege, that said Shule has removed to Texas, but left one of the mortgaged slaves in the possession of one Catherine Glover, and that they are informed and believe said Shule is about to remove said slave out of the state of Louisiana; and pray that it be sequestered; its value being about five hundred dollars.

In a supplemental petition, the plaintiffs allege, there is another of the mortgaged slaves in the hands of Slaughter & Badger, of Port Hudson, worth one thousand dollars, and

which they apprehend may be removed. They pray that said slave be sequestered, and that Slaughter & Badger be made parties to this suit.

The affidavit sets forth, that the plaintiff, Clark, *fears* the said negro *may be removed beyond the jurisdiction of the state,* unless prevented by a writ of sequestration.

The defendants, Slaughter & Badger, excepted, and prayed that the sequestration be set aside.

1. Because the facts set forth did not authorize it.

2. They are improperly made parties.

3. The affidavit is only sworn to by the attorney of one of the plaintiffs.

4. The affidavit is insufficient, in not showing the facts which *induced the apprehension* that said slave will be removed.

5. Neither of the plaintiffs state, that said slave would be removed out of the state before they could have the benefit of their mortgage.

6. The affidavit is informal and insufficient in several particulars.

They then pleaded various matters to the merits of the plaintiff's demand.

The parish judge presiding, sustained the exceptions, and set aside the sequestration, and the plaintiffs appealed.

*Lawson,* for the appellants.

*Muse,* contra.

*Morphy, J.,* delivered the opinion of the court.

Plaintiffs appeal from a judgment dissolving an order of sequestration, granted at their instance. The property sequestrated was a slave, whom they allege to have been specially mortgaged to them by one James C. Shule, and to have been sold by the latter, to Slaughter & Badger, in whose possession he now is. The alleged ground for obtaining this order, was their apprehension that the slave would be removed out of the state. Various grounds are assigned in the judgment appealed from, for the setting aside of the

EASTERN DIST.
January, 1840.

JOHNS
vs.
BOYLE.

An affidavit, in which the plaintiff states that "he fears the defendant is on the eve of running the mortgaged slave out of the jurisdiction of the state, is insufficient to obtain an order of sequestration. He should *state the facts which induce his* apprehension.

sequestration. It will be unnecessary for us to notice them all, because we concur in the opinion expressed by the judge below, as to one of them, to wit: the insufficiency of the affidavit. The plaintiffs make oath, *that they fear that the slave mortgaged may be removed beyond the jurisdiction of the state.* They set forth neither in their affidavit nor in their petition, which is referred to in the affidavit, the facts which induce their apprehension. This is absolutely required by article 275 of the Code of Practice. The mere expression of a fear, which a party may or may not really entertain, cannot, and ought not, entitle him to this extraordinary remedy, especially when, as in the *present case*, it affects the rights of third persons.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.

---

### JOHNS & CO. vs. BOYLE.

APPEAL FROM THE COURT OF THE THIRD JUDICIAL DISTRICT, FOR THE PARISH OF WEST FELICIANA, JUDGE MORGAN PRESIDING.

Three *judicial* days must elapse between taking judgment by default, and the day on which it is made final, or it will be reversed on an assignment of error.

This suit is instituted on a draft, drawn by the defendant, and small account, for the aggregate sum of four hundred and ninety-one dollars.

The defendant failed to appear. Judgment by default was taken the 7th December, 1838, and made final on the 11th; the 9th being Sunday. On the 5th January, 1839, a motion was made to set aside the final judgment, as

having been prematurely rendered. The motion was over-
ruled, under the provisions of the *Code of Practice, article*
318. The defendant appealed.

*Andrews,* for the appellant, assigned for error, that the
judgment was improperly rendered, before the lapse of three
judicial days, after taking judgment by default. 3 *Louisiana
Reports,* 115.

*Patterson,* contra.

*Morphy, J.,* delivered the opinion of the court.

The appellant assigns as an error apparent on the face of
the record, that three judicial days did not elapse in this
case, between the rendition of the judgment by default, and
that of the final judgment. Although the word *judicial* be
omitted in article 312 of the Code of Practice, which allows
three days to the defendant to file his answer, we think that
it contemplates those days when the court sits. Before filing
such answer, the judgment by default must be set aside,
which can only be done by a motion in open court. Such
has been the construction this article has heretofore received,
and no good cause has been shown why it should not be
adhered to.

It is, therefore, ordered, adjudged and decreed, that the
judgment of the District Court be annulled, avoided and
reversed, and that this cause be remanded for further pro-
ceedings below ; the costs of this appeal to be paid by the
appellees.

*Three judicial
days must elapse
between taking
judgment by de-
fault, and that on
which it is made
final, or it will
be reversed on
assignment of
error.*

EASTERN DIST.
January, 1840.

CLARK *vs.* ·CLARK ET AL.

CLARK
*vs.*
CLARK ET AL.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT, JUDGE
BUCHANAN PRESIDING.

It is not a valid objection to testimony, that two witnesses were examined together, and made oath to the same facts, in the same deposition. There is no law prohibiting a joint examination of witnesses, and taking their joint testimony in one deposition.

This is an action instituted by the owner of the steamer Semaphore, claiming damages to the amount of three thousand nine hundred and ninety-two dollars, from the defendants, as owners of the steam tow-boat Hudson, for running into his boat on the night of the 12th December, 1838, through negligence and mismanagement, and causing the injury, for which he seeks redress.

The defendants pleaded a general denial, and averred that the collision and injury complained of was occasioned by the fault, negligence, and want of skill on the part of the officers of the Semaphore; and that the tow-boat officers used all possible care and skill to avoid the collision, and are not liable for any mismanagement or damage.

On these pleadings and issue, the cause was submitted to a jury, on the testimony produced.

A bill of exceptions was taken to the reading of the deposition ·of two witnesses, Messrs. Heath and Hebert, who were examined jointly by the magistrate, testified jointly to the same facts, and signed and made oath to the same deposition jointly. The objections were, that their testimony should have been taken separately, and apart from each other, instead of jointly, in the same deposition.

On the evidence, the jury returned a verdict of three thousand eight hundred dollars for the plaintiff. From judgment confirming the verdict, the defendants appealed.

*Carter,* for the plaintiff.

*Roselius,* contra.

*Morphy, J.,* delivered the opinion of the court.

This suit is to recover damages from the defendants, as owners of the tow-boat Hudson, on the ground that, owing to the gross neglect, carelessness, and want of skill in the management of the officers on board of said boat, she came in collision with, and run foul of the steamer Semaphore, owned by plaintiff. Defendants aver that the collision took place through the fault and mismanagement of the persons having the command of the Semaphore, and that no blame can be imputed to their agents. The cause was submitted to an intelligent jury, who brought in a verdict for the plaintiff. After an unsuccessful effort to obtain a new trial, defendants appealed.

We find, in the record submitted to us without argument, a bill of exceptions, which presents the only point in the cause. A commission, offered in evidence by plaintiff, was objected to, on the ground that two witnesses had been sworn and examined together, by the magistrate, who executed the commission, instead of being sworn and examined separately and apart. It would, certainly, have been more regular and consonant with established practice to have examined the witnesses in the latter way ; but we are aware of no law prohibiting a joint examination, when it can be done conveniently and without confusion, as in the present case, where only two witnesses were to answer a few questions touching the same occurrence, which they had both witnessed. At all events, this irregularity, if it be one of any moment, has worked no injury to the defendants, because the material facts stated in that examination have been testified to by other witnesses, whose testimony stands uncontradicted and unobjected to.

On the merits, the small portion of the evidence reduced to writing, although fourteen witnesses appear to have been sworn, inclines us to adopt the view which the jury has taken of this controversy.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.

EASTERN DIST.
*January,* 1840.

CLARK
*vs.*
CLARK ET AL.

It is not a valid objection to testimony, that two witnesses were examined together, and made oath to the same facts, in the same deposition. There is no law prohibiting a joint examination of witnesses, and taking their joint testimony in one deposition.

PIPKIN *vs.* THOMPSON.

APPEAL FROM THE COURT OF THE FOURTH JUDICIAL DISTRICT, FOR THE PARISH OF IBERVILLE, THE JUDGE OF THE SECOND PRESIDING.

A sale to effect a partition is null, if the formalities required by law are not complied with.

The plaintiff is the daughter of Thomas B. Pipkin, deceased, who died intestate, in December, 1819, leaving a tract of four arpents of land on the Mississippi, as part of the community of acquests and gains. The survivors are the widow, and a son and daughter. In January, 1821, the widow petitioned the Probate Court to convoke a family meeting to deliberate on the propriety of liquidating and partitioning the succession of the deceased.

A family meeting was called, consisting of the tutrix and friends of the minors, without the presence of the under tutor, and advised the sale of the community property, and fixed the terms. The tract of land in question was adjudicated to the surviving widow, without appraisement, at five hundred dollars; being less, by one half, than the price of estimation in the inventory. She sold to the defendant, Thompson.

The plaintiff claims one-fourth in her own right, and three-fourths in right of her deceased brother; alleging that the probate sale to her mother was null.

The defendant set up title and cited in the widow Pipkin as his warrantor. She appeared and claimed title under the probate sale.

There was judgment for the plaintiff against the defendant for one arpent, and in his favor over against his warrantor for the value of the eviction. The defendant alone appealed.

*Edwards,* for the plaintiff.

*Labauve,* contra.

*Martin, J.*, delivered the opinion of the court.

EASTERN DIST.
*January,* 1840.

PIPKIN
*vs.*
THOMPSON.

This is a petitory action in which the plaintiff had judgment against the defendant, and he against his warrantors. He appealed and cited the plaintiff alone. The warrantors have followed the defendant to this court, and pray for the reversal of the judgment.

The record shows that the plaintiff's father left, at his death, a tract of land, four arpents in front, which he had acquired during marriage with his surviving wife. The defendant claimed title under a sale from the widow, to whom it was adjudicated at the probate sale of the succession of the deceased; so that the question turns on the legality or validity of this sale. It was provoked by her petition to the judge of probates, stating the necessity of a partition and liquidation of the succession, and concluding with a prayer that a family meeting be convoked, to fix the terms and conditions of the sale of the property. The meeting recommended the sale and fixed the terms.

It appears to us that the verdict and judgment in this case are correct. The sale was evidently made for a partition, for it is not shown that it was required for the payment of the debts of the succession. None of the formalities required in an action of partition by licitation were complied with. There was no inventory and appraisement made within the year. *Louisiana Code,* 1248. It was neither alleged or shown that the property was indivisible by its nature, or could not be conveniently divided. The defendant did not, therefore, acquire that portion of the premises which descended to the plaintiff at the death of her father, to wit: one arpent. The widow and the plaintiff's brother were entitled to the remaining three arpents.

The defendant has relied on the plea of prescription, but the plaintiff has shown that she was not of age at the inception of the suit.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.

LE BLANC *vs.* DASHIELL.

LE BLANC
*vs.*
DASHIELL.

APPEAL FROM THE COURT OF THE FOURTH JUDICIAL DISTRICT, FOR THE PARISH OF IBERVILLE, THE JUDGE OF THE SECOND PRESIDING.

A party having a separate and independent right of action is under no obligation, and cannot be required to intervene or cumulate his suit with others, litigating about the same matter.

The law not only requires a statement of the facts, showing an injunction to be necessary, before it is granted, but they must be positively sworn to, so as to subject the party to the penalties of perjury, if not true.

An affidavit is not vitiated, by setting forth superfluous matters, if it be otherwise good.

Where the appellee asks to have the judgment amended, he cannot have damages for a frivolous appeal.

This suit commenced by the hypothecary action. The widow Le Blanc caused to be sold, in 1830, in the parish of Iberville, the community property existing between her and her late husband, at probate sale, when Timoleon Lesassier became the purchaser of a tract of land, with two arpents front, &c.; paying part of the price, and giving a mortgage to secure the payment of the balance. In March, 1836, Lesassier sold to Addison Dashiell, the present defendant, who assumed the payment of the debt still due, with mortgage granted thereon.

In March, 1837, there remained due on this land the sum of eighteen hundred dollars, and the plaintiff commenced her hypothecary action against the third party in possession.

Dashiell obtained an injunction. The facts upon which he relied are fully stated in the opinion of this court.

On the trial, the district judge being of opinion that the defendant had shown no sufficient ground to sustain the injunction, dissolved it with ten per cent. interest and five per cent. damages and costs, and the defendant appealed.

*Ives*, for the appellant.

*Labauve*, contra.

*Morphy, J.*, delivered the opinion of the court.

The plaintiff, in her own right, and as natural tutrix of her minor children, proceeded, by the hypothecary action,

against defendant, as third possessor of some property mort-gaged to her by T. Lesassier, his vendor. Defendant enjoined her proceedings on the following grounds, to wit:

1. That T. Lesassier, his vendor, had already obtained a judgment against him for the same debt; that by intervening in Lesassier's suit against him, as she was advised to do by Lesassier's counsel, she could have had the benefit of said judgment, without subjecting defendant to the hardship, trouble and costs of two distinct suits, and the danger of paying twice the same debt.

2. That, in defendant's opinion, plaintiff was not legally qualified as tutrix of her minor children, to institute those proceedings.

3. That, as third possessor, he has not had the notice required by law, of the demand made on the principal debtor, Lesassier.

4. That the petition and affidavit, on which the order of seizure and sale issued, are insufficient, inasmuch as they do not set forth that ten days notice had been given to defendant, previous to the inception of these proceedings, of the demand made on Lesassier, thirty days before.

I. Plaintiff having a separate and independent right of action, was under no obligation whatever of thrusting himself in the midst of the heated and protracted litigation then and still going on between defendant and Lesassier; to have done so, when her remedy was a plain, simple and prompt one, would have been, to say the least of it, a very injudicious act; having then pursued her own rights, in her own way, she has occasioned no hardship to defendant, who could have saved the additional trouble and costs he complains of, by satisfying plaintiff's just claim on the property in his possession. As to the fear of paying twice the same debt, if seriously entertained, the defendant has thus far avoided that danger by not paying at all.

A party having a separate and independent right of action, is under no obligation, and can-not be required to intervene or cumulate his suit with others litigating about the same matter.

II. An injunction would be indeed a very safe and convenient proceeding for the use of debtors, if it could be obtained on the mere expression of their opinions, as to the rights of their creditor. The law not only requires the statement of

The law not only requires a statement of facts, showing an injunction to be necessary be-

facts showing that remedy to be necessary, but also such an affidavit as will submit the party to the penalties of perjury, if the facts sworn to appear to be otherwise; and it must be confessed, that it would be a difficult matter to prove defendant's opinion to have been different from that expressed and sworn to by him, in his petition for an injunction.

fore it is granted, but they must be positively sworn to, so as to subject the party to the penalties of perjury, if not true.

III. The evidence shows that plaintiff, in injunction, received more than ten days notice of the demand made on the principal debtor, before any proceedings were had against him.

An affidavit is not vitiated by setting forth superfluous matters, if it be otherwise good.

IV. The affidavit of plaintiff is drawn up in strict accordance with article 70, of the Code of Practice; if it varies from it, it is only in setting forth superfluous matters.

The court below very properly dissolved the injunction, but awarded only five per cent. damages. The appellee prays that the judgment be so amended as to allow twenty per cent. damages, instead of five, and one hundred and fifteen dollars for special damages. He moreover prays for ten per cent. damages, as on a frivolous appeal, independent of ten per cent. interest on the debt. The appellee cannot expect us to grant all that she asks. It would be indemnifying her beyond all measure of any loss or inconvenience she may have sustained, and turning into a piece of good fortune for her, the remedy resorted to by the defendant.

Where the appellee asks to have the judgment amended, he cannot have damages as for a frivolous appeal.

At all events, as she has availed herself of this appeal to have the judgment below amended, she cannot obtain damages from the appellant, who has afforded her the opportunity of gaining by the appeal.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs, as to the dissolution of the injunction; and that, in addition to the ten per cent. interest and five per cent. damages on the amount of the debt, there be judgment for five per cent. more damages, and for one hundred and fifteen dollars, amount of special damages proved on the trial.

MORGAN *vs.* WHITESIDES' CURATOR.

EASTERN DIST.
*January*, 1840.

APPEAL FROM THE COURT OF THE FOURTH JUDICIAL DISTRICT, FOR THE
PARISH OF POINTE COUPEE, THE JUDGE OF THE SECOND PRESIDING.

MORGAN
*vs.*
WHITESIDES'
CURATOR.

14L 277
47 1287

Two demands, clearly inconsistent and exclusive of each other, cannot be cumulated in the same action; but the plaintiff may make his election, which he will proceed with, at the trial.

An order for the discontinuance of a suit may be used as evidence of this fact, as soon as it is entered on the minutes. It does not require the signature of the judge.

It is not enough to obtain an injunction staying executory proceedings, to show an abstract irregularity. Injury to the applicant, or some apprehension of it, can alone justify a resort to this remedy.

So, an injunction should not be granted to stay an order of seizure and sale, when it is clear the party has a right to make another seizure, by taking out an *alias* order.

This suit commenced by injunction. The plaintiff alleges he purchased a tract of land at the probate sale of Philip Whitesides' succession, in the parish of Pointe Coupée, in November, 1836. That since then, David Whitesides, curator, and one of the heirs of P. Whitesides, obtained an order of seizure and sale, against this land, for the payment of the sum of four thousand and sixty dollars, with interest, which was seized by the sheriff on the 30th June, and advertised on the 3d of August, 1838, allowing only three days, when the defendant, in the seizure, resides more than forty miles from the judge who granted the order.

That said David Whitesides, as curator, heir, agent of the other heir, and one S. A. Lard, have also commenced suit against him for the same land, claiming to be owners under another title. He alleges various other informalities in the executory proceedings, and prays for an injunction to restrain and stop the sale, &c. The defendants pleaded a general denial, and averred that the injunction was wrongfully sued out, and ought to be dissolved with damages.

Upon these pleadings and issues, the cause was tried.

On the trial, the defendant offered an extract from the minutes of the court, to show that he had discontinued his

EASTERN DIST.
January, 1840.

MORGAN
vs.
WHITESIDES'
CURATOR.

suit for the land, which was received, and the trial ordered to proceed in relation to the order of seizure. The plaintiff's counsel objected, and excepted to the order of continuance as evidence, on the ground that it was not signed by the judge.

On the evidence and documents produced, the court dissolved the injunction without damages, and the plaintiff has appealed.

*Stevens,* for the plaintiff.

I. The court below erred in receiving in evidence a judgment of non-suit or discontinuance, taken in this case, in relation to the defendant's claim to the land :

1. Because it was taken at the same term of the court in which it was offered in evidence. *Code of Practice, article 555.*

2. Because it had not been signed by the judge.

II. No notice was given to Morgan of the existence of the order of seizure and sale, nor of the writ of seizure and sale, *before the sheriff seized the land,* after which said Morgan was notified that, unless he paid the mortgage debt and costs, within *three days,* the land would be advertised and sold, though the said Morgan resided at the distance of about forty miles from the residence of the judge who granted the order. Hence said Morgan was entitled to five full days notice before the said seizure could be legally made. *Code of Practice, article 735.* 7 *Martin, N. S.,* 512, 513.

*Patterson,* contra.

*Morphy, J.,* delivered the opinion of the court.

The appellant complains of the dissolution of an injunction sued out to arrest the execution of an order of seizure and sale, taken by defendant, as curator of the estate of Philip Whitesides.

The main grounds assigned below were :

1. That at the time the order of seizure and sale issued against the property, which plaintiff had bought of the estate of P. Whitesides, there was a suit pending in which the land

was claimed of him; that said suit had been brought by defendant, as curator, and in his own name and that of his brother, both sole heirs of Philip Whitesides, together with one S. A. Lard, on the ground that the sale made to plaintiff was void, because he had not paid the purchase money; and also on the ground that the land claimed did not belong to Philip Whitesides, at the sale of whose succession plaintiff had purchased, but on the contrary belonged to the estate of one Peter Barbary, deceased, under whom they claimed.

*Eastern Dist.*
*January,* 1840.

MORGAN
*vs.*
WHITESIDES'
CURATOR.

2. That the sheriff seized the land without giving plaintiff any previous notice, and that the notice given after seizure was only of three days, when he was entitled to five full days, because he lived at a distance of more than forty miles from the residence of the judge who granted the order.

I. On the argument of this cause, we were forcibly struck with the singular, anomalous and unaccountable part acted, throughout these proceedings, by the defendant in injunction. We find him praying for the rescission of the sale of property conveyed to plaintiff by himself, as curator of the estate of Philip Whitesides, and at the same time joining a stranger, and claiming jointly with him the same property as belonging to the estate of one Peter Barbary, under whom they claim, and not to the succession of P. Whitesides, of whom defendant states himself and his brother to be sole heirs. After all this, he proceeds to enforce the payment of the price by taking out an order of seizure and sale against the same property, as curator of P. Whitesides. No effort having been made by defendant's counsel to explain this course of conduct, we shall certainly make none to understand it, and shall pass it without further comment.

The suit for the land, and that on the proceedings enjoined, came up for trial on the same day. The demands in these two suits were clearly inconsistent and exclusive of each other. Although article 149, of the Code of Practice, speaks only of a cumulation of inconsistent demands in the same action, we see no good reason why the faculty therein given to a plaintiff to decide which demand he wishes to proceed with, should not extend to inconsistent demands in

Two demands, clearly inconsistent and exclusive of each other, cannot be cumulated in the same action; but the plaintiff may make his election which he will proceed with, at the trial.

EASTERN DIST. two distinct actions.  The election then was here made by
January, 1840. entering a discontinuance in the action for the land.  On
—————————— the trial of the injunction case, the defendant offered an
MORGAN      extract from the minutes of the court, showing such discon-
*vs.*        tinuance.  This was objected to by plaintiff, on the sole
WHITESIDES'
CURATOR.     ground that it was a judgment not signed, and could have

An order for no effect before the last day of the term, according to article
the discontinu- 555, of the Code of Practice.  The court below admitted
ance of a suit
may be used as the evidence, and, in so doing, we think, did not err.  The
evidence of this
fact as soon as it action of a court, on a motion to discontinue, cannot be viewed
is entered on the in the light of a judgment.  It decides nothing between the
minutes  It does
not require the parties, and the entry, when once made on the minutes of
signature of the
judge.        the court, has all the effect which it can ever have or acquire
              at any posterior time.  The extract offered was, then, the
              best evidence of the fact of discontinuance.  We can ima-
              gine none of equal dignity.

It is not enough    II.  As to the second ground, the notice was irregular ; it
to obtain an in-
junction staying should have preceded the seizure; but it is not enough to
executory  pro-
ceedings,  to obtain an injunction to show an abstract irregularity.  Injury
show an abstract to the applicant, or at least some apprehension of it, can
irregularity.  In-
jury to the appli- alone justify a resort to this extraordinary remedy.  Why
cant,  or  some should we perpetuate an injunction staying an order of
apprehension of
it, can alone jus- seizure and sale, when it is clear the party enjoined has a
tify a resort to
this remedy.  right to proceed to another seizure and sale, by taking out
So, an injunc-   an *alias* order.  From the turn the proceedings have taken,
tion should not
be  granted  to plaintiff has had now abundant notice of the seizure to be
stay an order of
seizure and sale, executed against him, and no possible injury can result to
when it is clear him from suffering the party to proceed with his writ accord-
the party has a
right  to  make ing to law.  It appears, however, to us, that the court below
another seizure,
by taking out an was wrong in decreeing costs against plaintiff, because, at
*alias* order.   the time he sued out this injunction to stay defendant's pro-
              ceedings, he was justified in that course by the suit for the
              land then pending against him.

It is, therefore, ordered, adjudged and decreed, that the
judgment of the District Court be affirmed, as to the dissolu-
tion of the injunction, but be so amended that the costs of
both courts be paid by the defendant and appellee.

SMITH *vs.* BRADFORD ET AL.

APPEAL FROM THE COURT OF THE THIRD JUDICIAL DISTRICT, FOR THE PARISH OF EAST FELICIANA, JUDGE MORGAN PRESIDING.

SMITH
*vs.*
BRADFORD ET AL.

When the sheriff acts honestly, being a public officer, he must be protected against excessive and vindictive damages.

So, where the sheriff illegally removed slaves by seizure from the plantation they were cultivating, a bare remuneration for the loss sustained, so far as it can be ascertained, should be adopted as the measure of damages.

The damages for loss of time of slaves, by illegal seizure and removal, should be estimated at the usual rate of hiring slaves.

This suit commenced by injunction. The plaintiff alleges, his vendor, Charles M. Smith, purchased a plantation and eleven slaves from the defendant, M. Bradford, for seventeen thousand seven hundred and eighty dollars, on which he paid five thousand dollars in cash, and for the balance gave his notes, payable by instalments, with mortgage to secure payment.

He further shows, that Charles M. Smith has since sold and conveyed to him the plantation and slaves, and that he has been in the possession and enjoyment thereof, and whilst he was cultivating his crop in the month of May, 1838, Bradford, the original vendor, illegally took out an order of seizure and sale against the mortgaged property, without making the necessary legal demand on the original debtor, thirty days before coming on him, and not having pursued other formalities required by law; and the sheriff removed the slaves from the plantation, in violation of law, and the article 660, of the Code of Practice. Wherefore he prays for an injunction, staying the order of seizure and sale; and that the sheriff, Thomas J. Robbins, and M. Bradford, be enjoined from further proceedings under the order of seizure and sale, and condemned to pay damages for the illegal seizure and removal of his slaves, &c.

The defendants answered separately. Bradford pleaded a general denial, and justified the course pursued; and

averred, that he had been injured by the wrongful suing out of the injunction, which, he prayed, might be dissolved, with damages.

The sheriff, Robbins, denied, generally, any liability, and justified under the writ of seizure, in virtue of which he acted; and averred, that he removed the slaves, because he apprehended, if he left them, they would be taken from the plantation, and put out of his reach.

Upon these pleadings and issues the cause was tried.

The district judge, upon the evidence adduced, came to the following conclusion and judgment:

Having decided that the order of seizure and sale improvidently issued, the only questions remaining are, is the plaintiff entitled to any damages, and if so, to what amount? On the part of the sheriff it is contended, that he is not responsible, because he only acted as the agent of his co-defendant, and that he has not been put in delay. The first ground is not tenable. The sheriff, it may be true, is not responsible while acting within the sphere of his duty, but the moment he goes beyond that, and violates the law, or commits a trespass, he becomes individually liable for all the injury a party may sustain from his illegal acts. The general rule is, that when he levies upon personal property or slaves, he should put them in a place of safety, under the penalty of being responsible for the loss or injury, which they may sustain through his fault or neglect. *Code of Practice,* 659 : but the next article of the code makes an exception to this rule. Nevertheless, (says the art. 660) the sheriff cannot remove from the lands or plantations, the implements of agriculture, the cattle or slaves employed in cultivating or clearing them, but he may appoint a guardian or owner for their preservation. He may, also, make such disbursements as are necessary for their preservation. *Code of Practice,* 661.

The second ground is equally untenable. It is believed that there is no provision of the laws of this state, which requires that a party should be put in *mora,* before an action can be instituted against him for committing a trespass. But while the court are of opinion that he is responsible to

the plaintiff, in damages for his illegal act, there is nothing in the circumstances of this case which would render it pro- per to render a judgment for vindictive damages. As against him, the court cannot take into consideration the expense to which the plaintiff has been put, by being obliged to institute this suit. That expense will properly fall upon the defendant, Bradford.

Indeed, it would appear that the whole claim for damages might, with propriety, have been stricken from the petition; but the parties have thought proper to put them at issue, and the court is bound to pass upon the issue so joined. The testimony as to the damage resulting from the illegal removal of the slaves, and their detention, is, as might have been expected, somewhat variant. The court has adopted the estimate of De Lee and Nettles, and estimates the amount to be recovered from the defendant, Robbins, at five hundred and twenty-eight dollars.

The court has been urged upon the authority of the case of the Ursuline Nuns *vs.* Depassau, 7 Martin, N. S. 645, if it should come to the conclusion that the proceedings were defective, not to render a final judgment in the case, but only to set aside the seizure and permit the party plaintiff in suit to proceed therein according to law. Upon reference to that case, it will be perceived that it must have been conducted according to a mode of practice established by the rules of the court of the first district, and without regard to any rules as laid down in the Code of Practice. Where the courts are continually in session, it doubtless affords great facilities to parties to be enabled to correct irregularities by motion, and thus, among other advantages, obviate the necessity of giving bond and security to enable the party complaining to obtain an injunction. But no such rule has ever been adopted by this court, nor could it be, for the plain reason that the chances are as ten to two against the court being in session to enable the party to have his motion determined, and the motion could not suspend the proceeding under the seizure, unless predicated on some of the grounds set forth in article 739, Code of Practice, and, perhaps, not

even then, unless an injunction had been granted. It certainly would be a novelty in judicial proceedings to try a cause on its merits, pronounce a final judgment in favor of a defendant, and in the same decree allow the plaintiff to amend his pleading, and again put the defendant on his defence. Neither can the court lend its aid to the party to convert his proceedings *via executiva* into the *via ordinaria.* The party who obtained this injunction is a third possessor, and no other judgment could be rendered against him, but one dissolving the injunction with such damages as the justice of the case might require.

It is, therefore, ordered, adjudged and decreed, that the injunction granted in this case be rendered perpetual; and it is further ordered, adjudged and decreed, that the plaintiff recover of the defendant, Thomas J. Robbins, the sum of five hundred and twenty-eight dollars, and of M. Bradford five hundred dollars.

The defendants appealed.

*Andrews,* for the plaintiff.

*Lawson,* for the defendant.

*Bullard, J.,* delivered the opinion of the court.

The only question arising in this case, which has been argued in this court, and upon which we are called to pronounce, relates to the quantum of damages which the plaintiff is entitled to recover against the sheriff, for removing certain slaves from the plantation which they were engaged in cultivating, in violation of article 660, of the Code of Practice. It appears that eleven slaves were removed from the plantation during ten days, early in the month of May.

When the sheriff acts honestly, being a public officer, he must be protected against excessive and vindictive damages.

It is not pretended but that the sheriff acted honestly. Being a public officer, in the discharge of his duty, he is to be protected against excessive and vindictive damages. The judge of the district adopted a standard, by which damages in the case should be measured, which is not satisfactory to this court. We think the plaintiff entitled to nothing more

than a bare remuneration for the loss sustained, so far as it can be ascertained. The judge assumed, as the basis of his calculation, the theory of two of the witnesses, to wit: that the eleven hands would have made forty-four bales of cotton, and that the loss of time is equal to one fourth, say eleven bales, of four hundred pounds each, estimated at from twelve to thirteen cents per pound. This appears to us too complex for practical application in such cases as the one now before the court. It assumes, that every slave will make four bales of cotton, makes no allowances for sickness, loss of time in consequence of bad weather, and the expense of clothing ; and, in fact, considers the gross amount of sales of the crop as the net profit of the labor of the slaves, without considering the other expenses of cultivation. Nor did the court make any allowance for one Sunday, which must have intervened. Although the scraping season may be important, we are not satisfied that a delay of ten days, early in the month of May, necessarily involves a loss of one-fourth of the crop of the whole year. We consider the sheriff bound to make good the loss of time at the usual rates of hiring slaves. And from the best consideration we have been able to give the subject, little aided, indeed, by the testimony in the record, we conclude that the plaintiff is entitled to recover one hundred dollars damages.

SMITH
*vs.*
BRADFORD ET AL.

So, where the sheriff illegally removed slaves, by seizure, from the plantation they were cultivating, a bare remuneration for the loss sustained, so far as it can be ascertained, should be adopted as the measure of damages.

The damages for loss of time of slaves, by illegal seizure and removal, should be estimated at the usual rate of hiring slaves.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be avoided and reversed ; and proceeding to render such judgment as in our opinion should have been given below, it is further ordered and decreed, that the injunction be rendered perpetual ; that the plaintiff recover of the defendant, Thomas J. Robbins, one hundred dollars, and of the defendant, Bradford, five hundred dollars, with costs in the District Court, and that the plaintiff and appellee pay the costs of the appeal.

MORGAN *vs.* LARD ET AL.

APPEAL FROM THE COURT OF THE FOURTH JUDICIAL DISTRICT, FOR THE PARISH OF POINTE COUPEE, THE JUDGE OF THE SECOND PRESIDING.

The jury are the peculiar judges of the *quantum* of damages.

Damages may be assessed at an annual sum; and where the petition shows no period from which they shall be computed, and the verdict affixes none, the court may give them from judical demand, and until the surrender of the premises to the successful claimant.

The plaintiff sued for the recovery and possession of a tract of land, with damages for the illegal detention thereof, and for waste committed. On the trial, the jury returned the following verdict: " Verdict in favor of the plaintiff, that he recover the possession of the land, with four hundred dollars per annum, and costs."

A new trial was insisted on, because the verdict is illegal and void, for uncertainty, and that no judgment can be rendered on it.

The court overruled the motion for a new trial, and gave judgment for the land described in the petition, and for four hundred dollars per annum, in damages, from judicial demand, until possession is restored, with costs. The plaintiff appealed.

*Stevens,* for the plaintiff and appellant, insisted that the verdict was for too small a sum, and altogether illegal as regards the damages. The judgment should be reversed and the cause remanded for a new trial, &c.

*Patterson,* contra.

*Martin, J.,* delivered the opinion of the court.

The plaintiff claims possession of a tract of land, with damages for the unlawful detention and waste. The defendants pleaded the general issue.

The plaintiff had a verdict for the possession of the land, and damages at the rate of four hundred dollars per annum.

The court rendered judgment accordingly, and decreed, that the annual damages should begin at the inception of the suit. The plaintiff appealed.

It appears that the appellant made an unsuccessful attempt to obtain a new trial, on the ground that the verdict was contrary to law and the evidence, and void for uncertainty.

This motion was, in our opinion, correctly overruled. The first objection can have no other reference than to the quantum of damages, of which the jury were the peculiar judges.

In this court the appellant's counsel has urged, that the jury ought to have assessed the damages in a gross sum, and not in an annual amount. He has, therefore, prayed that judgment be affirmed, as far as it relates to the possession of the land, and that the cause be remanded for a new trial, as it respects the damages; and if that cannot be done, that the entire verdict be set aside, the judgment reversed, and the case remanded for a trial *de novo*.

The plaintiff has not shown, in his petition, any period from which the damages should be computed; the judge, therefore, correctly gave them from judicial demand. This judgment does not, however, fix the time when these damages are to cease. We think they ought to do so with the surrender of the premises to the plaintiff.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be annulled, avoided and reversed; and proceeding to give such judgment as in our opinion ought to have been rendered in the court below, it is ordered, adjudged and decreed, that the plaintiff recover and be quieted in the possession of the premises, with damages at the rate of four hundred dollars per annum, from the inception of the suit, until possession be given to the plaintiff.

MORGAN
*vs.*
LARD ET AL.

The jury are the peculiar judges of the quantum of damages.

Damages may be assessed at an annual sum; and where the petition shows no period from which they shall be computed, and the verdict affixes none, the court may give them from judicial demand, and until the surrender of the premises to the successful claimant.

GAY vs. ARDRY.

GAY
vs.
ARDRY.

APPEAL FROM THE COURT OF THE FOURTH JUDICIAL DISTRICT, FOR THE PARISH OF POINTE COUPEE, THE JUDGE OF THE SECOND PRESIDING.

The party who fails to offer evidence of the facts, on which his exception is based, and proceeds to trial on the merits, may be held to have waived the exception.

A party has no right to interrogate a juror, on oath, whether he understands the English language.

A verdict which gives interest from *judicial* demand is sufficiently certain, as the record specifies the day.

Judgment may be rendered after the lapse of more than three days from that on which the verdict is found. The appellant complains with a bad grace, that judgment was not rendered against him soon enough.

This is an action against the maker of a promissory note.

There was a verdict for the sum claimed with legal interest from judicial demand. The verdict was found the 24th May, and judgment rendered thereon the 13th June following. The defendant appealed, and assigned the points on which he relied as stated in the opinion of the court.

*Stevens,* for the appellant.

*Patterson,* for plaintiff and appellee.

*Bullard, J.,* delivered the opinion of the court.

The appellant relies upon the following points :

1st. That the court erred in ruling that the defendant had waived his exception, by not requiring a trial on it, before the case was set down for trial.

2d. That the court erred in not permitting him to interrogate a juror, on oath, whether he understood the English language.

3d. That the verdict is void, because it does not specify the day from which the interest is to be computed.

4th. That the judgment was not rendered within the three days after the verdict, as required by the Code.

I. The record does not inform us of the facts upon which the exception alluded to was based. The appellant having proceeded to trial on the merits, without offering any evidence of such facts as were necessary to sustain his exception, may well be held to have waived it.

II. The law has not thought proper to make ignorance of the English language a good cause of challenge. The question was, therefore, in our opinion, impertinent.

III. The verdict gives interest from judicial demand, which date is shown by the record, " *id certum est quod certum reddi potest.*"

IV. The appellant complains, with a bad grace, that the judgment was not rendered against him soon enough. We can perceive no good reason why judgment should not be rendered more than three days after verdict found, if there be no other objection.

We should have granted the prayer of the appellee for damages on this appeal as clearly frivolous, if it had not been filed too late. *Code of Practice,* article 890.

It is, therefore, ordered and adjudged, that the judgment of the District Court be affirmed, with costs.

*Eastern Dist.*
*January,* 1840.

GILLESPIE
*vs.*
DAY.

The party who fails to offer evidence of the facts on which his exception is based, and proceeds to trial on the merits, may be held to have waived the exception.

A party has no right to interrogate a juror, on oath, whether he understands the English language.

A verdict which gives interest from judicial demand is sufficiently certain, as the record specifies the day.

Judgment may be rendered after the lapse of more than three days from that on which the verdict is found.

The appellant complains, with a bad grace, that judgment was not rendered against him soon enough.

---

### GILLESPIE *vs.* DAY.

APPEAL FROM THE COURT OF PROBATES, FOR THE PARISH OF ST. HELENA.

Proceedings had *ex parte,* going to homologate a tutor's account and grant a final discharge, when there is no opportunity given to the heir at law to contest the account, are illegal and do not form the exception of *res judicata,* when the tutor is called on to render his account by the heir of the deceased pupil.

This is an action to compel the defendant to render a complete and perfect account of the tutorship of his late pupil, Wm. Day, deceased. The plaintiff is the mother and heir at law of the deceased, and the defendant his grand-father.

He sets up in defence the plea of *res judicata*, and a former judgment of the Court of Probates, accepting and homologating his final account as tutor, and granting a discharge.

The record shows that, on the 28th November, 1837, the present defendant presented his petition and an account of his tutorship, which he prayed might be accepted and homologated, and he discharged from all further liability in the premises.

The judge of probates made an order granting the prayer of the petitioner, and that *ten days notice* of filing the tableau or account be given, according to law.

On the 11th December following, the judge decrees, "there being no opposition after *ten days legal notice*," that the account and tableau be homologated, and that the petitioner be permitted to expend the funds on hand in the payment of the privileged debts, &c., and that he be discharged from all further liability, &c.

The record of this judgment was produced in evidence, and there was judgment sustaining the exception of *res judicata*, from which the plaintiff appealed.

*Andrews* and *Davidson*, for the appellant.

*Penn*, contra.

*Bullard, J.*, delivered the opinion of the court.

This is an action against a tutor to compel a rendition of his account of tutorship. The defendant admits that he was the tutor of the minor, William Day, since deceased, but among other things, pleads the exception of *res judicata*. The record shows, that, after the death of the pupil, the defendant, his tutor and grand-father, presented a petition to the Court of Probates, in which he represented that William

Day, his grand-son and late pupil, had departed this life, leaving himself and Mrs. Nancy Gillespie, his mother, as his heirs at law ; that, by the death of said minor, his trust as tutor, of course, expired, and he begs leave to submit a statement in the form of an account current of his actings and doings in that capacity. He signifies his acceptance of the succession of his grand-son, and as the estate consists of notes, accounts, &c., he has fixed, in his tableau, the amount coming to each party. He prays that legal notice may be given, and after due proceedings had in the premises, that the tableau and account may be homologated, and the payments made accordingly, and the petitioner may be discharged from all further liability in the premises. No citation to any person was issued, but after some days notice, the Court of Probates decreed, that this account and tableau of distribution, as it is styled, be acknowledged and allowed; that the petitioner be permitted to expend the funds on hand in the payment of the privileged claims, and that the petitioner, William Day, be discharged from all further liability as tutor of said minor.

We think the Court of Probates erred in sustaining this exception. The proceedings, by which the pretended discharge was obtained, were wholly *ex parte*, and we know of no law by which they were authorized. No opportunity was given to the heir at law to contest the account thus rendered, and the Court of Probates is without authority to finally pronounce upon the rights of parties not before it.

It is, therefore, ordered and adjudged, that the judgment of the Court of Probates be reversed, the exception overruled, and the case remanded for further proceedings according to law, the appellee paying the costs of the appeal.

EASTERN DIST.
January, 1840. ·

GILLESPIE
*vs.*
DAY.

Proceedings had *ex parte*, going to homologate a tutor's account, and grant a final discharge, when there is no opportunity given to the heir at law to contest the account, are illegal, and do not form the exception of *res judicata*, when the tutor is called on to render his account by the heir of the deceased pupil.

RATLIFF *vs.* HIS CREDITORS.

RATLIFF
*vs.*
HIS CREDITORS.

APPEAL FROM THE COURT OF THE THIRD DISTRICT FOR THE PARISH OF EAST FELICIANA, JUDGE JONES, OF THE EIGHTH DISTRICT, PRESIDING.

It must appear from evidence before this court, that the appellee resides out of the state, at the time of service of citation made on his attorney, or it will be insufficient.

The appeal having been once granted, the judge *a quo* has no longer any control, and cannot make any order respecting a citation or the mode of serving it.

An appeal is not to be dismissed, according to the provisions of the act of March 20, 1839, if the irregularity of the citation, or service thereof, is not imputable to the fault of the appellant: otherwise, if it is.

In this case there was judgment overruling the opposition of the representatives of N. Cox, deceased, to the tableau of distribution filed by the syndic, in which a preference was set up over the claims of Rhodes & Peters, Palmer & Southmayd, and other creditors. The opponents appealed, and made these two firms and the syndic, appellees.

Citations and petition of appeal were regularly served on Palmer & Southmayd, and on the syndic. But in relation to Rhodes & Peters, the sheriff of New-Orleans, to whom process had been sent, returned, " that they could not be found in his bailiwick."

The counsel for the appellant applied by petition to the judge *a quo*, alleging, the sheriff returned that Rhodes & Peters were not residents of the state, and had no agent therein ; and prayed for a new citation of appeal to be served on their attorney at law, which was granted.

*Andrews*, the attorney, moved to dismiss the appeal, and stated, he was not the attorney of Rhodes & Peters, at the time of service of the citation, and that one member of said firm was dead, and the other resided in New-Orleans.

*Muse*, syndic of the creditors, &c., also filed grounds for the dismissal of the appeal.

*Lobdell*, for the appellants.

*Martin, J.,* delivered the opinion of the court.

The dismissal of the appeal is prayed for on account of irregularity in the service of citation, which was made on the attorney of the appellees, Rhodes & Peters. The sheriff having returned on the first citation, that the appellees were not found in his parish, the appellant obtained the judge's order for an *alias* citation to be served on the attorney, which was accordingly done.

It is urged, that one of these appellees, at the time of the service made on the attorney, resided in the city of New-Orleans, the sheriff of which made the return of " not found," and that the other one was dead.

The Code of Practice, article 582, requires service of citation of appeal to be made on the appellee, " if he resides within the state, or on his advocate if he do not." There is on evidence before us that the appellees resided *out* of the state at the time of the service. They are stated in the proceedings, as residing in the city of New-Orleans. The return of the sheriff, on the first citation, does not state that they had ceased to reside there. It states only that they were not to be found. There was no necessity for a personal service, and the citation might have been left at the place of their usual domicil, which does not appear to have been changed.

*It must appear, from evidence before this court, that the appellee resides out of the state, at the time of service of citation made on his attorney, or it will be insufficient.*

The appeal having been granted, the district judge had the case no longer under his control, and could give no order as to the mode of serving the citation.

*The appeal having been once granted, the judge a quo has no longer any control, and cannot make any order respecting a citation, or the mode of serving it.*

Under a law passed at the last session of the legislature, approved March 20th, 1839, an appeal is not to be dismissed on account of any irregularity in the citation or service thereof, whenever such irregularity is not to be imputed to the appellant. In this case, it is clearly imputable to the counsel of the appellant, whose act is that of the client.

*An appeal is not to be dismissed according to the provisions of the act of March 20th, 1839, if the irregularity of the citation, or service thereof, is not imputable to the fault of the appellant: otherwise, if it is.*

It does not appear to us that we are authorized to give any relief. The appeal must, therefore, be dismissed, with costs.

PIPKIN *vs*. DOIRON.

APPEAL FROM THE COURT OF THE FOURTH JUDICIAL DISTRICT, FOR THE
PARISH OF IBERVILLE, THE JUDGE OF THE SECOND PRESIDING.

The property of a succession, which descends to, and is inherited by the
minor children, cannot be adjudicated to the surviving widow and
mother, for *less than its appraised value.*

The plaintiff, Adéle Pipkin, in her own right, and as heir of her deceased brother, claims a tract of four arpents of land with the usual depth, which she alleges was the separate property of her father, at his death, in 1819 ; that her and her late brother, Philip P. Pipkin, were the sole issue of the marriage between her father and Armede Villiers, and inherited all his separate property.

She further shows, that, shortly after the death of her father, there was a probate sale of his estate at which the surviving widow became the purchaser of the tract of land in question, at less than the appraised value ; and that the judgment ordering the sale, and the sale itself, are illegal, null and void. She also alleges and shows, that her brother died in 1833, without descendants, and that she inherits three-fourths of his estate, and her mother one-fourth. She, therefore, prays that the defendant in possession be adjudged to deliver up to her the contested premises, and that her title thereto be declared valid, and that she be quieted in the possession and have judgment for damages and rents, for the illegal detention of the same.

The defendant derived title immediately from the heirs of Laurent Villiers, who purchased from Armede Villiers, (widow Pipkin,) whose title rests on the validity of the probate sale of the estate of Thomas Pipkin, deceased. The defendant called in all his vendors in warranty. Upon the titles and evidence adduced, the judge presiding gave judgment for the plaintiff, decreeing her three and one-tenth arpents of the tract of land, and ordering her to pay seven hundred and seventy-five dollars, the value of the improve-

ments, from which is to be deducted the rents from the time of bringing suit, until the plaintiff is put in possession, at the rate of forty-two dollars per annum; the defendant, Doiron, to have a privilege on the property for his improvements, and to pay costs; and that the defendant recover the sum of eight hundred and fifty-six dollars, and rents which he has to allow and pay, from his warrantors, the heirs of Laurent Villiers, who have a like judgment over against Madame Armede Villiers. The last warrantor appealed.

*Burke* and *Taylor*, for the appellants.

*Labauve*, for the defendant, Doiron, who, in his answer to the petition of appeal, avers that the judgment is erroneous and should be reversed; that the first sale in question was made by order or in pursuance of a judgment of the Probate Court, of competent jurisdiction, and was sold to pay the debts of the succession, and is valid in law.

*Edwards*, for the plaintiff and appellee.

*Bullard, J.*, delivered the opinion of the court.

The plaintiff in this case, as heiress of her father and brother, asserts title to a tract of land in possession of the defendant. It is shown that the father of the plaintiff, previously to his marriage with her mother, was owner of the land in controversy; that he died, leaving two children, to wit, the plaintiff and a son, who afterwards died without descendants, and that the plaintiff and her mother inherited from him, the former for three-fourths, and the latter for one. She, therefore, shows title in herself to one-half, and three-fourths of the other half of the tract of land.

The defendant claims through the widow, in virtue of a probate sale; and the sole question is, whether that sale divested the title of the plaintiff and her brother, who were minors at the time. Various nullities are alleged, both in relation to the steps which preceded the judgment of the Court of Probates ordering the sale, and in relation to the

<div style="text-align: right">EASTERN DIST.<br>
*January,* 1840.<br><br>
PIPKIN<br>
*vs.*<br>
DOIRON.</div>

EASTERN DIST. capacity of the widow, who was, at the same time, tutrix of
January, 1840. her minor children, to purchase. We think it unnecessary

PIPKIN
*vs.*
DOIRON.

The property
of a succession,
which descends
to, and is inhe-
rited by the mi-
nor · children,
cannot be adju-
dicated to the
surviving widow
and mother, for
*less than its ap-
praised value.*

to go beyond the sale, which was clearly null, because the
property did not bring its appraised value. The land was
estimated at fifteen hundred dollars, and was purchased at
five hundred dollars. Admitting that the judgment ordering
the sale was correct, or that it cannot now be questioned, yet
it is obvious that the judgment did not authorize the sale for
a less price than the appraised value. The wrong was
committed in executing the judgment, and not in the judg-
ment itself. The doctrine in the case of Lalanne's Heirs *vs.*
Moreau, (13 Louisiana Reports, 43,) that the decision of the
Court of Probates ordering the sale is to be taken as conclu-
sive, and cannot be impeached collaterally, does not, there-
fore, apply to the case now before us.

We find no difficulty in concurring with the District Court
upon the question of title ; but the defendant complains of
the judgment rendered in his favor against his warrantor,
and contends that he was entitled to recover a larger sum,
having proved the property to be worth, at the time of the
trial, two thousand dollars. It is true, some of the witnesses
state, that the whole of the tract of land, in its improved
state, is worth two thousand dollars, but the defendant reco-
vered by the same judgment from the plaintiff the full
value of the improvements. The evidence on this subject
is not so positive as to authorize us to disturb the judgment
rendered below, believing that substantial justice has been
done between all the parties.

It is, therefore, adjudged and decreed, that the judgment
of the District Court be affirmed, with costs.

EASTERN DIST.
*January*, 1840.

ALLAIN & TREMOULET *vs.* TRUXILLO.

ALLAIN & TRE-
MOULET
*vs.*
TRUXILLO.

APPEAL FROM THE COURT OF THE SECOND DISTRICT, FOR THE PARISH OF ASSUMPTION, THE JUDGE THEREOF PRESIDING.

14L 297
46 1373

When a party expressly calls for the separate answers of each member of a firm, every member thereof is bound to answer when notified of the order of court, and without a commission being sent, even when the party interrogated resides out of the parish.

It devolves on the party desiring the answers to interrogatories to notify the party interrogated, and give time for the answers to be made.

This is a suit by the payees against the maker of a promissory note.   The execution of the note was admitted.

The defendant propounded interrogatories to the plaintiffs, who reside in New-Orleans, touching the consideration of the note sued on, and required separate answers from each. Tremoulet, one of the firm, being in the parish of Assumption at the time, answered, and the parties proceeded to trial, without waiting for the answer of Allain.

On the trial, the defendant's counsel excepted to the answer of Tremoulet being read, and insisted, as both had not answered, the answer of one could not be read, and that the interrogatories to both ought to be taken for confessed. The district judge presiding, sustained the exception, and gave judgment for the defendant.   The plaintiffs appealed.

*Winchester,* for the plaintiffs.

*Ilsley* and *Nicholls,* for the defendant.

*Morphy, J.,* delivered the opinion of the court.

This suit is brought on a promissory note, by the payees. They describe themselves as residing and trading in the parish and city of New-Orleans.  The defendant, after taking a frivolous exception, and suffering a judgment by default to go against him, filed an answer.   He admits his signature, pleads want of consideration, and propounds interrogatories,

EASTERN DIST.
January, 1840.

ALLAIN & TRE-
MOULET
vs.
TRUXILLO.

which he prays that plaintiffs may be ordered to answer seve-
rally. Tremoulet being at the time in the parish of Assump-
tion, answered *instanter*, expressing his personal knowledge
of the whole transaction, and showing the consideration for
which the note had been given. To these answers, the
defendant excepted, on the ground of insufficiency; the other
plaintiff not having answered as required to do. On the same
day, the parties proceeded to trial. During its progress,
plaintiff's counsel offered to read the answers of Tremoulet,
but defendant objected to their being read without those of
Allain, and contended that his interrogatories not having
been answered according to the order of the court, the facts
therein set forth should be taken for confessed. The judge
below being of that opinion, gave judgment in favor of
defendant.

When a party
expressly calls
for the separate
answers of each
member of a
firm, every mem-
ber thereof is
bound to answer
when notified of
the order of
court, and with-
out a commis-
sion being sent,
even when the
party interro-
gated resides out
of the parish.

When a party expressly calls for the separate answers of
the members of a firm, we think that every member thereof
is bound to answer, as was intimated in Martineau et al. *vs.*
Carr, 3 *Martin*, 497. Some discussion took place at the bar
in relation to the commission directed to be issued by article
352, of the Code of Practice, when the party interrogated
resides out of the parish where the court sits ; each party to
this suit contending, that it was incumbent on the other, to
take out and forward such commission. We are of opinion
that neither was bound to do it here. An attentive perusal
of the article above cited, taken in connection with the pre-
ceding one, shows that it contemplates only the case where
one party wishes his adversary to answer in open court, and
in his presence. This was not asked by the defendant; no
commission then was to be sent to New-Orleans, and the
party living there, when notified of the order of court, had
only to forward his answers to the clerk to have them filed,
but this he could not be expected to do on the very morning
he was called upon to answer.

The question then more properly is, on whom devolved the
duty of praying for a continuance, in order to afford Allain
sufficient time to be notified of, and to comply with the
order of court, making it his duty to answer ? Surely on

him who needed the evidence. It behoves the party who provokes the answers of his adversary, to use them as testimony for himself on the trial, to take the means required by law to obtain them. It has been determined in this tribunal, that a party who propounds interrogatories to be answered in open court, and neglects to have a day fixed, waives his right to have them taken *pro confessis*, if they be not answered. Thus it appears to us that this defendant, by going to trial without taking any legal steps to afford the absent party any possibility of answering his interrogatories, must be considered as having waived them. There remained then, the answers of Tremoulet, by which, we think, the defendant must be concluded. These answers being full and positive, we apprehend that the defendant has not done himself much injury by thus foregoing those of the other partner. If the latter had any knowledge of the business, his answers would only strengthen the evidence against defendant. If he knew nothing about it, his ignorance could not weaken it. The reason why separate anwers are required of the members of a firm is, to guard against any attempt to render nugatory the right of interrogation, by having the answers made by that partner, whose information on the subject would be the most limited.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be annulled, avoided and reversed; and now, this court proceeding to render such judgment as in their opinion should have been given below, do order, adjudge and decree, that the plaintiffs do recover of the defendant four thousand eight hundred and sixty dollars and eighty-eight cents, together with interest thereon at the rate of ten per cent. per annum, from the 18th of July, 1838, until paid, and that the defendant and appellee pay costs in both courts.

---

EASTERN DIST.
*January*, 1840.

ALLAIN & TRE-
MOULET
*vs.*
TRUXILLO.

It devolves on the party desiring the answers to interrogatories to notify the party interrogated, and give time for the answers to be made.

EASTERN DIST.
*January*, 1840.

ALLAIN & TRE-
MOULET
*vs.*
TRUXILLO.

ALLAIN & TREMOULET *vs.* TRUXILLO.

APPEAL FROM THE COURT OF THE SECOND DISTRICT, FOR THE PARISH OF ASSUMPTION, THE JUDGE THEREOF PRESIDING.

Where separate answers of the members of a firm are required to interrogatories, each member is bound to answer separately, when notified; but the party needing them must allow time and procure them.

This is an action on a promissory note, in which the defendant had judgment on an exception, and the plaintiffs appealed. The case is, in all respects, similar to the preceding one, and so decided accordingly.

*Winchester*, for plaintiff.

*Ilsley* and *Nicholls*, contra.

*Morphy, J.*, delivered the opinion of the court.

This case, similar in all its features to the one this day decided between the same parties, presents the same point, and must be governed by the same principles and reasoning.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be annulled, avoided and reversed; and this court now proceeding to give such judgment as in their opinion should have been rendered below, do order, adjudge and decree, that the plaintiffs do recover of the defendant four thousand eight hundred and sixty dollars and eighty-eight cents, with interest thereon, at the rate of ten per cent. per annum, from the 18th of July, 1838, until paid, and that the defendant and appellee do pay costs in both courts.

KLATHENHOFF *vs.* ARDRY.

APPEAL FROM THE COURT OF THE FOURTH JUDICIAL DISTRICT, FOR THE PARISH OF POINTE COUPEE, THE JUDGE OF THE SECOND PRESIDING.

Where an absent witness has been duly summoned, and the party makes affidavit setting forth his materiality and the material facts expected to be proved by him, and that he expected his attendance on the day fixed for trial, it will be sufficient ground to obtain a continuance.

This is an action for work and labor alleged to be done in pursuance of a written contract, and on account, by plaintiff, for and at the request of the defendant, in which the sum of three hundred and eleven dollars is demanded.

The defendant pleaded several matters by way of exception ; admitted the written contract sued on, but denied any indebtedness or liability under it, or on any other account.

On the day fixed for trial, the defendant moved for a continuance on the following grounds, set forth in his affidavit : " That Robert Harvey, a resident of the parish, is a material witness, duly summoned, by whom he expects to prove sundry facts detailed, and also other material and important facts he expects to establish ; but that said Harvey left the parish a short time since, with the intention of returning in the course of a few days, and that he has been expecting him daily," &c.

The judge *a quo* refused the continuance, because the affidavit should state that the affiant did not know that the witness intended to depart, or that he could not prevent his departure before the day fixed for trial, according to article 465, of the Code of Practice. The defendant excepted to the opinion of the court.

There was judgment non-suiting the plaintiff on the written contract, but allowing him sixty-one dollars and forty cents on his account, from which the defendant appealed.

*Patterson,* for the plaintiff.

*Stevens,* for the appellant.

EASTERN DIST.
January, 1840.

KLATHENHOFF
vs.
ARDRY.

*Morphy, J.*, delivered the opinion of the court.

The defendant complains that the judge *a quo* improperly overruled his motion for a continuance; his affidavit, which is of unusual length, appears to us as full and comprehensive as could be desired. It was found, however, insufficient by the judge, who tried the cause. He thought, that, in addition to his manifold allegations, the affiant should have sworn that his witness had gone away, and that he did not know that he intended to depart, or could not prevent his departure, as required by article 465, of the Code of Practice. We hold this article inapplicable to the present case. It obviously contemplates those cases in which a witness, being brought to the court-house by legal process, and being there in attendance, goes away without the knowledge of the party. It cannot allude to a witness who has not been summoned at all; who, previous to the day of the trial, has temporarily left his home, and has not yet returned, although daily expected, as in this case. We know no means in the power of a party to prevent his witness from occasionally absenting himself, if such be his pleasure. We think that the affidavit was fully sufficient to entitle defendant to his continuance.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be annulled, avoided and reversed; that the case be remanded for further proceedings, and that the appellee pay the costs of this appeal.

BARRETT *vs.* WALKER.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT, JUDGE
BUCHANAN PRESIDING.

According to a statute law of Mississippi, all notes made there are subject to every equitable defence against a *bona fide* endorsee, which could be set up against the payee; and when sued on here, the case must be governed by the *lex loci contractus*.

When a vendee has not complied with his agreement, he cannot complain, and set up as a matter of defence to his note, that the vendor has not extinguished a certain mortgage, when this failure was the consequence of his not complying with his stipulation to pay in a certain manner.

This is an action on three promissory notes, signed by the defendant at Natchez, in Mississippi, the 26th January, 1831, for one thousand dollars each, and payable in all the month of November, 1834. These notes were given in part payment of the price of two tracts of land and slaves, in the parish of Lafourche Interior, purchased of the Bowies by R. J. and D. S. Walker, and James C. Wilkins, for the sum of ninety thousand dollars, as evidenced by two notarial acts of the 12th February, 1831, and an act *sous seing privé*, dated at Natchez, the 7th March, 1831. The latter act fixed and specified the modes and times of payment, according to the real meaning and understanding of the parties.

The defendant pleaded a general denial; admitted his signature, and averred, that there was a failure of consideration; said notes only were to be paid under certain conditions which have not been complied with. A long settlement of accounts were set up in the defence which are stated in the opinion of the court.

The district judge, after going into an elaborate settlement of the accounts between the parties, decided that the defendant was liable to pay his notes. That any failure of the conditions was imputable to him, in not paying off the liens and mortgages. Judgment was rendered for the amount of the notes sued on, and the defendant appealed.

EASTERN DIST.
January, 1840.

BARRETT
vs.
WALKER.

*Sterrett,* for the plaintiff.

*L. Janin* and *Johnson,* for the defendant.

*Morphy, J.,* delivered the opinion of the court.

The defendant and appellant is sued by an endorsee on three promissory notes, drawn by him at Natchez, to the order of one James Bowie, and payable at the State Bank of Mississippi, in all November, 1834.

The notes sued on were given in part payment of the price of land and slaves, sold by James Bowie and others, to defendant, D. S. Walker, and J. C. Wilkins. The sale was made by notarial act, in the parish of Lafourche, on the 12th of February, 1831, and purports to be for cash; but in an act under private signature, executed at Natchez, on the 7th of March following, the parties declare that the purchase money had not been paid, as acknowledged in the sale; that its amount, to wit, ninety-four thousand four hundred and seventy-five dollars, was payable in six annual instalments, the last to fall due in all November, 1836. This instrument describes certain liens and mortgages on the property sold, amounting to thirty-seven thousand nine hundred and seventy-seven dollars and sixty cents, which were to be paid with and out of the price, as the instalments would become due. It provides, among other things, that, should the purchasers have to make any advances on account of the liens and mortgages therein set forth, before the stipulated periods of payment, they are to be allowed ten per cent. per annum on such advances; and that, before the last instalment is paid, all liens and mortgages, of every description, are to be removed, and the title rendered secure, before signing this private act. The purchasers, moreover, agreed to give five notes of one thousand dollars each, out of a sum of seven thousand seven hundred and eighty-one dollars and ninety cents, which it had first been agreed should remain in their hands; said five notes to be subject to the conditions of the final payment, in 1836, as to the removal of all mortgages, and the security of the title. It is on three of these five notes that the present suit is brought.

A statute of the state of Mississippi, is spread on the record as evidence, and shows that the maker of a note, in that state, may set up any equitable defence against a *bona fide* endorser, which he could offer against the payee. The notes in suit being made in Mississippi, must be subject here to all the rules and limitations prescribed by the *lex loci contractus celebrati.* We are, therefore, bound to examine the defence set up by the maker, as if this suit had been brought by the payee himself; but at the same time we cannot but think that plaintiff, being a perfect stranger to all the transactions between these parties, is entitled to strict proof of all the facts connected with, or growing out of them.

According to a statute law of Mississippi, all notes made there are subject to every equitable defence against a *bona fide* endorsee, which could be set up against the payee; and when sued on here, the case must be governed by the *lex loci contractus.*

Among other means of defence set forth in the answer, but not insisted on at the trial, the defendant contends that, on the 12th of December, 1835, when this suit was brought, there existed, on the property sold to him, mortgages to the amount of thirty-two thousand five hundred and fifty-one dollars and thirty-six cents; that by express stipulation he was not to be required to pay these notes until three mortgages were raised; of this amount of mortgages complained of as unextinguished, only one thousand six hundred and ninety dollars and eighty-seven cents are mortgages described in the *sous seing privé* act; the balance being the amount of four judicial mortgages set forth in the parish judge's certificate annexed to the sale.

From the private act of the 7th of March, 1831, the purchasers appear to have paid, in cash, twenty-five thousand five hundred and seventy-seven dollars, and to have given their notes for twenty-seven thousand nine hundred and seventy-one dollars and fifteen cents, leaving the balance to be paid by the extinguishment of the mortgages therein mentioned, and amounting to a sum about equal to said balance. The record furnishes no proof that any of these notes have been paid; not being negotiable, they are liable to all the equities which the vendees may be entitled to. If any of them have been paid, it was incumbent on defendant to show such payments. A close examination of the voluminous documentary evidence adduced, has not enabled us

to find that, at the institution of this suit, the purchasers had paid more than seventeen thousand nine hundred and sixty-six dollars and seventy-seven cents, towards the extinguishment of the mortgages set forth in the private act; that sum being added to the cash payment above mentioned makes an amount of forty-three thousand four hundred and thirty-three dollars and ninety-seven cents, while they should then have paid, under their contract, the sum of seventy-nine thousand four hundred and seventy-five dollars, all the instalments having matured, except that of 1836. The vendees, therefore, at the inception of this suit, stood largely indebted on their contract, even after allowing the ten per cent. interest on such advances as they had made on the two or three first instalments. Having thus failed to comply with their own obligations, the purchasers cannot, with any good grace, complain of a failure on the part of their vendors, when that failure was a consequence of theirs. It had been covenanted that the mortgages described in the *sous seing privé* act were to be paid out of that part of the price for which no notes had been given; the vendees, therefore, had in their hands abundant means to extinguish the remaining one thousand six hundred and ninety dollars and eighty-seven cents of these mortgages, and pay all their outstanding notes, if yet unpaid at that time.

When a vendee has not complied with his agreement, he cannot complain, and set up as a matter of defence to his note, that the vendor has not extinguished a certain mortgage, when this failure was the consequence of his not complying with his stipulation to pay in a certain manner.

As to the thirty thousand eight hundred and sixty dollars and forty-nine cents, being the amount of the four judicial mortgages, which defendant contends must also be removed before he can be required to pay the notes sued on, we confess that the notarial sale, taken in connection with the private act, does by no means exhibit, in a very clear light, the real understanding and intentions of the parties. From the best consideration we have been able to give them, we have come to the conclusion that these four judgments were not contemplated in the stipulation providing for the removal of all mortgages previous to the final payment.

In the notarial act we find the following clause: " By a certificate of the said parish judge, dated the 11th of this present month, it appears that the premises and slaves pre-

sently sold, are affected with a number of mortgages, which are to be paid with and out of the consideration of the present sale, except the four judicial mortgages in favor of Robert Thompson, Girod & Brothers, the widow 'and heirs of Ives Le Blanc, and James and Jean Candelle, amounting to thirty thousand eight hundred and sixty dollars and forty-nine cents, the validity of which judicial mortgages the parties do in no wise acknowledge. The said amount of judicial mortgages is not to be retained by the purchasers on the consideration of this sale, they being, as to said judicial mortgages, satisfied with the warranty here above stipulated, holding the vendors responsible, personally, for all the consequences of the said judicial mortgages."

EASTERN DIST.
*January,* 1840.

BARRETT
*vs.*
WALKER.

It is evident to us, that the *sous seing privé* act was intended to carry into effect this clause of the authentic act. It was to regulate the times and modes of payment, and to describe the particular mortgages to be extinguished with and out of the price; besides these, there are many other legal and conventional mortgages mentioned in the parish judge's certificate, for the removal of which it was necessary to provide before the final payment of the purchase money. From the above recited clause in the notarial act, it appears that the parties, not acknowledging the validity of these four judicial mortgages, intended to place them upon a distinct and different footing from the others. But the appellant's counsel insists, that the notarial act must be controlled by the general and posterior stipulation in the *sous seing privé* act providing for the removal of mortgages of every description. Without some more positive evidence of the real intent and understanding of the parties, we cannot give to this stipulation the meaning and effect contended for. We think that it contemplated the other mortgages stated in the judge's certificate, in contradistinction to those described in the private act, as to be paid out of the purchase money; we cannot give it the effect of destroying a positive and special agreement in relation to these mortgages, when nothing in it shows that the parties had changed their views as to their validity; or that the purchasers intended to withdraw their

EASTERN DIST. original consent to take the property subject to those liens,
January, 1840. pay the price, and resort to their personal action against the
CALDWELL ET AL. vendors for any sums they might afterwards have to pay on
*vs.*
ATCHAFALAYA account of them.
BANK.
　　　Upon the whole, if there are any doubts as to the true
meaning and effect of the *sous seing privé* act, in reference
to the notarial act, we think that an innocent and *bona fide*
holder should have the benefit of these doubts, whether they
proceed from the insufficiency of the evidence adduced, or
from any ambiguity in the wording of the instrument; for,
in both cases, it rested with the defendant to remove all
doubts or uncertainty on the subject.

　　　It is, therefore, ordered, adjudged and decreed, that the
judgment of the District Court be affirmed, with costs.

---

### CALDWELL ET AL. *vs.* ATCHAFALAYA BANK.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT, JUDGE
BUCHANAN PRESIDING.

Where bank stock is pledged to secure a debt to the bank, and is after-
　　wards transferred in payment at its full value, although made on the
　　eve of insolvency, it does not prejudice other creditors, and is not frau-
　　dulent as to their rights.

The revocatory action to set aside a contract by an insolvent debtor, to a
　　creditor, to secure a just debt, is only applicable to a particular class
　　of cases, in which the only ground of nullity is an *undue preference* given
　　to one of the creditors, and suit must be brought within a year from the
　　date of such contract.

But the revocatory action may be brought within a year, by a single credi-
　　tor, from the date of his judgment, against his debtor, or by a syndic
　　representing *all the* creditors within a year from his appointment, to set
　　aside *all contracts* of the insolvent debtor, *by which creditors are injured.*

Eastern Dist.
January, 1840.

Caldwell et al.
vs.
Atchafalaya
Bank.

This is a revocatory action. The plaintiff alleges that, on the 6th January, 1838, he obtained judgment against one Samuel Chapman, on his two promissory notes, for the sum of ten thousand eight hundred and seventeen dollars, with legal interest. That on the 13th July, 1838, execution was levied on one thousand shares of bank stock, belonging to said Chapman, in the Atchafalaya Rail Road and Banking Company, which the bank claimed in virtue of a transfer to the company, by Chapman, the 23d of August, 1837.

The plaintiff further shows, that, at the time of this transfer, he was a creditor of Chapman for the amount of the notes, on which he subsequently obtained judgment; that the stock thus transferred was worth thirty thousand dollars, and the transfer to the bank was made in fraud of his rights as a creditor, giving them an unjust preference over him, as Chapman was then in insolvent circumstances, which fact was well known to the bank at the time of said transfer.

The plaintiff finally shows that he has been unable to collect the amount of his judgment, in consequence of the illegal and fraudulent transfer of the said stock to the bank, wherefore he prays that it be annulled ; and that the said one thousand shares of stock be surrendered up to satisfy his judgment against Chapman, or in default thereof, that the defendants be condemned to pay the amount.

In a supplemental petition the plaintiff alleges that one thousand one hundred and eighty-five shares of stock, instead of one thousand, was transferred by the said Samuel Chapman, to the defendants, to secure and give them an unjust preference over other creditors, which stock was sold at a great loss and depreciated value. He also alleges that Chapman sold and transferred five hundred and twenty shares of the capital stock of the Exchange and Banking Company, at the same time, to the defendants, all of which is alleged to be in fraud of creditors. He prays judgment that said sales be annulled, &c.

The defendants pleaded a general denial to all the material allegations in both petitions, and averred that Chapman was indebted to them in the sum of sixty-two thousand six

EASTERN DIST.
January, 1840.

CALDWELL ET AL.
vs.
ATCHAFALAYA
BANK.

hundred and eighty dollars, and that at the time of contracting part of said debt, and while perfectly solvent, he pledged the stock mentioned in the petition to secure part of the same according to law ; and that he subsequently transferred said stock in payment of the debt for which it was pledged, and at a fair price; that they are *bona fide* holders and owners of said stock for a valuable consideration, without prejudice to the rights of any other creditor of Chapman. They further plead the prescription of one year.

The original petition was filed the 15th August, 1838. On the 4th March, 1839, the syndic of the creditors of Samuel Chapman filed his petition of intervention, alleging that said transfers of stock were fraudulent and illegal, and gave an unjust preference to the defendants over the other creditors ; and prayed that said sales and transfers be annulled ; that the stocks thus transferred be declared to belong to the mass of creditors.   The defendants, in answer, aver that Chapman had borrowed money on said stocks at a time when he was perfectly solvent, and possessed of much property ; but afterwards, to prevent sacrifice, sold and transferred said stocks to them at a price greater than the highest market price.

Under these pleadings and issues, the cause was tried before the court and a jury.

The evidence showed that, on the 31st January, 1837, Samuel Chapman, by private act, executed before the cashier, pledged one thousand shares of the capital stock of the Atchafalaya Bank, to said bank, on which thirty dollars per share was paid, as collateral security, and to secure the payment of his three promissory notes, discounted in bank, amounting to twenty-eight thousand four hundred dollars.

On the 22d August, 1837, said Chapman, for value received, transferred all his right, title and interest in eleven hundred and eighty-five shares of the capital stock of the Atchafalaya Bank, to said bank, on which thirty dollars per share are stated to have been paid.   This transfer is made by act under private signature.

On the 11th September, 1838, Chapman filed his petition

Eastern Dist.
January, 1840.

CALDWELL ET AL.
vs.
ATCHAFALAYA
BANK.

and schedule in court, and made a surrender to his creditors of all his property, and also prayed for the benefit of the insolvent law.

The evidence showed great embarrassment in Chapman's affairs, during the latter part of the year 1837. His notes were under protest, and he unable to meet his engagements. Upon the pleadings, and the evidence produced, the cause was submitted to the jury, under the following charge from the judge presiding, which was excepted to by the defendants' counsel :

" 1. The question to be decided by the jury concerns the transfer of one thousand shares of stock, by Samuel Chapman, to the defendants, on the 23d August, 1837. The jury are to find, from the evidence before them, whether that transfer was made by Chapman, and accepted by the Atchafalaya Bank, with the intent of depriving the creditors of Chapman of their eventual rights, upon the property of Chapman.

" 2. The claims or rights of the Atchafalaya Bank, under the pledges which it held previous to the transfer, are not at issue in this suit. The defendant has pleaded these pledges as showing that it gave a valid consideration for the transfer ; but this plea does not alter the character of this action, which is a suit to annul the transfer, not to annul the pledges. It only modifies the relation of the parties, by alleging that, if any ground of nullity of the contract of transfer exist, it is not the want of a consideration.

" 3. If the jury considers it proved that the transfer of stock made by Chapman to the bank was made for the purpose of securing a debt due by the former to the latter, and of giving to the latter a preference over the other creditors of the former, that such transfer gave an advantage to the bank over the other creditors of Chapman, and that, at the time of the transfer, the bank knew that Chapman was in insolvent circumstances, it will be the duty of the jury to give a verdict annulling said transfer.

" 4. By being in insolvent circumstances, is meant that the amount of a person's property and credits are not equal, at a fair appraisement, to the debts due by the party. It

EASTERN DIST. is for the defendants to show that the amount of Chapman's
January, 1840. property and credits was equal to the amount of his debts,
CALDWELL ET AL. after the latter had been shown by the plaintiff.
vs.
ATCHAFALAYA           "5. The effect of annulling the transfer would be to
BANK. restore the parties to the same situation in which they were
before the transfer was made. *Louisiana Code, art.* 1977.

"Therefore, in my opinion, the annulling the transfer
would revive the pledge. But this is not a subject for the
action of the jury in this verdict. It concerns the effect and
operation of that verdict, and the judgment to be rendered
upon it.

"6. The only prescription pleaded by defendants is the
prescription of one year.

"The provisions of the act of 1817, concerning oppositions
of creditors to the proceedings of their debtor, under that act,
on the ground of fraud, as presumed in alienations made
within three months previous to the failure, are foreign to
the present suit.

"7. The prescription of one year is to be counted in this
case, from the date of the transfer, if the jury should be of
opinion that the only object was to secure a just debt.

"8. The present suit being instituted previous to a cession
of property, by Chapman, was well instituted by a single
creditor."

The jury returned "a verdict for the plaintiff." After an
unsuccessful attempt to obtain a new trial, from judgment
confirming the verdict and annulling the sale and transfer of
the eleven hundred and eighty-five shares of stock, the
defendants appealed.

*Elmore* and *King,* for the plaintiff.

1. This action was brought by the plaintiff to annul the
transfer of a quantity of bank stock, made by Samuel Chap-
man, an insolvent, to the Atchafalaya Bank, upon the ground
that the transfer was a fraud upon the rights of the plaintiff,
a creditor of Chapman.

2. The evidence shows, conclusively, that the transfers
annulled by the judgment of the court below, gave the bank

an unjust preference over the other creditors of Chapman, and that at the dates of the respective transfers, he was in insolvent circumstances, to the knowledge of the bank. Such a sale, so far as as it affects the rights of the plaintiff, is fraudulent, and should be annulled. *Louisiana Code*, 1965, 1978-79-80.

Eastern Dist.
*January*, 1840.

CALDWELL ET AL.
*vs.*
ATCHAFALAYA
BANK.

3. The verdict of the jury was in favor of the plaintiff. All questions of fraud are questions of fact. Upon questions of fact, the verdict of a jury is entitled to great weight, and will not be reversed by the Supreme Court, unless manifestly erroneous. *Benjamin & Slidell's Digest, page 33, letter O, section 2, for references.*

4. The intervenor has no right to interfere in this action. *Louisiana Code,* 1965. The syndic is clearly barred by prescription. See case of *Petit* vs. *His Creditors,* 3 *Louisiana Reports,* 26.

5. The evidence shows, conclusively, that the pledge, as well as the transfer, was fraudulent, unless it is saved by the plea of prescription. This leads us to an examination of the prescription pleaded. We contend that prescription does not cure the pledge ; that it could not run in favor of the pledge after the transfer was made. The prescription pleaded, is that of twelve months, and is subject to the same rules, and liable to the same interruptions, which govern all prescriptions. If by the act of the defendants, they have destroyed the pledge by the transfer, they cannot set up prescription as to it. *Contra non valentem agere, non currit prescriptio.* See, also, the case of *Morgan* vs. *Robinson,* 12 *Martin,* 76. *Ayraud* vs. *Bubin's Heirs,* 7 *Martin, N. S.,* 481. 3 *Louisiana Reports,* 221. 7 *Idem.,* 581.

6. We insist, on the part of the plaintiff, that it was not within his power, at any time within twelve months, to have brought an action to annul the pledge. It existed not quite seven months before it was extinguished or cancelled by the transfer. It was impossible to bring an action to annul the pledge after the transfer was made, as by this act it was already annulled ; therefore, the authorities cited above are applicable to this case.

EASTERN DIST.
*January*, 1840.
─────────
CALDWELL ET AL.
*vs.*
ATCHAFALAYA
BANK.

7. The only action that could have been brought, was to cancel the transfer, and our action was in time for this; being instituted within twelve months from its date.

*I. W. Smith* and *Cohen*, for the intervenor.

1. The law gives the right to the revocatory action to *one* creditor only, when there is no cession of property. After the cession, the right to this action is given to the syndic only. *Louisiana Code*, 1965. His right to represent all the creditors is inconsistent with the right of one of them to act in his own name, and separately from the syndic. The right of the syndic to represent *all* cannot be restrained to a *part* of the creditors. The verdict and judgment should have been in his favor.

2. The property in the stocks remained in Chapman until his cession. The acceptance of it by the judge, vested all his property in his creditors. *Act of* 1826, *section* 2. 2 *Moreau's Digest, page* 437. The syndic is their only representative. Caldwell never had a privilege on these stocks. Long previous to his seizure, Chapman had become bankrupt. *Code of Practice*, 722. And no privilege exists without a law creating it. *Louisiana Code*, 3152.

3. The intervenor and plaintiff concur in submitting to this court, for its final decision, the question whether the verdict and judgment appealed from should have been rendered in favor of the intervenor or the plaintiff. The bank cannot have the case remanded to settle this question. (1.) The bank has an interest in the change now prayed for by the syndic. The bank is a large creditor, and is entitled to share in the dividend arising from this fund. (2.) The judgment rendered in the District Court will be *res judicata* as to the intervenor. He was present at the trial, adduced evidence, and the verdict most effectually passed on his rights, by giving the stocks or money which he asked to the plaintiff. (3.) The evidence to support the verdict and judgment is amply sufficient, without the testimony of the witnesses objected to by the bank as creditors.

*Hoffman,* for the defendants. Before the suit of plaintiff was at issue with the defendant, Chapman, the common debtor, made a surrender, and obtained a stay of proceedings against his person and property ; consequently the plaintiff was stopped. The syndic *represented all the creditors,* which supersedes and suspends the plaintiff's action. This has been settled to be the law, when the syndic is appointed before suit is brought ; and the same reason applies, if afterwards, but before judgment. *3 Louisiana Reports,* 461.

2. The charge of the judge is erroneous. The defendants relied on their rights as pledgees, and pleaded the same. But the judge *a quo,* and the counsel opposed to us, seem to think the transfer must be illegal, if Chapman was insolvent at the time. They, however, did not so consider it in their petition, and the law does not so consider it. The transfer was made in the usual course of business, because the pledge of the stock was taken when the money was loaned ; and Chapman could not have sold it to a third party and paid the money over to the defendants. Then why not be permitted to sell it to them, when he obtained the highest price ?

3. If this were a *datien en paiement,* it is the same, because it is not made to the prejudice of other creditors. The debts were due, and the property pledged to pay them Chapman had lost all control over, until they were paid. If given in *payment at full price,* how could it be to the prejudice of creditors ? On the contrary, it was to their advantage. It is amply proved, and not contested, that the defendants took the stock at a much higher price, and above what others would have given.

4. But it is attempted to attack and set aside the pledge and transfer on technical and other grounds. The pleadings, however, present but one ground, that of nullity, because of the illegal preference given to the defendants, over other creditors. This plea cannot avail. The doors are closed against all inquiry after one year, from the date of the contract. All the contracts of pledge were made more than a year before bringing suit to avoid them. *Louisiana Code,*

EASTERN DIST.
January, 1840.

CALDWELL ET AL.
vs.
ATCHAFALAYA
BANK.

1973, 1978, 1982, 3131. 3 *Louisiana Reports*, 26. 12 *Idem.*, 262. 1 *Martin, N. S.*, 417. 2 *Idem.*, 22.

5. If it be said that not the contract of pledge, but the transfer alone is attacked, we answer, that if it is not sued for, it is contested and litigated, and in fact the whole forms but one contract. It cannot be said that one is to the prejudice of creditors without looking to the other. The transfer was not to their prejudice, because it was made in pursuance of a previous pledge.

6. The jury were told they must not inquire into the questions raised as to the pledge; that if the transfer was illegal, then the pledge revived. If the validity and effect of the pledges could not be gone into; the only judgment that could have been given, was, that things be placed in the situation they were before the transfer. The jury were misled by the judge's charge, and the verdict must, therefore, be set aside.

7. We conclude with two positions, in each of which we feel confident of success :

1st. That if the consideration for the transfer was the full value of the stocks at the time, and the same had been under a pledge from a period more than a year previous to the bringing of this suit, further inquiry is closed by prescription.

2d. That if the pledges were valid at the time of the transfer, and gave to defendants all the rights of pledgees, that then a transfer of the stock to defendants, at its full value, was not an act or contract to the prejudice of the other creditors, and cannot be set aside.

*Grymes*, for the plaintiff, Caldwell, submitted the following argument in writing :

The material facts in this case, as to be found in the record, are :

1st. That Chapman pledged the stock to the bank on the 31st January, 1837.

2d. That this pledge was annulled on the 22d of August, 1837, and a complete sale and transfer of the stock made to the bank on that day.

3d. That Chapman was insolvent when the pledge was made, as well as at the time of the transfer.

4th. That they were both made to secure or pay a pre-existing debt, and consequently were fraudulent and void as against creditors.

EASTERN DIST.
January, 1840.

CALDWELL ET AL.
vs.
ATCHAFALAYA
BANK.

5th. The plaintiff's action to annul the transfer was commenced on the 15th of August, 1838.

And the question arises:

1st. Whether the setting aside the sale or transfer of the stock for fraud, revives the pledge.

2d. If it does revive it, whether it does revive it, subject to the objection of the fraud which existed at the time it was annulled or merged in the transfer, or purged of the fraud by the prescription of one year, agreeably to the article 1982, of the Louisiana Code.

It is proposed only to trouble the court at this time with some observations on the second and last of these propositions.

I. And first, it is submitted whether prescription can be said to run in favor of a thing not in existence? It is clear from the testimony in the record that the pledge was annulled in August, 1837; that both parties, pledgor and pledgee, considered it so; and that between them it had no existence after that day. From this it would appear to result that no action would lie. It would have been a sufficient answer to such a suit to have shown that no such thing was in existence, and that no party to it claimed any thing under it. The plaintiff in such a suit could have no means of proving that any such act ever existed, for although the law invests acts of pledge passed before the cashiers of banks with some of the attributes of public acts, yet it is a fact, that they remain in the custody of the bank, and their existence may never even be known or suspected until the expiration of a year, and thus the greatest frauds may be consummated without any knowledge on the part of those who are to be their victims, until they are sanctioned by prescription of a year. The article 1982, of the Louisiana Code, creates the prescription in general terms without giving any particular rule by which it is to be governed or applied. It is pre-

EASTERN DIST.
January, 1840.

CALDWELL ET AL.
vs.
ATCHAFALAYA
BANK.

sumed, then, that it is to be taken, subject to all the general principles and rules which govern in other cases of prescription.

The first principle to be applied to this case, then, is that the prescription in such a case cannot run against third persons, as to acts which they have an interest to annul, and to which they were not parties, but from the time at which they became known to them. *Vazeille Traité de Prescrip., p. 227, No. 334.*

Now, when did the existence of this pledge become known to the plaintiff? It is clear from the record that the first intimation was when the defendant produced it in his defence to the action brought by the plaintiff to annul the sale or transfer; and there is no circumstance to contradict or cast even a suspicion upon this position. The pledge had been passed before the cashier of the bank, which is, to all intents and purposes, the bank itself. A party to the fraud complained of, remained up to the time it was cancelled or annulled in the sole and exclusive custody and possession of the knowledge of its existence; confined to the parties to the act who were both participators in the contemplated fraud. And the inference of a total want of knowledge, as it regards all but the parties, is strengthened and confirmed by every circumstance in the case. The case is, then, a fair one for the application of this principle. The article 1989, of the Code, does not conflict with this position; as appears clearly from the case of Petit *vs.* His Creditors, 3 *Louisiana Reports*, 26, where this court decided that to give effect to both articles of the Code, the article 1989 must be taken as relating to another description of cases, viz: those where there was some other mark of fraud besides a mere preference.

II. The next principle applicable to this case is, that an undivided thing cannot be possessed by two distinct titles, different in their nature and claim, by prescription under both. *Vazeille Traité de Prescrip.; p. 47, No. 121.*

The possession by pledge was under a precarious title. That by the sale or transfer was translative of the property, and totally different in their nature. The possession under

the two titles cannot then be united so as to acquire the complete indemnity to the fraud with which they were both tainted by the prescription under the article 1982, of the Code.

Although the law gives an indemnity by lapse of time for acts of this nature, yet it is certain that the whole term must expire before the indemnity is acquired; and on the other hand, it is equally certain that the parties injured by those acts have to the expiration of the last hour of the time, to annul them. It appears that the pledge came into existence on the 31st January, 1837. It is equally clear that it was annihilated on the 22d of August, 1837; the testimony is conclusive as to this, that it was cancelled and destroyed, and the whole matter settled by the transfer, with the consent of all the parties to it.

When this took place, there was five months of the time yet to run; the thing to be annulled at the suit of the creditor aggrieved, had no longer any existence; it was gone or merged in another contract, differing from it in its very nature and essential qualities and effects; all its effects upon the immediate parties to it were lost and destroyed, and by consequence its effects upon third persons; and the possession under the new title took its date from that time; and putting aside the want of all knowledge on the part of the plaintiff of the existence of the first contract, any action to annul that which the parties themselves had annulled, was useless, and would have resulted in nothing. Yet at the time this contract was extinguished, the party aggrieved by it had five months of the time allowed by law to attack it; how has he lost this time? It is presumed that he could only lose it by the continual operation of this act upon the thing or subject matter to which a destination was intended to be given. This is the foundation of all prescription, and this is the fair interpretation of the article of the Code creating it; it did not so continue to operate upon the thing, or govern its destination. The thing itself was translated by the second act; received a different destination; was held and possessed by another title; and during the remainder of

EASTERN DIST.
January, 1840.

CALDWELL ET AL.
vs.
ATCHAFALAYA
BANK.

the time allowed to the creditor to attack the transaction, the only visible contract; the only one in existence; the only one to be annulled, was the contract of sale. He does this within the time prescribed by law, and upon his proving clearly the fraud, and its consequent nullity. It is pretended that the first act, founded on the same consideration, tainted with the same fraud, is *revived*, and is now in full force by lapse of time, inattackable for the fraud by prescription.

Upon what principle is it to be sanctioned, that a party shall, by his own act, by fraud and collusion with another, extinguish an act in itself fraudulent, supply its place by another equally fraudulent, and when he fails to sustain his fraud and collusion on the last, revive the first, and protect it by lapse of time, when the party defrauded, had, at the extinguishment of the first act, nearly one-half of the time allowed by law to attack it? This would be allowing to the party guilty of fraud the full benefit of the term running in favor of a thing which was a dead letter, with no life or existence, and denying to the party defrauded the full benefit of a large portion of the period of the time allowed him by law to redress his grievance. We think the only just conclusion that the circumstances of this case will warrant, is that, if the pledge is revived at all, it is revived, subject to all the objections that might have been made to it at the time it became extinct.

This conclusion is in accordance with principles laid down by this court in the case of *Morgan* vs. *Robinson*, 12 *Martin*, 76, and in 11 *Louisiana Reports*, 532. 1 *Martin*, *N. S.*, 458; 4 *Idem*, 500; 7 *Idem*, 481.

The article 3126, of the Louisiana Code, declares that " the acts of pledge in favor of the banks of this state *shall be considered* as forming authentic proof, if," &c., &c. The general provision of this article of the Code does not constitute the cashiers of the banks officers, with authority to pass acts of pledge in all cases. Nor does it make all acts of pledge that may be passed by them *public* and authentic acts. The sense of this article must be governed and controlled by the charter of the bank itself, and only such acts

EASTERN DIST.
*January,* 1840.

CALDWELL ET AL.
*vs.*
ATCHAFALAYA
BANK.

can be embraced by it as, by the charter, the bank was empowered to exact, and under the circumstances contemplated by the charter.

The 19th section of the charter of the Atchafalaya Bank is the only one which speaks of the pledge, and that only incidentally, and it embraces only the case of loans made on a pledge of the stock of the bank.

In the present case, it does not appear that there was any loan made by the bank on the pledge of this stock, but that the debt had been previously contracted to the bank, and the pledge made to secure it. Now, if the power of cashiers to pass acts is not to be confined to cases clearly contemplated by the charter, then the material interests of individuals may be compromited by acts passed before one of the contracting parties, of which he alone has the custody, not spread upon any public record, nor any obligation imposed to make them public, or even to exhibit them, or acknowledge their existence on inquiry, and all means of notice denied, contrary to the spirit of our whole legislation on the subject, which requires the recording in a public office, and at a time not suspicious. This defect, if it be one, is not cured by prescription, but goes to the act itself.

*Bullard, J.,* delivered the opinion of the court.

This is a revocatory action, by which the plaintiff, one of the creditors of Chapman, an insolvent debtor, seeks to annul a transfer of stock made to the defendants, in fraud of his rights. The only ground of fraud alleged is, that the insolvent thereby gave an unjust preference to the bank, also his creditor, and having a full knowledge of his insolvency. After the surrender of Chapman, the syndic of his creditors intervened, and joining the plaintiff in his demand of nullity, claims that the stock should be restored to the mass of the insolvent's property.

This *datien en paiement* to the bank was made, we do not doubt, under circumstances which would render it null, as to other creditors, on the ground of an unjust preference, had it not been for a previous contract of pledge between the

EASTERN DIST. parties, by which the stock in question was specially affected
*January*, 1840. to secure the payment of a large debt due to the bank.   If

CALDWELL ET AL. that contract was valid, then the preference complained of
*vs.* already existed, and the only remaining inquiry would be,
ATCHAFALAYA
BANK. whether the subsequent sale of the stock was for an inade-

Where bank quate price, and to the injury of the complaining creditors?
stock is pledged
to secure a debt The contract of pledge took place more than one year pre-
to the bank, and viously to the institution of this suit; and there is a plea of
is afterwards
transferred, in prescription.
payment, at its
full value; al- We are quite satisfied that the sale of the stock to the
though made on bank was but a consummation of the contract of pledge;
the eve of insol-
vency, it does and that, if the sale itself were declared void, the pledge,
not prejudice
other creditors, together with the preference which it confers, would revive;
and is not frau- because the parties are to be placed in the same condition
dulent as to their
rights. they were in before the transaction complained of; and we
concur with the counsel for the appellant in the proposition,
that, if the pledge was valid at the time of the transfer, and
the stock was transferred at its full value, then the contract
did not prejudice other creditors, and consequently cannot
be set aside.

This brings us to the inquiry whether it be now too late
to question the validity of the contract of pledge, which had
existed more than a year before the institution of this suit?

Article 1982 declares that no contract between a debtor
and one of his creditors, for the purpose of securing a just
debt, shall be set aside by this action, although the debtor
The revoca- was insolvent to the knowledge of the creditor, and although
tory action, to the other creditors be injured by such contract, if such con-
set aside a con-
tract by an in- tract was made more than one year before the suit brought
solvent debtor to
a creditor, to se- to avoid it, and if it contain no other cause of nullity than
cure a just debt, the preference given to one creditor over another.
is only applica-
ble to a particu- To this it has been answered, that, by a subsequent
lar class of cases, article, to wit, 1989, the action, it is true, is limited to one
in which the
only ground of year; but if brought by a single creditor, to run from the
nullity, is an *un-* date of judgment, against the debtor; and if, by a syndic,
*due preference*
given to one of or other representative of the creditors collectively, from the
the creditors, day of their appointment.   It has been argued that this latter
and suit must be
brought within a article is inconsistent with the one first cited, and must
year from the
date of such control it.
contract.

The court is bound, if possible, to give some effect to both articles; and they are easily reconciled by considering article 1982, as applicable to a particular class of cases, in which the only alleged ground of nullity is an undue preference given to one of the creditors of an insolvent; and the other article, as applicable to all other contracts, by which creditors are injured. Such is the view which this court took of these provisions of the Code in the case of Petit *vs.* His Creditors, 3 *Louisiana Reports*, 26.

With this view of the case, and under the agreement made by counsel in this court, we do not think it important to examine several questions which arose on the trial below, but considering that the stock is shown to have been sold for *its full value at the time, and. to satisfy a debt privileged to be paid out of it by a contract no longer liable to be attacked by other creditors of the insolvent, either individually or collectively;* and, consequently, that the complaining creditors have not been injured by the sale of the stock to the bank, we think ourselves authorized to declare that the plaintiffs are not entitled to the remedy they seek.

The judgment of the District Court is, therefore, reversed; the verdict set aside, and judgment is here given for the defendants, with costs in both courts.

EASTERN DIST.
*January*, 1840.

ANDREWS &
HOLMES
*vs.*
CHANEY.

But the revocatory action may be brought within a year, by a single creditor. from the date of his judgment against his debtor, or by a syndic, representing *all the creditors,* within a year from his appointment, to set aside *all contracts* of the insolvent debtor *by which creditors are injured.*

ANDREWS & HOLMES *vs.* CHANEY, (TWO CASES,)

In which the appeal was dismissed, because the sum in controversy was less than three hundred dollars.

PAULDING *vs.* BARKER.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT, JUDGE BUCHANAN PRESIDING.

There was no ground on which to expect relief on an appeal, and the judgment was affirmed with ten per cent. damages.

This is a suit against the defendant as maker of a promissory note. He obtained an injunction on the ground of payments made, and propounded interrogatories to the plaintiff. The latter answered, that seventy dollars had been overpaid on a previous instalment by the defendant. The district judge perpetuated the injunction as to this sum, and dissolved it for the remainder of the plaintiff's claim. The defendant appealed.

*Larue* and *Preston*, for the plaintiff.

*Barker*, in *propriâ personâ*.

*Bullard, J.*, delivered the opinion of the court.

The defendant is appellant from a judgment dissolving his injunction as to a part of the plaintiff's demand, and rendering it perpetual as to a small portion. His only witness was his adversary, whose disclosures, on oath, guided the court in its decision. No attempt was made to show that the appellant was entitled to a larger credit than had been allowed, and we do not perceive on what ground the appellant could have expected any relief from this court.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs, and ten per cent. damages.

EASTERN DIST.
January, 1840.

ROBINSON & CO. *vs.* ARMSTRONG.

APPEAL FROM THE PARISH COURT, FOR THE PARISH AND CITY OF
NEW-ORLEANS.

ROBINSON & CO.
*vs.*
ARMSTRONG.

The appeal taken for delay evidently, and judgment affirmed with ten per
cent. damages.

This suit is instituted against the maker of a promissory note, under protest. The defendant admits his signature to the note sued on, but denies that he is liable, or that the plaintiff is the true owner of it; but that it belongs to one P. M. Montgomery, who, it is averred, has brought suit in the District Court, and obtained an order of seizure and sale against a slave in defendant's possession, under mortgage for the payment of this note. He prays to be dismissed with his costs allowed.

. It was admitted suit had been brought by P. M. Montgomery as averred, but that it had been discontinued. The plaintiff proved ownership of the note, both before and since its maturity. Judgment was rendered against the defendant, and he appealed.

*Harrison*, for plaintiff.

*Clarke*, contra.

*Morphy, J.*, delivered the opinion of the court.

This suit was brought on a promissory note duly protested for non-payment; no serious defence being made, judgment was given for the plaintiff in the court below, and the defendant has taken this appeal. That it is intended for delay only is evident; the damages prayed for by the appellee must, therefore, be allowed him.

It is ordered, adjudged and decreed, that the judgment of the Parish Court be affirmed, with ten per cent. damages on the amount of the note, and costs in both courts.

EASTERN DIST.
*January*, 1840.

DIGGS
*vs.*
M'HENRY.

DIGGS *vs.* M'HENRY.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT, JUDGE BUCHANAN PRESIDING.

Appeal evidently taken for delay, and judgment affirmed with ten per cent. damages.

This is an action against the defendant as acceptor of a draft. Several matters were set up in the answer, by way of defence, but no attempt was made to prove them on the trial. Judgment was rendered against the defendant for the sum claimed, and he appealed.

*Elmore* and *King*, for the plaintiff.

*M'Millen*, contra.

*Morphy, J.*, delivered the opinion of the court.

The defendant being sued on a draft accepted by him, set up in defence divers matters which, upon the trial, he made no attempt to prove; from the judgment rendered against him below, he now prosecutes this appeal evidently for the purpose of delay. The appellee is entitled to the damages he prays for.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with ten per cent. damages on the amount of the draft, and costs in both courts.

ALLAIN & TREMOULET *vs.* LAZARUS.

APPEAL FROM THE COURT OF THE EIGHTH JUDICIAL DISTRICT, FOR THE PARISH OF ST. TAMMANY, THE JUDGE THEREOF PRESIDING.

The general rule is well settled, that, when a promissory note is made payable at a particular place, a recovery cannot be had on it, without proof of a demand at the place of payment.

There are exceptions to the general rule, and by the commercial law it is not necessary for the payee to prove a demand of the acceptor of a bill in order to recover of *him*, but it is necessary to show his default to charge the endorser.

So, where the payee is in possession of a note, the burden ought to devolve on the obligor or maker to show a readiness and offer to pay, or funds placed in the hands of the payee for that purpose, if he wishes to exonerate himself.

The testimony of one witness, corroborated by a mortgage, will be deemed sufficient to prove an open account over five hundred dollars, when it appears the mortgage was given to secure payment of all liabilities the plaintiffs were to come under for the defendant; and that the account embraced these objects.

This is an action against the maker for the amount of five promissory notes; and on an open account for interest, drafts and acceptances paid, and goods furnished, &c., according to an account annexed. The notes were drawn, payable to the order of the plaintiffs, at their counting-house, in New-Orleans; and a mortgage taken on several tracts of land and lots of ground to secure the payment, not only of the five notes sued on, but of all other promissory notes, drafts, bills of exchange, and all other engagements, liabilities and responsibilities, by the said firm of Allain & Tremoulet on an account of said Isaac Lazurus, &c.

The plaintiffs pray judgment for the amount of the demand, including the notes and account, and that the mortgaged property be seized and sold to satisfy said judgment.

The defendant pleaded a general denial. On the trial, the defendant's counsel objected to the notes being given in

HARVARD LAW SCHOOL LIBRARY.

ALLAIN & TRE-
MOULET
*vs.*
LAZARUS.

evidence, because there was no proof of a demand of payment of said notes at the place where they were made payable. The court admitted them, and the defendant took his bill of exceptions.

The account was proved by a single witness, who testified that he presented it, excepting the interest since added, and the defendant acknowledged the correctness of it and asked time for payment. The mortgage was also produced on the trial.

On this evidence, the jury returned a verdict for the plaintiffs. After an unsuccessful effort to obtain a new trial, from judgment confirming the verdict, the defendant appealed.

*Pichot,* for the plaintiffs, said the defendant had based his defence on two grounds :

1st. That the promissory notes ought not to have been received in evidence, because no evidence was offered that they had been presented for payment at the place indicated, and no protest was made of those notes.

2d. That plaintiffs did not make out their case on the other notes mentioned in the account current ; that there was but one witness without corroborating circumstances.

In support of the first ground, several decisions of the Supreme Court have been cited, which it is unnecessary to notice, not being applicable to the present case.

In this case the payment was to be made at the counting-house of plaintiffs, who were the holders and owners of the promissory notes mentioned in the account current sued on. Can it be pretended, with any shadow of reason, that plaintiffs were to put the notes in the hands of a notary, and require him to ask from themselves if they had any money of defendant in their hands to meet the payment? *Inutilia abhorret lex.* In none of the cases alluded to by defendant, did the notes belong to the banks or persons at the domicil of which they were made payable ; and it is evident that, if it had been the case, the Supreme Court would have decided in a different manner, and in conformity with our present request. If there could be any doubt upon the subject, one

EASTERN DIST.
*February,* 1840.

ALLAIN & TRE-
MOULET
*vs.*
LAZARUS.

of the authorities cited by defendant in support of his position, would decide it in our favor. See the case of Smith *vs.* Robinson, 2 *Louisiana Reports,* 405.

2. The verdict of the jury is conclusive on this point. There was abundant evidence to support the account. In addition to the testimony of one witness, the mortgage was produced in evidence, which was a strong corroborating circumstance in proof of the account. The jury were fully satisfied of its sufficiency.

*Hennen,* for the defendant and appellant.

1. The counsel for the defendant contends, that no action can be maintained on these five notes, until a demand has been made, at the counting-house of Allain & Tremoulet, in New-Orleans ; and, consequently, until proof is made of such demand, that the notes could not be given in evidence. There is not, in the petition, even an allegation that demand was made of payment of these notes, at the counting-house of Allain & Tremoulet. Therefore, on an order of seizure and sale, on the mortgage given' for securing their payment, the order would be set aside, although it was alleged that payment was duly and amicably demanded of the defendant. See the case of Moss *vs.* Byrnes. 12 *Louisiana Reports,* 615. A case equally strong, if not stronger, is found in the same volume, 472, Warren *vs.* Briscoe, when the notary stated in his protest that " he went to the Planters' Bank, Natchez, (where the note was made payable,) and was informed by the teller that there were no funds in bank for the payment of the above mentioned note."

But the court decided " that a demand of payment and presentment of the note, at the place indicated by the instrument itself, are indispensable to the recovery," and non-suited the plaintiff.

In the same volume, page 454, Warren *vs.* Allnutt, the court maintained the same principles, and say : " It has frequently been held by this court, that no recovery would be had in such cases, unless demand of payment be made at

EASTERN DIST.
February, 1840.
————————
ALLAIN & TRE-
MOULET
vs.
LAZARUS.

the place agreed on by the parties to the obligation." 3 *Martin, N. S.,* 423.    10 *Louisiana Reports,* 552.

2. In Morton *vs.* Pollard, 10 *Louisiana Reports,* 552, the court says: "The demand at the place (indicated in the note) was a condition precedent, which the plaintiff was bound to allege and prove.    But in this suit, there is neither allegation nor proof of the demand, at the counting-house of Allain & Tremoulet.    The same point is decided in Smith *vs.* Robinson, 2 *Louisiana Reports,* 405.    All which cases are in accordance with the first case decided by this tribunal. 3 *N. S.,* 423.    Mellon *vs.* Croghan.

3. The jurisprudence of the court having been thus repeatedly settled, it is presumed no deviation in it will now be made ; consequently, the court erred in admitting the evidence, and the cause should be remanded for a new trial.

4. The plaintiffs did not make out their case on the other notes mentioned in the account current sued on ; for none of these notes were produced.    They amount to six or seven thousand dollars, and there was but one witness, without corroborating circumstances, to establish them.    *Louisiana Code, art.* 2257.    The notes themselves, being the best evidence, should have been produced and filed.    Without them the plaintiffs had no right to judgment for their account.

*Bullard, J.,* delivered the opinion of the court.

This is an action upon sundry promissory notes, and upon an account for moneys advanced and goods sold, as well as for commission as factors.    It is alleged that the amount due is secured by special mortgage.    There was a verdict and judgment for the plaintiffs, for a large part of their demand, and the defendant appealed.

The appellant has relied upon two points.    1st. That the notes were improperly admitted in evidence without proof of a previous demand of payment, at the place at which they were made payable.

2d. That the testimony of a single witness, not corroborated by other circumstances, was insufficient to prove the

demand on the account, which greatly exceeded five hundred dollars.

EASTERN DIST.
February, 1840.

ALLAIN & TREMOULET
vs.
LAZARUS.

I. The five promissory notes sued on, secured by mortgage, were made payable at the counting-house of the present plaintiffs, who were the original payees. The general rule is well settled in this court, that, when a promissory note is made payable at a particular place, a recovery cannot be had upon it without proof of a demand at the place of payment. 3 *Martin, N. S.,* 423. 10 *Louisiana Reports,* 552.

But we are of opinion that the case now before us forms an exception to that rule. The commercial law, as understood by some of the courts of the United States, and perhaps in England, does not render it necessary for the payee to prove a demand of the acceptor, in order to recover of him, but it is necessary to show his default in order to recover of the endorser or the drawer. *Chitty on Bills,* 394. In the case before the court the maker of the note contracted the obligation to repair to the counting-house of the payees, and to make payment. They must be presumed always ready and willing to receive; and when it is shown that the payees are still in possession of the note, the burden ought to devolve on the obligor to show a readiness and offer to pay on funds placed in the hands of the payee, for that purpose, if he wishes to exonerate himself. Wallace *vs.* McConnell, 13 *Peters' Reports,* 136.

So, where the payee is in possession of a note, the burden ought to devolve on the obligor or maker to show a readiness and offer to pay, or funds placed in the hands of the payee for that purpose, if he wishes to exonerate himself.

II. Upon the second point, it appears that the case was left to the jury. A single witness deposed that he had presented the account to the defendant, except the interest since added; the defendant acknowledged the correctness of the account and asked time for payment. The account current shows, on the debit side, some goods sold, drafts accepted and paid, and notes taken up, together with commissions; and on the credit side, the proceeds of various shipments of cotton, &c., in the usual manner of accounts of a commission merchant. The balance of that account, for which the verdict was rendered, greatly exceeds the sum of five hundred dollars; and, consequently, a single witness, without

corroborating circumstances, would be insufficient. It is contended that the mortgage, which was given in evidence, constitutes such corroborating circumstances. The mortgage purports to secure, not only the payment of the five promissory notes already mentioned, but "all other promissory notes, drafts, bills of exchange, and all other engagements and liabilities and responsibilities of the said firm of Allain & Tremoulet, on account of said Lazarus." This contract certainly contemplates the same course of dealings between the parties, which is detailed in the account current, and thereby renders probable what the witness has testified to or corroborating his statement. The jury may well have considered it sufficient to authorize their verdict, and we do not think ourselves called on to disturb it.

It is, therefore, ordered and decreed, that the judgment of the District Court be affirmed, with costs.

DUNBAR vs. THOMAS.

APPEAL FROM THE COURT OF THE THIRD JUDICIAL DISTRICT, FOR THE PARISH OF WEST FELICIANA, JUDGE MORGAN, THEN JUDGE OF THE DISTRICT, PRESIDING.

Where an administrator sues in the District Court, and exhibits evidence of his appointment, this court cannot inquire, collaterally, into the propriety of such an appointment by the Court of Probates.

An administrator has the right to enforce payment of all debts due to the estate he administers, which are still in his hands, and the proceeds of which, when paid, are liable to the debts of the estate.

This is an injunction suit to stay an order of seizure and sale. The plaintiff purchased, in January, 1836, four slaves at the probate sale of the succession of Mary Bennett,

deceased, for the price of $3,800, payable in three equal annual instalments ; for which he gave his notes with mortgage on the slaves until complete payment. The defendant having been subsequently appointed administrator of said estate, in the place of one G. H. Patillo, who was first appointed, proceeded by the executory process against A. Dunbar, the maker on the second note, when he was stopped by this injunction.

The plaintiff alleges, that since the sale and the execution of his notes, there has been a partition of the assets and property of the estate of Mary Bennett, deceased, among her heirs ; that said notes belong to the heirs ; and that he has paid a part of the debt to one of them, who has given him further time for the balance ; and another part to the tutor of the other heirs, from whom he has received a like indulgence.

He further alleges, that the defendant has no right to receive this debt as administrator, and is consequently without authority to proceed against him on the mortgage, and to obtain an order of seizure and sale. The defendant denied that any partition was ever made, but that in 1835, the tutor of the minors Bennett, accepted the succession of their deceased mother, with benefit of inventory on their behalf, after being duly authorized ; that no partition could be made until a final settlement of the estate, and none of the heirs had any authority to receive any portion of said debt, &c. He prays that the injunction be dissolved with damages.

On the trial it appeared in evidence that, when the succession of Mary Bennett was opened, it was accepted by the heirs with benefit of inventory, and George H. Patillo, who married one of them, was appointed administrator, who rendered his account in October, 1836, and was discharged. In November following, the defendant, Thomas, was appointed, and took charge of the assets of said estate.

- In the meantime, in February, 1836, on the application of one of the heirs, a partition among all the heirs of the estate of Mrs. Bennett, had been made out by the probate judge, acting as notary public, and signed. This act of partition was

EASTERN DIST. never homologated, and the defendant was afterwards ap-
February, 1840. pointed to administer on the discharge of his predecessor, and
the notes in question were put in his hands for collection.
One or two of the heirs admitted they had promised indul-
gence to the maker of the notes, and some partial payments
were shown.

DUNBAR
vs.
THOMAS.

There was judgment, however, dissolving the injunction,
with ten per cent. damages. After a strenuous and unsuc-
cessful attempt to obtain a new trial, the plaintiff appealed.

*Turner*, for the plaintiff and appellant.

1st. The injunction which had been obtained by the
plaintiff against the defendant was legally and properly
granted, and ought to have been rendered perpetual.

2d. The defendant having expressly, in his answer, put at
issue the regularity and legality of the appointment as admi-
nistrator to the estate of Mary Bennett, the plaintiff had a
right to show that his appointment was a nullity, and for
that purpose to show that the Court of Probates was without
jurisdiction.

3d. It is fully shown that the estate of Mary Bennett had
been fully administered, and the administrator discharged;
and that the property of the estate had been partitioned, and
had passed into the possession of the heirs. From that time
the Court of Probates was without jurisdiction, and the subse-
quent appointment of Joseph B. Thomas was a nullity.

4th. A recovery by him of the debt owing by the plaintiff
for property purchased by him at the probate sale of the
estate of Mary Bennett, would not have been a bar to the
right of the heirs to recover the same debt.

5th. The court erred in rendering a judgment for damages
against the plaintiff, and against his security.

6th. It is not shown by the testimony that Thomas, as
administrator, had the legal right to collect the note for which
he took out the order of seizure and sale.

7th. Damages not allowed in case of doubt or where there
is a credit allowed. 11 *Louisiana Reports*, 483. 6 *Louisiana
Reports*, 310, 311 and 312.

Wherefore he prays that the judgment may be reversed, and judgment rendered in favor of the plaintiff, Dunbar, at least for so much as he paid to one of the heirs; and that the judgment for damages be reversed, and judgment given in favor of the plaintiff for the special damages proved against defendant, and general relief.

*Andrews* and *Thomas*, for the defendant, prayed the affirmance of the judgment dissolving the injunction, but that it be amended so as to allow twenty per cent. damages.

*Bullard, J.*, delivered the opinion of the court.

The appellee, as administrator of the estate of Mary Bennett, deceased, having sued out an order of seizure and sale upon a mortgage given to secure a debt due to the estate, was arrested by an injunction obtained by the debtor and present appellant, founded on the allegations that the estate had been partaken, and the debt in question allotted to several of the heirs; that he had paid one of them a part of the debt, and two hundred dollars to the tutor of another, both of whom had given him time, and did not authorize the order of seizure and sale. He denies the legal right of the plaintiff to sue out the order of seizure.

The answer avers, that the defendant in injunction, is administrator of the estate, and denies that any legal partition has been made. He alleges, that the estate was accepted under benefit of inventory, and that no partition could be made until the settlement of the administrator. He denies the right of the several heirs to receive any part of the debt due by the appellant until after the settlement of the succession.

The administrator having exhibited evidence of his appointment, the District Court could not inquire collaterally into the propriety of such an appointment by the Court of Probates. The only remaining inquiry, therefore, appears to us to be, whether the debt in question belonged to the estate and still formed a part of the assets upon which the plaintiff was to administer, or whether it had been withdrawn from the mass and partitioned among the heirs.

Where an administrator sues in the District Court, and exhibits evidence of his appointment, this court cannot inquire, collaterally, into the propriety of such an appointment by the Court of Probates.

EASTERN DIST.
*February,* 1840.

TOUTAIN
*vs.*
HIS CREDITORS.

An adminis-
trator has the
right to enforce
payment of all
debts due to the
estate he admi-
nisters, which
are still in his
hands, and the
proceeds of
which, when
paid, are liable
to the debts of
the estate.

The record shows that the appointment of the administrator was subsequent to the proceedings had in the Court of Probates, which are styled a partition, and he appears to be in possession of the evidence of the debt. Indeed, the partition amounts to little more than a calculation of the amount of the share which will be coming to each heir after all collections are made, and the payment of the debts. The notes due by Dunbar are not assigned and delivered to different heirs, but simply an agreement, sanctioned by an order of the court, that the heirs are to be paid in different proportions a part of their shares out of these notes. It is rather a disposition of the proceeds of the notes after they shall have been received, than an assignment of them. They, therefore, still belonged to the estate, liable to the payment in the first place of the debts, and the administrator had, in our opinion, a right to coerce their payment.

The judgment against the principal and surety on the injunction bond, appears to us such as the statute authorizes on the dissolution of an injunction.

It is, therefore, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.

---

TOUTAIN *vs.* HIS CREDITORS.

APPEAL FROM THE PARISH COURT FOR THE PARISH AND CITY OF
NEW-ORLEANS.

An affidavit which states that the insolvent has received, as depositary, certain property which he refuses to deliver up to the claimant, is insufficient to obtain an order of arrest. These circumstances are in no way calculated to induce the belief that the debtor is about to depart from the jurisdiction of the court, or secrete his person from his creditors.

The plaintiff filed his schedule and petition, making a surrender of his property to his creditors, and praying for the benefit of the insolvent laws.

Andre Marchesseau made affidavit that the insolvent was really indebted to him in the sum of five thousand five hundred dollars, and that he verily believes said debtor intends departing from the jurisdiction of the court, to secrete his person from his creditors ; and the reasons which induce him to this belief are, that the said Toutain has received as a depositary two boxes of ready made clothing of the value of two thousand five hundred dollars, and that he refuses to deliver back to this affiant said boxes, saying that he has sent them ; thereby intending, as he believes, to defraud this affiant and secrete his person from his. creditors. On this affidavit the debtor was arrested. His counsel took a rule to have the arrest set aside, which was made absolute, the order of arrest set aside, and Marchesseau appealed.

*Pepin,* for the appellant, contended that an unfaithful depositary cannot make a cession of his property and obtain the benefit of the insolvent laws. *Louisiana Code,* art. 2929, 2170. *Acts of* 1817, *sec.* 25 : *verbo, " Surrender."*

2. A depositor may, at any time, sue and obtain judgment against an unfaithful depositary. This is not the case of an ordinary failure ; so far from it, that, as regards the depositor, he must be considered as not having failed.

3. Admitting that this proceeding should come in, by way of opposition, it is in time, counting ten days from that on which the proceedings were filed in court. The law says ten days after the appointment of the syndic ; and can it be said that there is a syndic appointed, until he furnishes security according to law ? 2 *Moreau's Dig.* 429. Pandelly *vs.* His Creditors, 9 *Louisiana Reports,* 389.

4. The proceedings before the notary were only filed in court the day before the arrest was set aside, and it appears there is no syndic in this case.

*Bodin,* contra.

*Morphy, J.,* delivered the opinion of the court.

Andre Marchesseau, a creditor of this insolvent, appeals from a decree setting aside an order of court made a few days after the filing of the schedule, on appellant's affi-

EASTERN DIST. davit, made in pursuance of article 223, of the Code of Prac-
February, 1840. tice. This affidavit sets forth that the insolvent had received,
TOUTAIN as a depositary, two boxes of ready made clothing of the
vs. value of two thousand five hundred dollars, and that he
HIS CREDITORS.
refused to give them back to affiant, saying that he had
An affidavit
which states that already delivered them up. These circumstances were in
the insolvent has
received, as de- no way calculated to induce the belief that insolvent intended
positary, certain
property which to depart from the jurisdiction of the court, to secrete his
he refuses to de-
liver up to the person from his creditors. They only disclose the nature of
claimant, is in-
sufficient to ob- affiant's claim, and insolvent's refusal, to satisfy him. Such
tain an order of an oath, showing only indebtedness and refusal to pay, could
arrest. These
circumstances safely be made on every occasion, and cannot, therefore, be
are in no way
calculated to in- considered as a compliance with the above cited article.
duce the belief But passing by the insufficiency of the affidavit, we entirely
that the debtor
is about to de- concur with the judge below, that, even if the order of arrest
part from the
jurisdiction of had properly issued, the debtor was entitled to his discharge.
the court, or se-
crete his person The arrest authorized in cases of this kind has, for its object,
from his credit- to secure the presence of the insolvent within the jurisdiction
ors.
of the court, until the homologation of the proceedings on
his surrender. In this case no accusation of fraud appears
to have been made against Toutain by any of his creditors.
From the moment, therefore, that the proceedings were duly
homologated, the insolvent was entitled to be discharged
from imprisonment, under the twenty-seventh section of the
statute of 1817, on the subject of voluntary surrenders. But
the appellant contends that Toutain is not entitled to the
benefit of our insolvent laws, being, as he alleges, an unfaith-
ful depositary. This he should have established contradic-
torily with the insolvent on a charge of fraud, or in a direct
action, for the return of his alleged deposit; but from his
own showing he could have supported neither; for, in a
petition filed after the arrest, he alleges that these boxes had
been given to the insolvent as a pledge for the payment of a
sum of money, and prays that they be sequestered by the
sheriff, on the allegation that he had discharged the debt,
thus falsifying his own affidavit made the preceding day.

It is, therefore, ordered, adjudged and decreed, that the
judgment of the Parish Court be affirmed, with costs.

COLLINGS *vs.* HAMILTON.

APPEAL FROM THE COURT OF THE THIRD JUDICIAL DISTRICT, FOR THE PARISH OF WEST FELICIANA, JUDGE DAWSON, PARISH JUDGE, PRESIDING.

Where the plaintiff sues to recover the value of work and labor done for the defendant according to a bill of prices agreed on, for part of it, and for extra work, he will be allowed to produce testimony *of the value* of all the work performed.

In an action on a special agreement for the *price* of work, or services rendered, the party may introduce *proof of the* value also.

This is an action on an account for work and labor done, at the instance and request of the defendant, in the construction of a large gin-house, cotton press and castings for four gin stands, according to an account annexed, of one thousand six hundred and twenty dollars. .

The defendant pleaded a general denial, and required strict proof of every allegation, not admitted. He avers, the plaintiff undertook to complete a gin-house of large size, and with two gin stands and running gear; also, a cotton press; all to be completed in five months for the *price of one thousand five hundred and twenty-six dollars*, according to a written contract. That said gin was not completed in a workmanlike manner, and not finished for several months after the time agreed on. He sets up a boarding account of two hundred and fifty dollars, which he alleges the plaintiff is bound to pay, and various other items, which he avers should be deducted for deficiency in the work, thereby reducing the plaintiff's demand nine hundred and seventy-two dollars, and the amount of the boarding account.

On these pleadings and issues the cause was tried. There was a mass of testimony taken, and witnesses offered to prove the value and manner in which the work was done; as also to establish the defendant's averments in his answer. His counsel objected to any testimony being received, going to prove the *value* of the work and services of the plaintiff, because there was a particular agreement and bill of prices

entered into between them which must govern as to the prices. He also moved the court to instruct the jury, that if they believed, from the testimony, the plaintiff and defendant had agreed on the prices to be paid for the work and labor done, they must exclude all evidence of the *value*. 2. That the action being on a *quantum meruit* for work and labor done and materials furnished, and the defendant having averred that it was done under a contract between them for a specific price ; if the jury believed from the evidence there was such a contract entered into, they must find for the defendant ; and also that the plaintiff could not recover for extra work in the present form of action. The judge refused these instructions, and the defendant took his bill of exceptions.

The jury returned a verdict for the plaintiff in the sum of one thousand six hundred and twenty dollars ; and the court being of opinion it was in accordance with the law and evidence, rendered judgment thereon, from which defendant appealed.

*Turner*, for the plaintiff, urged the affirmance of the judgment.

*Lobdell*, for the defendant, insisted that the action on a *quantum meruit* could not be maintained when it was shown there was a specific contract, fixing the value and amount of the work done.

2. The court below erred in not charging the jury to exclude the evidence which went to prove *the value* of the work and labor done, as on a *quantum meruit* when a written contract was proved ; or to establish the value of the work, when the contract fixed the price.

*Morphy, J.*, delivered the opinion of the court.

The plaintiff seeks to recover one thousand six hundred and twenty dollars seventy-four cents, for work and labor done for defendant, in the erection of a large cotton-gin. An account is annexed to his petition, showing the details of the work and the prices for each item, which prices the plaintiff

avers defendant assumed and promised to pay. This claim is resisted on the ground, that plaintiff undertook to build a complete gin-house and put up a press for him for one thousand five hundred and twenty-six dollars twenty-four cents, on defendant furnishing all the necessary materials; that the work was so badly and unskillfully executed that defendant had to expend large sums of money to prop and sustain the roof, and remedy divers other defects; and moreover, that the work was delivered long after the time agreed on, by which delay defendant has suffered material injury.

This issue was placed before a jury, who gave their verdict for the plaintiff; after a fruitless attempt to set it aside, the defendant took this appeal.

On the trial, plaintiff's counsel called on defendant to produce a bill of the prices agreed on between them for the work to be performed, and at the same time offered witnesses to prove the value, not only of those items in his account, which were mentioned in the bill of prices, but also of several other charges for extra work. This was objected to by defendant's counsel, on the ground that the bill of prices being proved to be a contract, the plaintiff, on a *quantum meruit*, could not offer evidence of, or recover the value of the work. The court overruled this objection, and the defendant calls our attention to his bill of exceptions to that opinion. We think that the judge decided correctly. The bill of exceptions assumes that this action is entirely one on a *quantum meruit*; such is not the fact. The plaintiff can be considered as claiming on a *quantum meruit* only for the extra work, not mentioned in the bill of prices. As to all the other items of his account, he claims these prices which, he avers, the defendant assumed and promised to pay. It has frequently been decided by this court, that an agreement for the price of services does not preclude proof of their value. 4 *Louisiana Reports*, 115, *Gourjon* vs. *Cucullu*; 4 *Martin*, *N. S.*, 178, *Boyd* vs. *Howard*; 8 *Martin*, 402, *Gilly* vs. *Henry*. But defendant contends that this bill of prices being a contract, must be adhered to, and that plaintiff can make no extra charge. It undoubtedly is a contract so far as it goes;

Where the plaintiff sues to recover the value of work and labor done for the defendant, according to a bill of prices agreed on for part of it, and for extra work, he will be allowed to produce testimony *of the value* of all the work performed.

In an action on a special agreement for the *price* of work, or services rendered, the party may introduce *proof of the value* also.

it is a naked enumeration of the prices of work to be done, the prices to be paid for each item, and shows a total sum of one thousand five hundred and twenty-six dollars twenty-four cents, for all the works therein detailed. Defendant's witnesses, when speaking of the contract entered into by the plaintiff, all refer to the bill of prices as showing the extent of his engagement, but none of them pretended that he was bound to do any thing not specified in it. No mention is made in that paper of the several items of extra works set forth in plaintiff's account, and among them is a large and important one, to wit: the building and putting up of a press. These additional prices of work were received by defendant, and could not have been executed had he not furnished the material; they must, therefore, be considered as done by his order. 4 *Louisiana Reports*, 101, *Andrews* vs. *Jacobs; Louisiana Code*, 2735.

From the testimony in the record, as to the manner in which the whole work was executed, we have derived the impression that it was well done, with the exception of a few defects, to remedy which, the defendant has had to expend one hundred and fifty dollars. This deduction, we think, should have been allowed, together with a sum of fifty-six dollars, which is an overcharge in plaintiff's account. Fifty-six squares of joist are set down at three dollars per square, when the bill of prices authorized only a charge of two dollars per square. As to the delay defendant complains of, the evidence shows that no particular time had been fixed; and moreover, that the defendant has in some measure been himself the cause of the delay, by interrupting plaintiff and taking him off to work on a dwelling house of his during four months.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be reversed; and that the plaintiff do recover of defendant thirteen hundred and fourteen dollars and seventy-four cents with costs below, and that the plaintiff and appellee pay the costs of this appeal.

EASTERN DIST.
February, 1840.

COLLINGS *vs.* HAMILTON.

COLLINGS
vs.
HAMILTON.

14L 343
49 337

APPEAL FROM THE COURT OF THE THIRD JUDICIAL DISTRICT, FOR THE PARISH OF WEST FELICIANA, JUDGE DAWSON, PARISH JUDGE, PRESIDING.

A verdict " for the plaintiff," without specifying any sum, is defective and illegal, when the suit is for a money demand, and will be set aside.

The Supreme Court, on setting aside the verdict of a jury, will render final judgment in the case if the evidence and facts in the record enable it to do so.

This is an action on an account for work and labor done on the defendant's house, in which the plaintiff claims a balance of one thousand and forty-two dollars, according to an account annexed.

The plaintiff alleges that, at the instance of the defendant, he undertook to work on a dwelling-house already begun, and that he employed men to assist him, whose joint labor and work is worth the sum of one thousand two hundred and seventy-seven dollars, on which two hundred and twenty-five dollars have been paid, leaving the balance claimed as yet due, and for which he prays judgment.

The defendant admits the work was done on his house, but not in a skillful and workmanlike manner; and further avers, that he was to pay for the value of the work done by the plaintiff, and be allowed the value of the labor of four negro carpenters belonging to him, who worked on the building at the same time, and whose labor is worth two dollars per day each. He concludes by praying that all credits for the services of his slaves be given, and that the work done on the building be adjudged not worth half the sum claimed.

On these pleadings and issues, the cause was tried before the court and a jury; the parish judge presiding in the place of the district judge, who had been of counsel in the cause.

There was a mass of testimony taken on the trial, touching the manner of doing the work, its value, and the work performed by the defendant's slaves. Upon all the evidence adduced, the jury returned the following verdict: "We, the

jury, find a verdict for the plaintiff." After an unsuccessful attempt to obtain a new trial, on the part of the defendant, judgment was rendered confirming the verdict, and giving the plaintiff the sum claimed in his petition. The defendant appealed.

*Turner*, for the plaintiff.

*Lobdell*, contra.

*Morphy, J.*, delivered the opinion of the court.

The plaintiff sues to recover one thousand and forty-two dollars, the value of work and labor done on a dwelling-house erected for defendant. The defence is, that the work is executed defectively, unskillfully, and in violation of defendant's instructions; that, by reason thereof, plaintiff is not entitled to one half of the amount claimed; defendant, moreover, claims the wages of four negro carpenters that he placed under the order and control of plaintiff, while he was working on said building.

A verdict "for the plaintiff," without specifying any sum, is defective and illegal when the suit is for a money demand, and will be set aside.

The plaintiff obtained a verdict. Having failed in an effort to set it aside, the defendant appealed.

Our attention has been called to the verdict as being defective and illegal, in not specifying the amount found by the jury as required by article 522, of the Code of Practice. We think the verdict incorrect; it must, therefore, be set aside, together with the judgment rendered on it.

The Supreme Court, on setting aside the verdict of a jury, will render final judgment in the case, if the evidence and facts in the record enable it to do so.

The Code of Practice, article 905, imposes on us the duty, when we reverse the judgment of an inferior court, to pronounce in the case such judgment as that court should have rendered, if the facts and evidence in the record can enable us to do so. Here we have before us all the testimony which induced the jury to find for the plaintiff. In controversies of this kind, it can hardly be expected that the evidence will be full, explicit, and free from any doubt. It consists entirely of the testimony of workmen and undertakers, who will differ in their opinions of the work they are called upon to examine; some have found plaintiff's

work well executed, others have found fault with it. The testimony shows that plaintiff informed defendant that he did not profess to be a first rate house carpenter, and that defendant expressed himself willing, nevertheless, to employ him, intending to have his house roughly finished. From a careful examination of the whole evidence, we think, with the jury, that it strongly preponderates in favor of the plaintiff. His account is proved with some certainty, while the facts set up in defence are sustained by vague and contradictory testimony. As to defendant's claim for wages, the evidence does not show how long his negroes worked with the plaintiff, or that they were all carpenters, as alleged. One of them is represented to be a rough carpenter; the others were field hands. They gave some occasional assistance to the plaintiff, but it does not appear that any wages were stipulated. Had this claim been for a stipulated price for the whole building, the defendant would perhaps be entitled to something for the time of his negroes; but in his account, the plaintiff only claims his own wages, and that of the workmen in his employ. If we were to allow the defendant's claim, he would be receiving the wages of his negroes after having had the benefit of their labor.

It is, therefore, ordered, adjudged and decreed, that the judgment be reversed and the verdict set aside; and it is further ordered and decreed, that the plaintiff do recover from the defendant the sum of one thousand and forty-two dollars, the costs in the court below to be paid by defendant, the plaintiff and appellee paying those of the appeal.

EASTERN DIST.
February, 1840.

ARMOR *vs.* HUIE.

ARMOR
*vs.*
HUIE.

APPEAL FROM THE PARISH COURT, FOR THE PARISH AND CITY OF
NEW-ORLEANS.

In an action for the return of the price, on account of redhibitory defects in a slave, although the demand exceeds five hundred dollars, it may be proved by a single witness, when the claim grows out of a contract evidenced by a notarial act.

This is a redhibitory action to recover fifteen hundred dollars, the alleged value of a slave, sold by the defendant to the plaintiff, and soon after died of a disease supposed to have existed at the time of sale.

The defendant controverted this fact, and the testimony of the physician, to whose hospital the slave was sent, and soon afterwards died, was received as evidence of it. The act of sale was also adduced in evidence. The parish judge rendered judgment for the plaintiff, and the defendant appealed.

*L. Peirce,* for the plaintiff.

*Sterrett,* contra.

*Morphy, J.,* delivered the opinion of the court.

The defendant appeals from a judgment decreeing him to pay back to plaintiff fifteen hundred dollars, the price of a slave he had sold to the latter, and who died of a pulmonary complaint shortly after the sale. The fact of the existence of the malady, at the time of the sale, is satisfactorily proven by the physician who attended the slave, during his last illness. This evidence cannot be outweighed by the opinions of any number of witnesses as to the healthful appearance of the negro, during several years before that time; but even those witnesses show that the boy was subject to an indisposition, which they denominate *a slight sensation.* It might have been the first seeds or workings of the very disease, declared by the physician to have been the cause of his death.

A point made by appellant's counsel is, that plaintiff's claim being over five hundred dollars, the testimony of a single witness was insufficient, and he relies on article 2257, of the Louisiana Code. This provision is altogether inapplicable to the present case. The agreement out of which plaintiff's claim grows is evidenced by a notarial act; as to the facts which may entitle him to a recovery under it, no law requires that they should be made out by more than one witness, unless the counsel seriously have intended to revive the old maxim, *testis unus, testis nullis.*

It is, therefore, ordered and adjudged, that the judgment below be affirmed, with costs.

Eastern Dist.
*February,* 1840.

WORSLEY
*vs.*
BARRETT ET AL.

In an action for the return of the price, on account of redhibitory defects in a slave, although the demand exceeds five hundred dollars, it may be proved by a single witness, when the claim grows out of a contract evidenced by a notarial act.

---

## WORSLEY *vs.* BARRETT ET AL.

APPEAL FROM THE COMMERCIAL COURT OF NEW-ORLEANS.

Where the defence set up is entirely disproved by the plaintiff, and the defendant appeals, he will be condemned to pay damages as for a frivolous appeal.

But where the debt carried ten per cent. interest, only five per cent. damages were decreed.

This is an action against the endorsers of a promissory note. The endorsements sued on were in blank, but the plaintiff made a special endorsement below to one Wm. Brand. On the trial, Brand was offered as a witness to show that this endorsement was made to him merely for the purpose of collection; that the plaintiff was the true owner; and the defendants promised to pay the note. This testimony was excepted to, on the ground that, by an inspection of the note sued on, the plaintiff had parted with his interest therein.

The testimony was received, and there was judgment for the plaintiff. The defendant appealed.

BURTON
*vs.*
HOFF.

*Caswell,* for the plaintiff.

*Sterrett,* contra.

*Morphy, J.,* delivered the opinion of the court.

The defendants are sued as endorsers of a promissory note. The defence was, that the plaintiff could not recover on the note, having parted with his interest therein, by a special endorsement of it to one Wm. Brand. The latter appeared as a witness, and testified that he was only an agent for the collection of the note, which was the property of plaintiff; that, since its maturity, the defendants have repeatedly promised to pay this debt to the plaintiff. The appellee has prayed for damages; we think that he is entitled to them; but as the note already bears ten per cent. per annum interest, we shall grant only five per cent. in damages on the amount of the debt.

It is, therefore, ordered, adjudged and decreed, that the judgment of the court below be affirmed, with costs, and five per cent. damages.

BURTON *vs.* HOFF.

APPEAL FROM THE COURT OF THE EIGHTH DISTRICT, FOR THE PARISH OF ST. HELENA, THE JUDGE THEREOF PRESIDING.

The verdict of a jury on mere matters of fact, brought out by the answers of the parties to interrogatories propounded to each other, will not be disturbed without good grounds.

This is an action on a promissory note of the defendant, and an account for moneys laid out and advanced for his

use, amounting to the aggregate sum of three hundred and ninety-two dollars, for which the plaintiff prays judgment.

The defendant admitted his signature to the note, but denied the other allegations, and set up two accounts against the plaintiff for the sum of eight hundred and fifty dollars, in compensation and reconvention.

Interrogatories were propounded to both parties, which brought out answers explaining the respective demands as each of the parties understood them.

The whole was submitted to a jury well acquainted with the respective parties, who returned a verdict for the plaintiff's demand, and rejecting that of the defendant. From judgment confirming this verdict the defendant appealed.

*Davidson,* for the appellant.

*Morphy, J.,* delivered the opinion of the court.

Plaintiff seeks to recover three hundred and ninety-two dollars and sixty cents, being the aggregate amount of defendant's note of hand to his order, and of moneys advanced for account of defendant. The latter admitted his signature, pleaded compensation and reconvened in a sum of eight hundred and fifty dollars, which he averred to be due to him upon a full settlement of his accounts with plaintiff. The verdict of the jury called upon to try this issue was in favor of plaintiff; and defendant, without any attempt to set it aside, has taken this appeal.

The evidence mainly consists of the answers of both parties to interrogatories they have put to each other. They relate to a series of transactions and arrangements which took place between them. A careful perusal of the whole evidence has not enabled us to perceive any thing which makes it our duty to disturb the finding of a jury, who were acquainted with the parties thus made witnesses in their own cause.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.

M'DONOUGH *vs.* FOST, F. M. C.

ON AN APPLICATION FOR A MANDAMUS.

An appeal lies directly from an order of seizure and sale.

This is an application for a *mandamus* to the district judge of the first judicial district, commanding him to grant an appeal from an order of seizure and sale.

*Hennen,* for the application, showed, that on his presenting a petition of appeal on the part of the defendant in this case, the judge *a quo* refused to grant said appeal.

*Strawbridge* contra, submitted the case to the court

*Martin, J.,* delivered the opinion of the court.

This is an application for a *mandamus* to the judge of the first judicial district, to grant to the defendant an appeal from his order at chambers, for the issue of a writ of seizure and sale. The sole question before us is, whether the defendant is entitled to such appeal.

As early as the year 1823, in the case of *Tilghman* vs. *Dias,* 12 *Martin,* 691, we held that an order of seizure and sale was a judgment. Afterwards, in the case of *Gurlie et al.* vs. *Coquet,* 3 *Martin,* N. S., 498, this principle was recognized, and we added that such a judgment was final in its nature, and that an appeal lies therefrom. We have acted on such appeals in the cases of *Moss* vs. *Byrnes,* 12 *Louisiana Reports,* 615, and *Armstrong* vs. *Levy et al,* 14 *Idem,* 157. The *mandamus* must therefore be issued.

WATKINSON, AGENT, &C., vs. BLACK.

APPEAL FROM THE COURT OF THE THIRD JUDICIAL DISTRICT, FOR THE PARISH OF WEST FELICIANA, THE JUDGE THEREOF PRESIDING.

An affidavit in which the plaintiff states "*he verily fears, and has good and sufficient* cause to believe, the defendant will remove the slaves out of the state, &c.," is insufficient to support a writ of sequestration.

The plaintiff sues, as agent of one Lewis Jordan, of Tennessee, and charges the defendant with having illegally taken from the state of Tennessee, and out of the legal possession of the plaintiff, several slaves, and which he has brought to the parish of West Feliciana. He alleges, that the defendant is a transient person, without any known domicil, and that he has good reason to fear, and verily believes, that he will remove the said slaves from the state of Louisiana, so that the said Jordan will be forever deprived of his rights: Wherefore he prays that they be sequestered, &c. The plaintiff declares, in his affidavit, at the foot of the petition, "that he verily fears, and has good and sufficient cause to believe, that the defendant will remove said slaves out of the state of Louisiana."

The defendant moved to set aside the sequestration, on the following grounds:

1. The plaintiff sues as agent, and has not produced any authority to show he is authorized to act in that character.

2. There is no sufficient and legal cause sworn to in the affidavit to authorize a sequestration.

3. The affidavit is insufficient in not stating that the defendant was about to remove the slaves out of the state, or jurisdiction of the court.

4. There is not any legal bond given, &c.

The defendant also excepted to the petition, and averred, that the action could not be maintained on various grounds.

The district judge set aside the writ of sequestration, on the first, second and third grounds, relied on in the defendant's written motion. The plaintiff appealed.

*Patterson,* for the defendant and appellant, suggested to the court that the record had not been filed by the appellant; and that he now offered to file it, (three judicial days since the return day having elapsed,) and prayed that the judgment be affirmed, with damages and costs.

*Morphy, J.,* delivered the opinion of the court.

Plaintiff appeals from a judgment dissolving an order of sequestration, previously granted him, as agent of one Lewis Jordan. The property sequestered consisted of certain slaves in the possession of the defendant. Since this appeal was taken, the plaintiff's petition has been dismissed, from which judgment no appeal has been asked. The suit itself having been dismissed, the sequestration, which is only an accessory proceeding, must have already shared the same fate. The appellee, however, who has brought up the record, asks us to confirm the judgment setting it aside. To this we think he is entitled, and shall rest our affirmance only on one of the grounds assigned by the judge *a quo,* to wit: the insufficiency of the affidavit, which does not set forth any fear that the defendant, Black, may remove the slaves out of the jurisdiction of the court.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.

---

BURTON'S HEIRS *vs.* BURTON ET AL.

APPEAL FROM THE COURT OF PROBATES, FOR THE PARISH OF ST. HELENA.

Every donation or advantage is liable to be collated among co-heirs, unless expressly exempted by the donor.

So, in an action of partition among co-heirs, slaves which have been given, the donee is not permitted to collate them in kind, but according *to their value at the time of the donation.*

The donation of slaves imports an absolute transfer of property; and they are at the donee's risk, who is entitled to all the profits and increase, and must bear their deterioration and loss.

This is an action of partition, instituted by three of the children and forced heirs of Nancy and Jacob Burton, deceased, against three co-heirs and the representatives of a co-heir, Nathaniel Burton, deceased.

The plaintiffs allege, that the succession of their deceased ancestor is worth about ten thousand dollars, and has never been partitioned among the co-heirs. They pray for a final partition of said succession, according to law.

The representatives of Nathaniel Burton, by attorney, answered, and by way of intervention, alleged, that the other heirs had received large amounts of property in the life time of said Jacob and Nancy Burton, both in Georgia and this state, which they were bound to return to the succession, or collate it according to law. They further show that the succession of Jacob Burton was opened in the parish of St. Helena, and that John Burton was appointed administrator, who has illegally caused the property thereof to be sold. They further state their desire for a partition, and for this purpose require the administrator to settle his account; the heirs made to collate, and that a partition take place according to law.

They further state, that they are ignorant how much property has been received by the other heirs, but enumerate some and propound interrogatories to several of the heirs touching property "received from their common ancestor, and pray that it be inventoried as part of the succession."

After the heirs had answered, and all the property accounted for, the succession amounted to the gross sum of fifteen thousand six hundred and thirty-six dollars, and the debts unpaid and due, amounted to eight thousand three hundred and ninety-eight dollars, which, deducted, leaves a balance of seven thousand two hundred and thirty-eight dollars, to be divided among seven sets of heirs. Each heir collated, whether the property received from the ancestor in

EASTERN DIST.
February, 1840.

BURTON'S HEIRS
vs.
BURTON ET AL.

his life time, was " given off" in Georgia, where he formerly resided, or in Louisiana, where his succession was opened.

The heirs collated what property they had received at its appraised value; those of Nathaniel Burton, deceased, were allowed the price of hire of two slaves " given off" to him in Georgia, and taken back by said Jacob Burton fourteen years previously, and which was deducted from the gross amount of the succession before partition. Upon this basis the partition proceeded.

Two of the heirs, plaintiffs, and the attorney for the absent heirs, opposed the homologation of the petition, alleging that a tract of land and some notes remained to be divided, and, therefore, the partition was only provisional. They oppose the allowance of three thousand and thirty-four dollars to the heirs of N. Burton, for the hire of slaves loaned to, and taken back by the ancestor: Finally, that the partition is made on illegal principles, and that the shares of each are incorrect.

The heirs of N. Burton opposed the partition, on the ground that the heirs who had received slaves, did not return them and their increase to the mass of the succession, and because the hire or value of their services were not collated: Finally, because the value of the two slaves loaned or "given off" to N. Burton and taken back, were not allowed.

These oppositions were overruled, and from judgment homologating the partition, the opponents appealed.

*Andrews* and *Lawson*, for N. Burton's heirs contended, ·

1. That the judge of probates erred in not deciding that all the property of Jacob Burton, given off or loaned to his children and heirs, should be returned in kind with all the natural increase, whether said loans were made in the state of Georgia, or in Louisiana, inasmuch as no titles were given, and as the law recognizes no principle but equality as the basis of all partitions.

2. And further they contend, that, if the court below was right in considering the giving off, or loans of property, as absolute donations, then the court erred in not allowing to

the heirs of Nathaniel Burton the price of the two slaves,
which their grand-father had loaned to their father, and
afterwards took back and sold.

3. That the court below erred in not decreeing that all
heirs of Jacob Burton should account for the use of the pro-
perty loaned up to the time of making the partition, and in
such manner as to produce perfect equality at the time of
partition, among all the heirs.

*Bullard, J.*, delivered the opinion of the court.

This is an action of partition among the heirs of Jacob
Burton and his wife, and the only difficulty consists in adjust-
ing the collations among the heirs.

It is necessary to premise, that the deceased removed,
some years since, from Georgia, where they had "given off,"
as it is termed, to their children, as they settled in the world,
certain portions of property, such as slaves, small tracts of
land, or household furniture or stock; and that, after they
removed to Louisiana, the same thing had been done towards
other children.   The court below considered such advances
as donations subject to collation by taking less out of the
estate, and charged the co-heirs with the slaves thus receiv-
ed, according to their value, at the time of the advancement;
and, consequently, gave the increase or young of the slaves
to them respectively.   The representatives of Nathaniel
Burton, one of the sons of the deceased, who had received
two slaves in his life time, but which had been taken back
at his death, complain of this as producing great inequality
in the condition of the co-heirs, and have appealed to this
court.   Their counsel have relied on three points:

1st. That the court erred in not deciding that all the pro-
perty of Jacob Burton, the father, given off or loaned to his
children, should be returned in kind with its natural increase,
whether such loans were made in Georgia or in Louisiana,
inasmuch as no titles were given, and the law recognizes
equality among co-heirs as the basis of all partitions.

2d. That if the court was right in regarding the giving off
or loans, as absolute donations, then there was error in not

allowing to the heirs of Nathaniel Burton, the price of two slaves which had been loaned to their father, and afterwards taken back.

3d. That the court erred in not decreeing that the heirs should account for the use of the property loaned to them up to the time of the partition.

·I. The record does not show what is the law of Georgia, in relation to such advances to children ; whether they are regarded as absolute donations, not subject to be accounted for in the settlement of the estate of the donor ; or whether they be merely in the nature of loans.　One witness testifies, that the custom was various on that subject ; that sometimes the parents gave to their children slaves as they married off, by way of gift, and sometimes as a loan.　And if the young people got into a difficulty, or died, the old people claimed the property.　In the absence of proof to the contrary, the law of Georgia must be taken to be consonant to ours, and, consequently, that every donation or advantage is liable to be collated, unless expressly exempted by the donor.　If these advances were exempted as loans in the particular case before the court, there would be an end of the controversy, for the slaves would never have ceased to belong to the ancestor, and, consequently, would still belong to the estate, together with their increase.　But the co-heirs to whom slaves were given, were interrogated on facts and articles touching those advances, and they answer, on oath, that they received the slaves as a gift.　We must, therefore, consider the slaves as having been the object of a donation and subject to collation, according to the laws of Louisiana.　"When slaves have been given, says the Code, the donee is not permitted to collate them in kind.　He is bound to collate for them by taking less, according to the value of the slaves at the time of the donation."　*Article* 1361.　The next article draws the necessary conclusion, to wit : that the donation imparts an absolute transfer, that the slaves are at the risk of the donee, and that he profits by their increase, as he would suffer by their deterioration or loss.

II. But the appellants complain that the heirs of Nathaniel

Every donation or advantage is liable to be collated among co-heirs, unless expressly exempted by the donor.

So, in an action of partition among co-heirs, slaves which have been given, the donee is not permitted to collate them in kind, but according to their value at the time of the donation.

The donation of slaves imports an absolute transfer of property, and they are at the donee's risk, who is entitled to all the profits and increase, and must bear their deterioration and loss.

EASTERN DIST.
February, 1840.
WILCOX ET AL.
vs.
HALDERMAN
ET AL.

Burton ought to have been allowed the price of two slaves loaned to their father, and taken back. To this, it appears to us a satisfactory answer, to say, that they have been compelled to collate nothing on account of those two slaves, and that having been restored to the father before his death, we are to suppose they were either otherwise disposed of, or formed a part of his succession. In the latter event, they have, by this partition, received them in money, or, in other words, their share in the estate has not been diminished on account of those two slaves.

III. Lastly, the complaint of the heirs of Nathaniel Burton, that their co-heirs were not decreed to account for the use of the slaves loaned to them, up to the time of the partition, appears to us unfounded. The slaves were at the risk of the children to whom they were given. If they had died the day after the donation, they would, nevertheless, have been compelled to collate their estimated value. It would, therefore, be manifestly unjust that they should be decreed to pay hire for them. Indeed, as soon as it is settled that there was no loan, but a donation, there is no longer any question about the hire, for the donee became liable to collate only value of the slaves.

It is, therefore, ordered, adjudged and decreed, that the judgment of the Court of Probates be affirmed, with costs.

---

WILCOX ET AL. *vs.* HALDERMAN ET AL.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT, JUDGE BUCHANAN PRESIDING.

In an action to render the captain and owners of a steam-boat liable in damages for the value of sundry bags of corn shipped on board and delivered in a damaged state, evidence will not be received to show that the corn was purchased from the captain in order to make him liable as seller.

EASTERN DIST.
*February*, 1840.

WILCOX ET AL.
*vs.*
HALDERMAN
ET AL.

This is an action in which the plaintiffs allege, the defendants are indebted to them in the sum of four hundred and fifty-four dollars in damages, being the value of one hundred and sixty bags of corn, shipped in good order on board the steam-boat Arkansas, commanded by the defendant, Halderman, and delivered at the port of destination in a totally damaged state. They pray judgment against the captain and owners of said boat for the amount of their said demand.

The defendants pleaded a general denial. On the trial, the plaintiffs' counsel offered a witness to prove that the corn was purchased from the captain, and that he represented it to be of first rate quality, to all of which testimony the defendants' counsel objected, on the ground that it was inadmissible under the pleadings, inasmuch as the suit was instituted for a breach of contract of affreightment. The court overruled the objections and admitted the testimony, and the defendants excepted.

The district judge summed up the case, and rendered judgment as follows:

" This is a suit for damages sustained by a deterioration of goods shipped on the steamer Arkansas, on freight. The bill of lading is in the usual form. The object of the contract of affreightment was corn in sacks. The sacks were in good order at the time of the shipment, and are proved by plaintiffs' witness, the consignee, to have been delivered in like good order. When examined and used, however, after delivery, the corn was found to be damaged or spoiled from internal decay ; at least it is supposed that was the cause of the damage, as the evidence does not attempt to explain the deterioration in any other manner, and as the packages or sacks are proved to have arrived in good order.

" Deterioration of the cargo from internal decay, perils of the sea, (or river,) or *vis major*, are not warranted against by the ship owner, and do not diminish or destroy his claim for freight. See 3 *Kent's Commentaries*.

" The witness, Collins, who purchased the corn for plaintiffs, proves that it was of first rate quality when the contract of affreightment was made, and that the corn received by

the consignee could not have been the corn that plaintiffs Eastern Dist.
February, 1840.

WILCOX ET AL.
vs.
HALDERMAN
ET AL.
shipped.

"If there was any change of the merchandize on the
route, this would have been clearly a fraud and barratry on
the part of the agents of the owners of the vessel, for which
the defendants would have been liable. But the testimony
of several witnesses negatives this fact, which, indeed, has
nothing to support it but the opinion, (however decided and
sincere,) of the witness, Collins.

"It is, therefore, adjudged and decreed, that there be
judgment in favor of the defendants, with costs."

The plaintiffs appealed.

*Josephs*, for the appellants, contended, that the evidence of
Collins showed the corn was purchased on the representa-
tions of the captain that it was of first rate quality, and for
which he gave a bill of lading, that it was shipped in good
order.

2. The position occupied by the defendant, Halderman,
removes this case from the general operation of the law cited
by the district judge. He cannot pretend ignorance as to
the quality or condition of the corn, because it was *in his
possession* long before it became the property of the *present*
plaintiffs; and was purchased by their agent upon *his
assurance* of its excellence, immediately after which assurance
he signed the bill of lading sued on. If any deception was
practised upon the plaintiffs, he is proved to have been the
author of it.

*Benjamin*, and *T. Slidell*, for the defendants, insisted that
the case turned mainly on questions of fact decided by the
district judge, and his judgment should not be reversed unless
manifestly erroneous.

2. The ship owner is not responsible for injury arising
from the natural deterioration of the article shipped. 3 *Kent's
Commentaries, article on Shipping*.

3. The corn was delivered in the same order in which it
was shipped. From its external appearance it was in good
order, both when shipped and delivered.

EASTERN DIST.
February, 1840.

WILCOX ET AL.
vs.
HALDERMAN
ET AL.

4. The consignee accepted the corn after examination, and without objection. This barred all recovery, if any right ever existed. 12 *East*, 381 ; 4 *Campbell*, 119.

*Bullard, J.*, delivered the opinion of the court.

This is an action against the captain and owners of the steamboat Arkansas, to recover the value of one hundred and sixty bags of corn, which were shipped in good order on board said boat, but delivered at the place of destination damaged, and totally unfit for use.

It appears by a bill of exceptions, to which our attention has been called, that the plaintiffs produced the testimony of a witness to prove that the corn shipped on board the boat was purchased from the captain, one of the defendants; and that he represented it to be of first rate quality. This evidence was objected to as inadmissible under the pleadings, the suit being for a breach of a contract of affreightment, upon which alone issue was joined. The evidence was, however, admitted. This bill of exceptions was taken by the defendant, and, therefore, needs no further notice, but we think that so far as the evidence offered tended to make one of the defendants liable as vendor, it was inadmissible under the pleadings.

*In an action to render the captain and owners of a steamboat liable in damages for the value of sundry bags of corn shipped on board and delivered in a damaged state, evidence will not be received to show that the corn was purchased from the captain in order to make him liable as seller.*

Whether the corn was injured during the short time it was on board, or whether its deterioration was attributable to internal decay, and from causes existing previously to the shipment, is a question of fact, which the court below decided in favor of the defendants, and we see no good reason why it should not be affirmed.

The judgment of the District Court is, therefore, affirmed, with costs.

### VAIRIN ET AL. *vs.* PALMER.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

The plea of the general issue admits the signature of the maker of the note sued on.

When there is no defence, the judgment on appeal will be affirmed with the maximum of damages.

The defendant, Therese Palmer, is sued as maker of a promissory note, signed in her name by A. W. L. Palmer, as attorney in fact. She put in her plea of the general issue, by her attorney in fact, and there was a verdict and judgment against her, from which, by counsel, she appealed.

*Jones*, for the plaintiffs, urged the affirmance of the judgment, with ten per cent damages.

The case was submitted, and tried *ex parte*.

*Martin, J.*, delivered the opinion of the court.

This is an action on a note of hand, to which the defendant pleaded the general issue. This plea admitted the signature of the maker of the note, and there was a verdict and judgment for the plaintiffs.

The defendant appealed. No counsel appeared in this court on the part of the appellant. The plaintiffs pray the affirmance of the judgment with damages, as for a frivolous appeal.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs, and ten per cent. damages.

EASTERN DIST.
*February*, 1840.

M'GEHEE *vs*. M'CORD ET AL.

M'GEHEE
*vs.*
M'CORD ET AL.

APPEAL FROM THE COURT OF THE THIRD JUDICIAL DISTRICT, FOR THE PARISH OF WEST FELICIANA, JUDGE DAWSON, PARISH JUDGE, PRESIDING.

14  362
110  790

Service of citation on one partner of a particular partnership, is insufficient to bring all the partners into court.

Several persons associating themselves under a particular style and firm, for the purpose of constructing a rail road, although they draw bills of exchange in the mercantile form, will be considered as forming an ordinary or particular partnership.

Particular partnerships are joint, and the obligations of the firm bind the partners *jointly* only, who must be all sued *together*, and service of citation made on each and every partner.

The plaintiff alleges, he endorsed bills of exchange and notes drawn and signed by one I. M'Cord, and others, who had associated themselves under the style and firm of " Isaac M'Cord & Co.," for the purpose of building the West Feliciana Rail Road, under an agreement made by notarial act, in which the defendants conveyed to him a steam saw-mill and lot of ground to indemnify him against loss. That on the 2d June, 1837, the previous liabilities which he had come under for said firm were liquidated, and a note given, signed by the members of said firm, which he endorsed and is liable to pay. He alleges, that all the members of the partnership are bound jointly and severally to indemnify him against said endorsement, and prays.that they be cited, and that the steam saw-mill and lot of ground be sold to pay said note.

Service of citation and petition was made on John Cummings alone, who appeared by counsel and excepted ; and also denied the right of the plaintiff to maintain his action, without citing all the other defendants in the suit ; that the note sued on was a novation of the original debts or obligations, for which the mortgage or lien was given on the property described in the petition, and that said mortgage or lien, if it ever existed, was extinguished, &c.

On the trial of the cause, after hearing the evidence and arguments of counsel, the judge presiding was of opinion, the plaintiff failed to make out his case, and gave judgment of non-suit against him, from which he appealed.

*Turner,* for the plaintiff and appellant, contended :

1. The note was the note of a firm, and was joint and several. The issuing of promissory notes and bills of exchange in their firm name, brought them under the law of merchants as relates to these transactions, even if they, in relation to the building of the rail road, were special partners.

2. Their contract of guaranty to the plaintiff, dated 11th January, 1837, brought them under the mercantile rules of dealing with him as a firm.

3. The note sued on was a firm note, being subscribed by a majority of the members of the firm. See their articles of co-partnership.

4. The admissions, in the answer of Cummings, are good proof against all the defendants, and may be considered as the answer of all; but if not, it is proof against the members of the firm.

5. The signatures to the note were fully proved, and the endorsement of the plaintiff upon it. The credit upon it shows that it was presented at the place of payment when due, and was demanded.

6. Every allegation of the petition is admitted except the lien upon the land, and even that, for there is an averment that the contract had been novated, and this admits it existed, and threw the 'burden upon defendants to show' its extinguishment, and there is no such proof offered. It does not result by the payment of the original drafts and note.

7. The plaintiff was at all events entitled to judgment against John Cummings, who had answered and insists that the judgment of non-suit may be set aside, and judgment be rendered in favor of the plaintiff by this court for the balance of the note sued upon, and eight per cent. interest since the same became due, and for general relief adapted to the case, and the lot and mill sold to indemnify the plaintiff.

*Andrews,* for the defendant, urged that this action could not be maintained, because there was no legal service on the persons sued. The partnership is not a commercial one, and but one of the partners is cited. The others reside out of the parish, and one is dead. Service of process should have been on all of them, or their representatives.

*Morphy, J.,* delivered the opinion of the court.

The plaintiff appeals from a judgment of non-suit. He states that having consented to endorse bills of exchange and promissory notes for defendants to a considerable amount, he received of them, by notarial act, the transfer of a certain steam saw-mill and lot of ground; that said sale was thus passed to him for the purpose of securing and indemnifying him against any loss from such endorsements, and was intended to have the effect and operation of a mortgage; that under this agreement, his endorsements were given on their paper to the amount of twenty-four thousand and twelve dollars forty-four cents, which is now due, and for which he is liable towards the holders thereof. He prays for judgment against the defendants *in solido,* and for the sale of the property; and that the proceeds may be applied to the payment of said debt.

The opinion we have formed in relation to the service of the petition and citation in this case, renders unnecessary the examination of several questions which arose on the trial. The evidence shows that the firm sued here is composed of six individuals, one of whom only, to wit: John Cummings, was served with process of citation. This would have been sufficient had the firm been a commercial one; *Code of Practice, article* 198. But from the articles of co-partnership, it appears that these persons became associated and adopted a firm to carry on the business of constructing the West Feliciana Rail Road. This formed between them an ordinary and particular partnership. We think that service should have been made on each and every partner; but it is contended that the issuing of notes and bills of exchange in the name of their firm brought the partners under the operation

Service of citation on one partner of a particular partnership is insufficient to bring all the partners into court.

Several persons associating themselves under a particular style and firm, for the purpose of constructing a rail road, though they draw bills of exchange in the mercantile form, will be

of the law merchant; at least as to their transactions with plaintiff under the guarantee, even if in relation to the undertaking of the rail road, they must be considered as special partners. To this we cannot assent. It is the dealings and business of a partnership which make it a commercial one, not the form of the obligations they may contract. Engagements to pay a sum of money in this country are generally, if not always, thrown into that form. If that alone was sufficient to stamp a mercantile character on a partnership, there would hardly exist any other here than commercial partnerships; as to their adopting a firm, it was a matter of convenience, but did not change the nature of their association. 5 *Martin*, 682, *Slocum* vs. *Sibley*. We are asked to give judgment at least against Cummings, who has been cited and has answered; but even this, we cannot do; the liability is joint, not joint and several. All the obligors should have been made parties to the suit; no judgment can be rendered against any; *Lousisana Code, article* 2080.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.

*Eastern Dist.*

*February,* 1840.

QUARTREVEAUX
*vs.*
CABOCHE.

considered as forming an ordinary or particular partnership.

Particular partnerships are joint, and the obligations of the firm bind the partners *jointly* only, who must be all sued together, and service of citation made on each and every partner.

---

QUARTRÉVEAUX *vs.* CABOCHE.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

In an action of slander, for calling the plaintiff " *a thief*," &c. the defendant cannot offer the declarations of the plaintiff's father in evidence, reproaching the son with having committed a crime.

The declarations of the father, reproaching his son with misconduct cannot be given in evidence against him in an action against a third person for slander. Nothing the father may have said can assist the defendant in establishing his charge. It is hearsay evidence, and the father could not be heard if he were offered as a witness.

Where damages are complained of as excessive, the assessment of them are considered so peculiarly the province of the jury, that the verdict will not be disturbed, without evident grounds.

This is an action of slander in which the plaintiff alleges, the defendant, with the malicious intention to defame and slander him, falsely, maliciously and publicly stated on the 11th February, 1838, and at several other times, that he (meaning petitioner,) was "a thief, and had stolen a watch and books." He lays his damages at ten thousand dollars, and prays for a trial by jury.

The defendant pleaded the general issue, and set up various matters in justification of his charges, by way of defence.

On the trial, the plaintiff proved the slanderous charges, and the defendant attempted to sustain his defence. The material questions of law raised in the trial are stated in the following opinion made by this court.

The cause was submitted to a jury, who returned a verdict of fifteen hundred dollars in damages for the plaintiff. From judgment rendered thereon the defendant appealed.

*Roselius,* for the plaintiff.

*Canon,* for the defendant.

*Martin, J.,* delivered the opinion of the court.

This is an action of slander and assault and battery. The general issue and justification are pleaded. There was a verdict and judgment against the defendant, and he appealed.

Our attention has been drawn to several bills of exception taken by the defendant's counsel on the trial.

1. To the refusal of the judge to permit the defendant to ask a witness, "if he had not heard the plaintiff's father reproach him for compelling them to leave France on account of some crime he (the plaintiff) had committed."

2. In refusing to admit proof that the plaintiff's father had said, "that he was glad the witness lived near him, as he feared his son (meaning plaintiff) would make an attempt on his life."

3. And to the refusal of the judge to instruct the jury and the counsel of the plaintiff, that the latter, in his closing argument, ought to confine himself to the testimony, because defendant's counsel had no means of reply.

It does not appear to us that the court erred. The words charged in the petition, as spoken by the defendant, are, that the plaintiff was "a thief, and had stolen a watch and books." Nothing that the plaintiff's father may have said, can assist the defendant in establishing the charge which he made against the plaintiff. It is but hearsay evidence; and the person whose declarations were offered to be proved, could not be heard as a witness against his son. As to the third bill of exception, it is not the duty of the court to inform the jury of the manner in which the counsel is to proceed. A party may, indeed, require a proper charge from the court to the jury, and except to his refusal. But we do not know that a bill of exception lies to the refusal of the court to tell the counsel that he must confine himself in his argument to the testimony, as the defendant's counsel had no means of reply. We presume that the court will always restrain the counsel if he attempts to travel out of the testimony.

On the merits, it does not appear to us that the verdict ought to be disturbed. The refusal of the judge to grant a new trial, is evidence to us that he was satisfied with the decision of the jury.

The damages have been complained of as excessive; but the assessment of them is the peculiar province of the jury, and the case does not seem to require our interference in this respect.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.

EASTERN DIST.
February, 1840.

QUARTREVEAUX
vs.
CABOCHE.

In an action of slander, for calling the plaintiff "*a thief*," &c., the defendant cannot offer the declarations of the plaintiff's father in evidence, reproaching the son with having committed a crime.

NOTT ET AL. *vs.* BRANDER ET AL.

APPEAL FROM THE COMMERCIAL COURT OF NEW-ORLEANS.

It is necessary to allege and prove the endorsement by the payee of a draft, in order to entitle the holder to recover.

Whatever might have been cured by evidence or admission in the court below, cannot be assigned as error apparent on the record.

When the certificate to the record shows that it contains all the evidence adduced on the trial, the appellant may at any time call the attention of this court to any error on the face of the record; or try the case on the merits without any assignment at all.

This is an action against Brander, M'Kenna & Wright as acceptors of a bill of exchange, made payable to the order of Wm. M. Gwinn, whose name is endorsed thereon in blank. The plaintiff alleges that M. V. King & S. Nelson, at Tchula, Mississippi, the 15th June, 1836, drew their bill of exchange on the defendants, payable thirteen months after date to the order of W. M. Gwinn, who accepted to pay the same. That they did not at maturity pay it, which was protested; as by said bill and protest, *hereto annexed*, more fully appears. The defendants pleaded a general denial. The case was tried *ex parte*. The bill and protest was offered in evidence, upon which judgment for the plaintiffs was rendered for the amount of the bill sued on, with interest and damages.

The defendants appealed.

*T. Slidell*, for the appellants, assigned for error apparent on the face of the record, the following points:

1. That this cause was tried in the absence of defendants, or their counsel, without due notice, and without due setting for trial.

2. That the petition shows no ground of action, there being no allegation of an endorsement by the payee of the draft whereon suit is brought.

3. That the judgment was rendered without evidence, or if any, upon no other than the naked copy of protest, and

production of the bill, without proof of the signatures of the payee thereof.

EASTERN DIST.
*February,* 1840.

NOTT ET AL.
*vs.*
BRANDER ET AL.

4. That even could this court suppose, in contradiction of the record, that said payee's endorsement was proved, yet such proof was inadmissible, and could not have been legally received under the allegations of the petition, and in the absence of defendants or their counsel, who in no way assented to such admission of testimony, if such testimony were given, which they deny.

5. That defendants have been adjudged to pay costs of protest without proof thereof, or of the payment thereof by plaintiffs, and for an amount manifestly illegal.

6. That a judgment hath been rendered inconsistent with the prayer of the petition in favor of Wm. Nott & Co., a firm which, on the face of the petition had plainly ceased to exist; and who, in the judgment are stated as the plaintiffs, but who are not, in truth, the plaintiffs in the cause.

7. And now, in addition to the foregoing assignment, the defendants say that said judgment is contrary to law; hath been rendered without any sufficient or lawful evidence, and should be reversed, and a judgment for the defendants, or else of non-suit, entered.

*Strawbridge,* for the plaintiffs and appellees, insisted that the appellants could not maintain this appeal. That nothing could be assigned as error which might have been cured by legal evidence or admissions made in the court below.

2. The appeal should be dismissed, the errors being assigned too late. The appeal was filed the 9th July, and the assignment of errors on the 12th November following.

*Morphy, J.,* delivered the opinion of the court.

The defendants are sued on their acceptance of a draft payable to the order of W. M. Gwinn. The answer is a general denial. The case was tried below *ex parte,* and decided in favor of plaintiffs. After a fruitless attempt to obtain a new trial, defendants appealed.

In this court they have assigned various errors apparent

on the face of the record.   Of these, it will be material to notice only two, to wit :

1st. That the petition shows no ground of action, there being no allegation of an endorsement by the payee of the draft.

2d. That no proof of such endorsement has been made in the inferior court.

I. This allegation was a most essential one, to show title in the plaintiffs.   Their counsel has contended, that the bill and protest having been annexed to the petition, defendants should be considered as having had sufficient notice of the endorsement, by which plaintiffs became holders.   He has referred us to a series of decisions in this court.   In most of them, we find it laid down, that when a paper is prayed to be made a part of the petition, it cures or corrects any variance between them, and may even convey notice of facts omitted in the petition.   Here the bill and protest were not made a part of, but only annexed to the petition.   This circumstance might not produce the same effects ; but whether it does or not, it is unnecessary to decide in this case, because, admitting that it did convey notice of the endorsement, the appellants assign next :

*It is necessary to allege and prove the endorsement by the payee of a draft, in order to entitle the holder to recover.*

II. That even, if admissible under the pleadings, no proof of the transfer was made on the trial.   To this assignment it is objected, that whatever might have been cured by evidence or admissions below, cannot be assigned as error apparent on the record, and we are referred to the case of Caldwell *vs.* Townsend, 6 *Martin, N. S.,* 640.   This decision is not the only one on this point ; it had been preceded by many others, upholding the same doctrine ; but an attentive perusal of them will show, that they all relate to cases where the imperfect state of the record could not enable the court to say that such evidence had not been adduced, nor such admissions made.   In the case now under consideration, we have the certificate of the clerk, that the record contains a copy of all *the proceedings, as well as of all the documents filed, and all the testimony adduced on the trial of the cause.*   With such a full and complete transcript before us,

*Whatever might have been cured by evidence, or admission in the court below, cannot be assigned as error apparent on the record.*

the appellants might well, at any time, have called our attention to any error on the face of the record. They might even have safely tried their case on its merits, without making any assignment at all. The record shows, that the endorsement by the payee to the plaintiffs has not been proved; without such proof, the judge *a quo* erred in permitting them to recover.

But the counsel for appellees has pressed upon us that a promise to pay, after maturity, is an admission of acceptance, and of the other party's hand-writing; and that, in like manner, an offer to give another bill in lieu of one already due, is an admission of the holder's title, so as to supersede the necessity of proving the endorsements or other facts; and he has cited *Chitty, Jr.* 626 ; 2 *Campbell's Reports*, 450, 474 ; *Bailey on Bills*, 496. This doctrine we would have been disposed to receive as sound, even unsustained by such high authority, because it appears to us founded in reason.

When a promise to pay, *supra* protest, or an offer to give another bill is made, a new and direct contract, in some manner, intervenes between the acceptor and the holder. The former could not, without a bad grace, control the title of the latter to the draft, after having acknowledged it by treating with him as owner. But with the evidence before us, we cannot so readily admit its applicability to the present case. Our attention has been drawn to the draft sued on. The names of the acceptors appear on the face of it in two places, in one of which the names are erased. No date is to be found in either place; nor was any necessary, the bill not being payable after sight. From this circumstance appellees' counsel would have us infer that the bill has been accepted a second time after protest, which, according to him, would amount to a promise to pay. This fact alone, unexplained by any evidence, and which, perhaps, can be accounted for otherwise, does not, to our view, warrant the inference contended for. It might be the result of some hesitation in the drawees to accept; first writing their name, erasing it, and afterwards reinstating it. But if a second acceptance had been made after protest, as pretended, the necessity or expe-

EASTERN DIST.
*February,* 1840.

NOTT ET AL.
*vs.*
BRANDER ET AL.

When the certificate to the record shows that it contains all the evidence adduced on the trial, the appellant may, at any time, call the attention of this court to any error on the face of the record, or try the case on the merits without any asignment at all.

diency of erasing the first is by no means apparent to us, nor can we divine any rational object to be accomplished by a second acceptance, when the defendants were absolutely bound by the first.

It is, therefore, ordered and decreed, that the judgment of the court below be avoided and reversed ; and that ours be for defendants, as in a case of non-suit, the plaintiffs paying costs in both courts.

---

### ROST ET AL. *vs.* BYRNE.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT, JUDGE BUCHANAN PRESIDING.

The plea of the general issue, and compensation by the maker of a note, is an admission of the plaintiff's title to sue on it.

This is an action by the executors of S. Henderson, deceased, against the maker and endorsers of a promissory note.

The endorsers pleaded that they endorsed as the sureties of the maker ; that he is not indebted to Henderson's estate, but, on the contrary, it owes him a balance, which they pray may compensate the plaintiff's claim, and that Byrne's property be discussed.

Byrne, the maker of the note, pleads the general issue, and averred that he is not indebted, but that Henderson's estate is indebted to him in a large sum, which he prays may compensate the demand sued on, and that he have judgment for the balance.

On these pleadings and issues the cause was tried. The plaintiffs produced the notes, protest and certificate of the

notary in evidence, and had judgment. The defendants made no proof. Byrne, the maker of the note, appealed.

*L. Janin,* for the plaintiffs.

*Rawle,* for the defendant and appellant, insisted there was no proof of the endorsements, and consequently the plaintiffs were not entitled to recover.

*Bullard, J.,* delivered the opinion of the court.

This is an action against the drawer and endorsers of a promissory note. The drawer alone has appealed from a judgment rendered against him. He had pleaded the general issue and compensation. This, in our opinion, was an admission of the plaintiff's title to the note as endorsee. The appeal was evidently taken for delay.

The judgment of the District Court is, therefore, affirmed, with costs, and ten per cent. damages.

---

### SANDERSON *vs.* OAKEY ET AL.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

A member of a commercial partnership may constitute the *firm* his attorney in fact, to endorse his name on notes payable to his order, in his absence.

Where a note is made payable at the counting-house of A, and the firm is changed to A B before the note becomes due, a demand at the counting-house of A B will be good.

The defendants are sued as makers of a promissory note payable to the order of "Joshua Fisher, at his counting-house in New-York." The note is endorsed to the plaintiff by J. & H. Fisher, as attorney in fact of Joshua Fisher.

EASTERN DIST.
February, 1840.
SANDERSON
vs.
OAKEY ET AL.

The evidence shows, that before the note became due, Joshua Fisher took into partnership his brother, Henry Fisher, but continued business at the same place, and occupied the same counting-room; that the demand of payment was made *there* when the note became due; and it also appeared that Joshua Fisher had appointed the firm his attorney in fact, to act for him during his absence.

There was a verdict and judgment for the plaintiff, from which the defendant appealed.

*Preston,* for the plaintiff.

*T. Slidell,* contra.

*Martin, J.,* delivered the opinion of the court.

The defendants are appellants from a judgment on their promissory note. The only questions presented for our solution relate to the legality of the endorsement, and the demand.

1. The note was made payable to the order of Joshua Fisher, at his counting-house, in New-York, who afterwards took into partnership his brother, Henry Fisher, and traded under the firm of J. & H. Fisher. The endorsement is in the hand-writing of Henry Fisher, who made it in the name of the firm, as attorneys of Joshua Fisher, who was then absent, and is proved to have given his power of attorney to the firm. The jury, in our opinion, correctly considered the endorsement as valid.

2. The demand was made at the counting-house, which was that of Joshua Fisher, at the time the note was made, but had become *that* of the firm at the maturity of the note.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.

HOWE *vs.* FRAZER.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

In actions of slander, when there is no question of law involved, the questions of fact and *quantum* of damages are so peculiarly the province of the jury, that their verdict will not be disturbed, unless manifest injustice has been done.

This is an action of slander, in which the plaintiff alleges, the defendant maliciously slandered, and with a view to injure his reputation and character, falsely, and maliciously stated, in the presence of divers persons, charging him with being a robber, and had robbed his boat; meaning the steamboat Romeo. He alleges he has sustained damage to the amount of three thousand dollars, for which he prays judgment.

The defendant excepted to the petition, for want of certainty in its allegations, which was sustained, and leave given to amend.

The defendant then pleaded a general denial, and want of amicable demand.

Upon the testimony produced, the jury returned a verdict of five hundred dollars for the plaintiff. From judgment confirming the verdict, the defendant appealed.

*M'Kinney,* for the plaintiff.

*Haines,* for the defendant.

*Bullard, J.,* delivered the opinion of the court.

This is an action of slander. The defendant is charged with having called the plaintiff a robber and a thief, and with having robbed his boat. The jury found a verdict for five hundred dollars, and the defendant has appealed. No question of law has been presented to this court; and as it relates to the questions of fact, and quantum of damages, they are so peculiarly of the province of the jury, that this court will not interfere, unless it should appear manifestly, that injustice has been done. Nothing has been shown which would authorize our disturbing the verdict.

The judgment is, therefore, affirmed with costs.

WARING *vs.* CRAWFORD.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT, JUDGE

BUCHANAN PRESIDING.

The possession of a note, together with the receipt, showing it had
been endorsed to another for collection, is evidence of its re-transfer,
so as to authorize the holder to sue as owner.

A receipt given by the person to whom a note was endorsed for
collection, is admissible in evidence, to show the nature of the
endorsement, and that the plaintiff did not part with his interest in
the note.

This is an action by the payee against the maker of a
promissory note. The plaintiff and payee endorsed the note
to one Lawrence, and took his receipt, which showed that it
was endorsed merely for collection. The note was after-
wards returned, and the plaintiff erased his name from the
endorsement, and commenced suit as the payee of the note.

The defendant denied that the plaintiff was the legal
holder and owner of the note; and further averred, that he
was in no way liable, as the note had been declared, by a
competent tribunal in Tampico, to be fully paid. On the
trial, the note sued on was offered in evidence. It was made
payable to the order of the plaintiff, on which he made the
following endorsement: "Pay to the order of James L.
Lawrence. January 22d, 1837." Signed, "C. N. Waring."

Lawrence gave a receipt, headed as follows: "Received
of Mr. Nicholas Waring, the following documents, *endorsed
in my favor, for collection on his account.*"

The note sued on was included in this receipt. It was
afterwards returned by Lawrence, and the plaintiff erased
his name from the endorsement. The receipt was also
offered in evidence to show the nature of the endorsement,
and received by the court, but was objected to by the
defendant's counsel.

There was judgment for the plaintiff, and the defendant
appealed.

*Rawle,* for the plaintiff.

1. The receipt of Lawrence proves that he had no title or interest in the obligation sued on, and that he was the agent only of the plaintiff, from whom he received it for collection. The receipt was properly received in evidence, as it constitutes the very fact which is one of the subjects of inquiry. 1 *Starkie on Evidence, edition of* 1837, *page* 62.

2. The acts, doings and declarations of persons, which are pertinent and material to the issue between the parties, may be received in evidence, especially if against the interest of the actor or declarant, as part of the *res gestæ. Williams* vs. *Palmer,* 5 *Louisiana Reports,* 377; *Malchaux* vs. *Lefebvre,* 4 *Martin, N. S.,* 489; *Dismukes* vs. *Musgrove,* 2 *Louisiana Reports,* 340.

3. But if the receipt of Lawrence was not before the court, there would be no evidence that the obligation had ever been out of the possession of the plaintiff, who is the payee. The endorsement or assignment, without delivery, does not constitute a transfer. It is inchoate only. *Chitty on Bills,* page 263; *Ramsay* vs. *Livingston,* 6 *Martin, N. S.,* 17.

*Briggs,* for the defendant.

1. The plaintiff is not shown to be the owner of the note sued on, he having specially endorsed it to a third party, and no re-endorsement having been made thereon, the mere erasure of the special endorsement is no proof. *Chitty on Bills, page* 250, *and note; Arnold* vs. *Bureau,* 7 *Martin,* 291; *Robson* vs. *Early,* 1 *Martin, N. S.,* 374; *Dicks* vs. *Cash et al.,* 6 *idem.,* 45; *Perry* vs. *Gerbeau and Wife,* 5 *idem.,* 14; *Hyde et al.* vs. *Groce,* 7 *idem.,* 572; *Griffin* vs. *Jacobs,* 2 *Louisiana Reports,* 193.

2. That the testimony offered to prove such ownership, to wit: the receipt of the plaintiff's special endorsee is inadmissible, because it is the mere written declaration of a third party, not constituting part of the *res gestæ,* no proof being given that it was given contemporaneously with the endorsement which it is offered to qualify, or that the party was dead, or without the reach of a commission, and that, under

these circumstances, it is *res inter alios acta*. *Starkie on Evidence*, vol. 1, *page* 46 ; 312 *et infra* ; *Phillips on Evidence*, vol. 2, *pages* 444, 641, 645, 585 *and* 668.

*Martin, J.*, delivered the opinion of the court.

The defendant and appellant from a judgment on his promissory note, given to the plaintiff, has based his hope of relief at our hands, on the following grounds :

**1.** The plaintiff is not shown to be the owner of the note sued on, he having endorsed it specially to a third party, and no re-endorsement having been made.

**2.** The testimony offered to prove the ownership of the note, was inadmissible.

The possession of a note, together with the receipt, showing it had been endorsed to another for collection, is evidence of its re-transfer, so as to authorize the holder to sue as owner.

I. It appears that the plaintiff had endorsed the note to one J. L. Lawrence, the 22d January, 1837, and on the 24th Lawrence gave his receipt therefor, acknowledging that it had been endorsed to him for collection. The plaintiff on receiving it back erased his signature to the endorsement: His possession of the note now corroborates the evidence which results from Lawrence's receipt ; so that, if the receipt was properly introduced in evidence, the plaintiff has fully established his claim to the amount of the note.

A receipt given by the person to whom a note was endorsed for collection, is admissible in evidence, to show the nature of the endorsement, and that the plaintiff did not part with his interest in the note.

II. There cannot be a doubt, that a re-transfer of the note by Lawrence could be received in evidence. The receipt was certainly admissible, to show the nature of the endorsement, to wit : that the plaintiff did not thereby part with his interest in the note. His subsequent possession of it, coupled with the receipt, is evidence of a re-transfer.

*Testimony* of the *nature* of the endorsement was not received, and, perhaps, was not admissible. Written evidence could only be received, and it *only* was adduced. If Lawrence had been sworn as a witness, he could not have effectually denied the fact, evidenced by his receipt.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.

STATE *vs.* JUDGE BERMUDEZ.

ON AN APPLICATION FOR A MANDAMUS.

A copy of a foreign will, authenticated only by an *ex parte* affirmation of an attorney in fact, is insufficient to authorize the judge of probates to register it in this state.

This is an application for a *mandamus*, commanding the judge of probates to enregister a foreign will.

*Josephs*, for the application, presented the petition of the testamentary executors of Samuel Hope, deceased, alleging that the will of the deceased was opened, duly proved and authenticated, and admitted to probate in Great Britain, where the deceased resided at the time of his death, a duly certified copy of which he presented to the judge of probates for the city and parish of New-Orleans, and prayed to have the same registered and made executory ; that the deceased owned certain shares of bank stock in one of the banks of this city, which is all the property belonging to his succession in this state.

The petitioners further show, that Judge J. Bermudez, judge of probates of said court, refuses to enregister said will, unless letters testamentary are taken out, and a dative testamentary executor appointed, &c.; all of which would defeat the object and intention of the law.

The petitioners pray for a *mandamus*, commanding the judge to grant the order of registry as prayed for.

The judge returned for answer to the rule taken on him to show cause why the *mandamus* should not be awarded, the following grounds, &c. :

" The undersigned, judge of the Court of Probates of the parish and city of New-Orleans, in answer to the rule taken upon him to show cause why he should not grant an order for the execution and registry of the will of the late Samuel Hope, according to articles 1681 and 1682 of the Louisiana Code, without imposing any conditions, nor requiring any

EASTERN DIST.
February, 1840.

STATE
vs.
JUDGE
BERMUDEZ.

formalities not provided for by said articles, begs leave to assign the following grounds, why said rule should not be made absolute :

"1st., Because the executors of the instrument annexed to the petition, and by them styled a will, have furnished no legal or sufficient evidence of the execution of said will, which is neither an authentic copy of the testament of the late Samuel Hope, nor otherwise proved so as to entitle it to registry in Louisiana.

"2d., Because, even if said will were duly authenticated, it by no means follows, that this respondent, in his capacity of judge of the Court of Probates, has no other duties to perform than those prescribed in the articles relied on by the complainants, nor that these provisions embrace the whole law of Louisiana in relation to the registry and execution of last wills and testaments made in foreign countries."

*Bullard, J.,* delivered the opinion of the court.

The judge of the Court of Probates for the parish and city of New-Orleans, in answer to the rule granted in this case, says, among other causes shown, that the executors of the instrument annexed to the petition, and by them styled a will, have furnished no legal or sufficient evidence of the execution of said will, which is neither an authentic copy of the testament of the late Samuel Hope, nor otherwise proved as to entitle it to registry.

The paper purporting to be a copy of the will has been, by consent, exhibited to this court. It is not, in our opinion, authenticated in such a way as to authorize the judge to register it, and to order its execution. It is shown to be a copy only by an *ex parte* affirmation by an attorney at law in England.

Let the rule be discharged.

BRIGGS *vs.* STAFFORD.

APPEAL FROM THE COURT OF THE EIGHTH JUDICIAL DISTRICT, FOR THE
PARISH OF ST. TAMMANY, THE JUDGE THEREOF PRESIDING.

A notary public, who signed the protest, cannot be received as a witness,
to prove that no demand was made. A public officer, who has given a
solemn certificate in his official character, and under his seal of office,
cannot be listened to as a witness, to prove it false.

It does not necessarily follow, that the verdict is to be set aside on account
of the admission of improper evidence. If the proof of notice to an
endorser is not satisfactory, a verdict in his favor will not be disturbed.

This is an action against the endorser of a promissory
note, protested for non-payment, and due notice thereof
alleged to be given to the endorser. The defendant denied
that the plaintiff was the legal holder of the note, or had
any right to receive payment. He further averred, there
was no legal notice of demand and protest ever given him,
and prayed to be dismissed.

On the trial, the note, protest and certificate of notice was
offered in evidence.

The defendant offered the notary who made the protest as
a witness, who deposed that the protest was made on the
day his daughter died, and in consequence of which the
*demand and notice was made by his clerk.* This testimony was
objected to, as contradicting the written protest and certifi-
cate of notice signed by the notary himself. The court
admitted the testimony, and the plaintiff excepted.

Another witness deposed, that the defendant lived about
forty miles from Covington, where the note was payable,
and where the notice of protest was put in the post-office,
addressed to him at that place; that the defendant lives
about ten miles from Pearlington, at which place there is a
post-office, but there is no direct road to the latter place. It
was not shown that the defendant was in the habit of
receiving his letters and papers from the post-office at
Covington.

There was a verdict and judgment for the defendant,
from which the plaintiff appealed.

EASTERN DIST.
February, 1840.

BRIGGS
*vs.*
STAFFORD.

*Hennen,* for the plaintiff.

*Deslix,* contra.

*Bullard, J.,* delivered the opinion of the court.

This is an action by the holder, against the endorser of a promissory note, alleged to have been duly protested for non-payment, and notice thereof given to the endorser. There was a verdict for the defendant, and judgment being pronounced thereon, the plaintiff prosecutes this appeal.

Our attention is first drawn to a bill of exceptions, from which it appears that the defendant offered as a witness E. P. Ellis, the notary who signed the protest filed in this case, to prove that no demand was made, which was objected to by the plaintiff, on the ground that the notary could not contradict his own acts; but the court admitted the witness to be sworn, notwithstanding the objection.

We are of opinion that the court erred. A public officer, who has given a solemn certificate in his official character, and under his seal, cannot be listened to as a witness to prove it false. There is a degree of turpitude in certifying as true what the officer does not know to be true, as well as in certifying what he knows to be false. In either case, whatever may be the palliating circumstances in *foro conscienciœ,* we think the falsity of the certificate ought not to be shown by the testimony of the officer himself: *" Allegans turpitudinem suam non audiendus."*

But it does not necessarily follow that the verdict is to be set aside on account of the admission of improper evidence. The proof of notice of protest is by no means satisfactory. It appears that the residence of the defendant is nearer another post-office than that in which the notice was deposited, and it is not clearly shown that the defendant was in the habit of taking his letters or papers out of the office where the notice was left. We cannot, consequently, disturb the verdict.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.

A notary public who signed the protest, cannot be received as a witness to prove that no demand was made. A public officer who has given a solemn certificate in his official character, and under his seal of office, cannot be listened to as a witness to prove it false.

It does not necessarily follow that the verdict is to be set aside on account of the admission of improper evidence. If the proof of notice to an endorser is not satisfactory, a verdict in his favor will not be disturbed.

THAYER ET AL. *vs.* RIEDER.

APPEAL FROM THE COMMERCIAL COURT OF NEW-ORLEANS.

It is no ground of complaint, that the cause was tried *ex parte*, when the defendant neglected to attend.

Where the error assigned might have been cured by evidence, it will not avail the party.

This is an action against the maker of the following promissory note :—

"*Dollars*, 375.          "*Philadelphia, July* 14, 1834.  .
"On demand, I promise to pay to the order of William Rice, Esq., three hundred and seventy-five dollars, value received, without defalcation."      "FELIX E. RIEDER."

The note was regularly endorsed to the plaintiffs.   The defendant pleaded a general denial, and want of consideration, &c.

On the defendant's affidavit, a commission issued to Philadelphia, to take the testimony of witnesses, deemed material to establish the defence.   The order for the commission was made on the 9th May, 1839.   On the 13th of May, the cause came on for trial, and the defendant failed to appear. There was judgment for the plaintiff, with six per cent. interest, (Pennsylvania) and the defendant appealed.

*Thielen,* for the appellant, assigned the following errors :

1. That the case was tried *ex parte* on the 15th May, 1839, and judgment rendered against the defendant, whereas a commission to take testimony of witnesses in the city of Philadelphia was issued on the 9th May, 1839, and fifty days was allowed for the return thereof, as is shown by the order of court, to be found at page 6, of the record.

2. That the note sued upon is dated Philadelphia, July 14, 1834, and was payable on demand ; that no demand was made before upwards of four years and eight months had elapsed, and still the judge *a quo* has allowed interest at the

rate of six per cent. per annum from the 17th July, 1834, as will be found by reference to the note at page 5, and to the judgment at page 7 of the record : by reason of all which, appellant respectfully prays that the judgment of the court below be reversed, and judgment be rendered in his favor.

*Upton,* contra.

*Martin, J.,* delivered the opinion of the court.

The defendant and appellant has put this case before us on an assignment of errors.

1. The cause was tried *ex parte,* on the 13th May, 1839, and a commission had issued on the 9th of May, to take the testimony of witnesses in the city of Philadelphia, and fifty days allowed for the return thereof.

2. The note sued on was dated in Philadelphia the 14th July, 1834, payable on demand, and no demand was made until upwards of four years and eight months had elapsed ; and that interest was allowed at the rate of six per cent. per annum from the 17th July, 1834.

It is no ground of complaint that the cause was tried *ex parte* when the defendant neglected to attend.

I. The defendant not having appeared when the cause came on for trial, he cannot complain that it was proceeded in *ex parte.* If the testimony which he expected from Philadelphia was essential, he should have been present, and prayed for a continuance.

Where the error assigned might have been cured by evidence, it will not avail the party.

II. The second error assigned might have been cured by evidence of the laws of Pennsylvania, allowing interest on notes of hand payable on demand, at the rate and in the manner which the judge *a quo* granted it.

The judgment of the Commercial Court is, therefore, affirmed with costs.

ZERINGUE *vs.* RIXNER.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

Where a plea in compensation and re-convention, is sustained by the evidence, judgment will be given against the plaintiff for the balance due, after extinguishing his demand, with interest.

This is an action by the endorser against the maker of a promissory note, which the former alleges he has had to pay.

The defendant denied that the plaintiff had paid his note, but if he had, then he set up a demand in compensation and reconvention, which exceeded the plaintiff's claim by two hundred and forty-four dollars, on which he was entitled to legal interest. The District Court sustained the plea, and gave judgment in favor of the defendant, against the plaintiff, for the balance, with 5 per cent. interest. The plaintiff appealed.

*Marsoudet,* for the appellant.

*L. Janin,* contra.

*Bullard, J.,* delivered the opinion of the court.

The plaintiff alleges he endorsed a note for the defendant, and took a mortgage, to secure him against said endorsement. He further alleges, that he has paid said note, and prays for an order of seizure and sale on his mortgage, which was granted.

The defendant made opposition on two grounds:

1. The plaintiff has furnished no proof that he has paid the note sued on.

2. That if he has paid the same, the debt is extinguished by compensation, and a balance due in reconvention, for this: that eight years ago, this opponent left in the hands of the plaintiff, the sum of eighteen hundred dollars, due him for land and slaves, purchased by the said plaintiff, on which he is entitled to five per cent. per annum interest, all of which remains unpaid. On this opposition, an injunction was obtained against the order of seizure and sale.

LAWRENCE
& HILL
*vs.*
OAKEY ET AL.

The plaintiff pleaded a general denial, and prayed that the injuction be dissolved.

There was judgment sustaining the plea in reconvention, after extinguishing the plaintiff's demand, for the sum of two hundred and forty-four dollars, with interest at five per cent. The plaintiff appealed.

It is in proof, that in the year 1830, in the settlement and partition of the succession of Zenon Rixner, the plaintiff, Zeringue, whose wife was one of the heirs, became responsible, and engaged to pay the defendant, another of the heirs, the sum of eighteen hundred and eight dollars thirty-three and two-third cents. The above balance, was the price of land and slaves, received by the plaintiff, over and above the share coming to his wife, and consequently bears interest at five per cent. from the time it was due.

The judgment of the District Court, is, therefore, affirmed, with costs.

---

LAWRENCE & HILL *vs.* OAKEY ET AL.

APPEAL FROM THE COMMERCIAL COURT OF NEW-ORLEANS.

Whenever a person not a party to a bill or note, puts his name on it, he is presumed to have done so as surety, unless this presumption is destroyed by other circumstances appearing.

But where the endorsers' names appear first on a bill, although not the payees, and no explanatory evidence is offered, their endorsement will be considered as a direct and positive undertaking on their part, and not conditional.

By endorsing a bill not payable to their order, the defendants became guarantors for its punctual payment at maturity.

This is an action by the payees against the defendants, as
endorsers of a bill of exchange.   One W. B. Tebo drew a bill
at New-Orleans, December 19th, 1839, for nine hundred and
thirty-seven dollars, *payable* to the order of Lawrence & Hill,
at the counting-house of S. W. Oakey & Co., in New-Orleans,
three months after date.    The bill was drawn on Messrs. J. H.
Duggan & Co., Rodney, Mississippi.    It is endorsed by
S. W. Oakey & Co., and by the payees, who are the holders.

The plaintiffs allege, that the defendants endorsed said bill
at the time it was drawn, and by agreement, charged two
and one half per cent. commission for the use of their names.
That by said endorsement they guaranteed the payment
thereof at their counting-house, at maturity.    That the bill
was intended to have been drawn payable to their order, but
was, through error, made payable to the plaintiffs.    That
it was accepted by the drawees, who reside in Mississippi and
are said to be insolvent.    The drawer has left the state, and
the defendants are the only persons here liable for the pay-
ment of the same.    They allege, that payment of this bill
was demanded at the counting-house of defendants and re-
fused, when it was protested, and due notice thereof given
to all the parties interested.    They pray judgment for its
amount.

The defendants denied all the allegations in the petition,
and admitted their signatures.

Upon these pleadings and issues the cause was tried.    It
is admitted that the only evidence offered on the trial was
the bill of exchange and protest.  The cause was submitted
to a jury, with this evidence on the petition and answer.
The jury returned a verdict for the plaintiffs.    A strenuous
effort was made to obtain a new trial, and overruled.    From
judgment confirming the verdict, the defendants appealed.

*A. Peirce*, for the plaintiffs :

1. When a person, not a party to a note or bill, puts his
name upon it, he is presumed to have done so as surety, and
as such, is as much bound as an endorser would be if regularly
notified of protest.    *Smith* vs. *Gorton*, 10 *Louisiana Reports*,
374.

EASTERN DIST.
February, 1840.

LAWRENCE
& HILL
vs.
OAKEY ET AL.

2. With this authority before the appellants they could not hope for success in this court. They are, therefore, liable for damages. 6 *Louisiana Reports*, 640, *Coffin* vs. *Pandelly; 7 Idem.*, 167, *Menard* vs. *Cox; 8 Idem.*, 180, *M'Philins' Executors* vs. *Gillise; 13 Idem.*, 494, *Hubbell* vs. *Clannon.*

3. The plaintiffs counsel cited the following additional authorities. 3 *Martin, N. S.*, 659 ; 5 *Massachusetts Reports*, 358 ; 11 *Idem.*, 435 ; 3 *Idem.*, 274 ; 9 *Idem.*, *White* vs. *Howland ; 4 Pickering*, 311, 383 ; 14 *Johnson*, 514 ; 2 *Douglass*, 514 ; 3 *Cowen*, 252.

*G. B. Duncan*, for the defendants :

1. The verdict and judgment in the court below, violate the first principles of the law of Bills of Exchange. The endorser of a bill of exchange is sued, and no evidence whatever offered that they had ever been notified of the protest. *Bayley on Bills*, 315 ; 1 *Martin, N. S.*, 321 ; 10 *Martin*, 707.

2. An attempt is made to hold the defendants liable to the plaintiffs, *who are, themselves, the payees of the draft*, and the defendants but endorsers. It is not pretended that no case can occur where a second may not be liable to the first endorser ; it is only insisted that the law never presumes such liability ; and it is only on special allegations, supported by competent testimony, that the legal presumptions can be destroyed, and responsibility attached to an endorser on a bill of exchange in the hands of a payee. *Herrick* vs. *Carman*, 12 *Johnson's Reports*, 160 ; *Sillman* vs. *Wheeler*, 17 *Johnson's Reports*, 328.

3. The cases from Massachusetts Reports, and 13 Johnson, 175 ; 14 *Idem.*, 349 ; 15 *Idem.*, 425, were all cases, where the declarations contained counts with special averments, similar in effect to those in the petition in this case ; and where the *proofs* sustained the averments, the plaintiffs had judgment, not otherwise.

4. The case quoted from 10 Louisiana Reports, 374, is not strictly applicable to this case. There the instrument sued on was a promissory note, here it is a bill of exchange. The presumption which arose against the defendant in that case

EASTERN DIST.
*February,* 1840.

LAWRENCE
& HILL
*vs.*
OAKEY ET AL.

cannot hold good in this. The court will not give the plaintiffs more favor than they have asked for themselves. They aver that it was intended, and that so all of the parties understood the case; that it was an error in making the draft payable to the order of the plaintiffs, whereas it was intended that the same should have been made payable to the order of the defendants. Suppose this had been done, the defendants would have been the payees and *first* endorsers, and the plaintiffs subsequent endorsers and holders. In that hypothesis, what would have been the rights and obligations of the parties? Assuredly the plaintiffs would have been obliged to prove notice of protest.

5. In this community it has not been an unusual circumstance, on the contrary it is every day practice, for subsequent parties to sign instruments before those who are presumed to have signed first, have in fact done so. Promissory notes are frequently signed by the payees and endorsers, before they have been signed by the drawer. No inference is, therefore, to be drawn against the defendants, from the fact that they did endorse the draft before others had signed it, who were bound to do so in order to make it effectual.

*Morphy, J.,* delivered the opinion of the court.

This case bears much analogy to, and can hardly be distinguished from that of Smith *vs.* Gorton, 10 Louisiana Reports, 376. It is brought on a bill of exchange, drawn by one Tebo, on Duggan & Co., of Mississippi, and made payable to the order of plaintiffs, at the counting-house of the defendants. The latter endorsed the bill for the purpose, it is alleged, of guaranteeing its punctual payment at maturity. Whatever may have been the decisions made in other states, in cases of this kind, the well settled law here is, that, where a person, not a party to a bill or note, puts his name upon it, he is presumed to have done so as surety, unless he destroys that presumption by showing surprise, fraud, &c., or any other such circumstance. No explanatory evidence has been offered by defendants, why their names appear *first on* the back of this bill; we must then consider their endorse-

Whenever a person, not a party to a bill or note, puts his name on it, he is presumed to have done so as surety, unless this presumption is destroyed by showing some circumstance to that effect.

LAWRENCE
& HILL
vs.
OAKEY ET AL.

But where the endorsers' names appear first on a bill, although not the payees, and no explanatory evidence is offered, their endorsement will be considered as a direct and positive undertaking on their part, and not conditional.

By endorsing a bill not payable to their order, the defendants became guarantors for its punctual payment at maturity.

ment as a direct and positive undertaking, on their part, to pay this bill, and not as a conditional one. An absolute guaranty could have been written over their name. But the appellants contend that the plaintiffs should be bound by their own pleadings. That they have themselves averred that the bill was intended to have been drawn, not to their order, but to that of the defendants. They say, that if this had been done, defendants would have been payees, and first endorsers, and as such, entitled to all the rights of regular endorsers on negotiable paper. The fact of the bill having been domiciliated, for its payment, at the counting-house of defendants, gives strong countenance to this allegation of error. If such an error has been really committed, it is not by the plaintiffs, and it is one of which the defendants must have been cognizant. By putting their name to a bill not made to their order, they must have known that they were making themselves not endorsers, but guarantors, as the plaintiffs allege them to be. But after all, they might well be considered as having received that notice, which they complain of having been deprived of, in consequence of such error, for the demand on the acceptor has been made at their own counting-house, where they very well knew that no funds had been provided, and where they witnessed themselves, in some manner, the dishonor of the bill. The appellees have prayed for damages, as on a frivolous appeal. We do not think this a proper case to award them; an interested party may, perhaps, have had some doubts, and entertained some hopes of reversal.

It is, therefore, ordered, adjudged and decreed, that the judgment of the court below be affirmed, with costs.

POYDRAS *vs.* BELL.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

The certificate of the notary is *primâ facie* evidence of a demand on the maker of a note, and that it was made at his domicil, at the place stated therein, although it be not so set forth in the petition.

This is an action against the endorser of a promissory note. The plaintiff alleges, that, at maturity, said note was presented for payment at the store of the maker, (J. C. Morris) in St. Francisville, and protested for non-payment, and due notice thereof given to the endorser.

The defendant pleaded a general denial, and denied specially that any demand of payment was made on the maker of the note, and prays to be dismissed.

The plaintiff offered in evidence the note, protest and notary's certificate. The notary states in his certificate, that he went to the store of the maker of the note, in St. Francisville, on the day it became due, and demanded payment of his clerk (Morris being out), who replied he had no funds to pay it. Notice of protest was then put in the post-office at St. Francisville, directed to the endorser at New-Orleans, the place of his residence. It was in proof, that J. C. Morris, the maker of the note, kept a store at Bayou Sarah.

Upon this evidence, there was judgment for the plaintiff, and the defendant appealed.

*L. Janin,* for the plaintiff.

*Mitchell,* contra.

*Morphy, J.,* delivered the opinion of the court.

This is an action against the defendant, as endorser of a promissory note drawn by one J. C. Morris. The only point made turns on the sufficiency of the demand made, on the maker of the note. It is proved by the notary's certificate, made out in conformity with the act of the 13th of March,

EASTERN DIST. 1827. The notary states, that a demand was made at the February, 1840. store of the maker at St. Francisville, in the parish of West

WHITTEMORE
vs.
LEAKE & HOWELL

Feliciana. This is said to be insufficient, because the plaintiff's petition does not allege and set forth the maker's domicil to be there; and because, no place being mentioned in the note, the presumption is, that the drawer resides in New-Orleans, which is the residence of the payee. The presumption, if any exists, may be, that the note was executed in New-Orleans, but not that the maker had his domicil there. Be that as it may, the notary's certificate forms *primâ facie* evidence that the demand was made at the proper place, and is, *per se*, sufficient until rebutted by direct proof. The appellee has prayed for damages; they cannot be awarded, because he has not demanded them in due time, in accordance with article 890, of the Code of Practice.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.

=====

WHITTEMORE *vs.* LEAKE & HOWELL.

APPEAL FROM THE COURT OF THE THIRD DISTRICT FOR THE PARISH OF WEST FELICIANA, THE JUDGE THEREOF PRESIDING.

A *certified copy* of the notarial protest, and certificate of notice to the endorsers, &c., is sufficient evidence of the protest and notice to the endorser.

Where the endorser lived seven or eight miles from town, notice of protest put in the post-office, addressed to him as of that parish and town, being the place where he received his letters, was held sufficient service of notice.

This is an action against the endorsers of a promissory note.

The defendants pleaded the general issue; and averred, that there was no legal demand and protest; and denied that they were legally notified as endorsers. They further pleaded the want of an amicable demand.

On the trial, a duly certified copy of the protest and certificate of notice to the endorsers was offered in evidence, which was objected to by the counsel for the defendant on the ground that the originals should be produced or accounted for, as the best evidence. The court overruled the objection, admitted the evidence, and the defendant took his bill of exceptions.

The evidence showed that the defendants resided in the parish of West Feliciana, about seven or eight miles from St. Francisville, at which place they received their letters and papers, being the nearest post-office. The certificate of the notary states, that he deposited notices on the day of the protest, addressed to the endorsers in West Feliciana, St. Francisville, in the post-office at the latter place. The defendant's counsel contended that this was insufficient; that they should have had personal notice.

There was judgment for the plaintiff, and the defendants appealed.

*Boyle*, for the plaintiff, urged the affirmance of the judgment, with damages and costs.

*Turner*, for the defendants, relied upon the following points for a reversal of the judgment:

1. The court erred in receiving the copy of the protest, and copy of certificate of notice, in evidence.

2. The testimony, if received, does not show that the defendants are liable, because it does not prove that they were duly and legally notified of the protest and dishonor of the note endorsed by them.

3. It is insisted there is no proof of legal notice to the endorsers. Notices were put in the post-office at St. Francisville, directed to them in West Feliciana, St. Francisville, when it is shown they live seven or eight miles from that

EASTERN DIST. town. Notice should have been given or sent to them
February, 1840. personally, or left at their domicil. *Baily on Bills*, 171–2,
WHITTEMORE 17; *Chitty on Bills*, 282, 395, 396; 5 *Martin, N. S.*, 66,
*vs.* 359–60.
LEAKE & HOWELL

*Bullard, J.*, delivered the opinion of the court.

The defendants being sued as endorsers of a promissory note, rely upon the want of a regular protest, and due notice to them.

In the progress of the trial, the plaintiff offered in evidence a document purporting to be a copy of a notarial protest and certificate of notice. Its introduction was opposed on the ground that the original ought to be produced or accounted for; and that the copy of the certificate did not appear to have been recorded by the notary, nor to have been signed by two witnesses. These objections were overruled, the protest admitted, and the defendant took his bill of exceptions. It is the opinion of this court, that the judge did not err. The act of 1827, concerning protests and notices to drawers and endorsers, authorizes notaries to add a certificate to their protests, stating the manner in which any notices of protest to drawers and endorsers were served or forwarded, and it provides that "whenever they shall have done so, *a certified copy* of such protest and certificate shall be evidence of all matters therein stated."

A *certified copy* of the notarial protest, and certificate of notice to the endorsers, &c., is sufficient evidence of the protest and notice to the endorser.

Where the endorser lived seven or eight miles from town, notice of protest put in the post-office, addressed to him as of that parish and town, being the place where he receiv-

<div style="float:right">

EASTERN DIST.

*February,* 1840.

*This case was decided at the January term, 1839, but suspended by an application for a re-hearing.